The Honorable Lauren King

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

N.D., et al.,

Plaintiffs,

v.

CHRIS REYKDAL, et al.,

Defendants.

NO. 2:22-cv-01621-LK

DECLARATION OF DR. TANIA MAY IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

I, Dr. Tania May, hereby declare as follows:

1. I am over the age of 18, am competent to testify on matters contained in this Declaration, and make this Declaration based on my own personal knowledge. I am submitting this Declaration in support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction.

2. I am the Assistant Superintendent of Special Education. I lead the Special Education division for the Office of Superintendent of Public Instruction (OSPI). My role is responsible for ensuring the provision of special education and related services on behalf of more than 140,000 eligible students in Washington State. Services my team and I provide include: technical assistance and professional development designed to support and facilitate special education program improvement efforts by disseminating evidence-based and promising



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

practices for the development of academic, health, and post-school outcomes for students eligible under the federal Individuals with Disabilities Education Act (IDEA); engaging partners involved in, or affected by, special education services and outcomes for students with disabilities to review, analyze, and plan for system improvements and celebrate successes; general supervision of the provision of special education services through an integrated monitoring system, dispute resolution options, and coordinated data management efforts; and allocation of federal special education funding and supplemental Safety Net program funding for individual high need students and school districts that demonstrate a unique community impact in the area of special education.

3. OSPI is the primary agency charged with overseeing public K–12 education in Washington State. OSPI works with the 295 school districts in Washington State to fulfill the requirements of IDEA. As part of my work for OSPI, I am familiar with the provision of special education services to students by school districts in the State of Washington.

4. Special education services are, by their nature, individualized to meet the needs of a particular student. Accordingly, the provision of special education services by school districts often involves providing a wide range of services depending on the particular needs of the individual enrolled students who are receiving special education services. These specialized services may require hiring or contracting with teachers and service providers, including for example aides, speech-language pathologists, occupational or physical therapists, school nurses, language or reading specialists, medical staff, behavior specialists, or paraeducators. Similarly, students receiving special education services may also require specialized resources, including adaptive or assistive technology tailored to the student's disability.

5. Each student receiving special education services is served through an individualized education program (IEP), which is a written statement of an educational program drafted specifically for that student. Among other things, the IEP describes the special education services a student will receive and the academic and functional goals and expectations for the



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

year. An IEP is created and implemented by a student's unique IEP team. Required members of the IEP team include the student's parent(s) or guardian(s); at least one of the student's general education teachers; at least one of the student's special education teacher(s); a representative of the school district qualified to provide or supervise specialized instruction for students with disabilities and who is knowledgeable about the general education curriculum and the availability of resources available within the district; an individual who can interpret the instructional implications of the evaluation results; other individuals (at the discretion of the parents and district) who have knowledge or special expertise regarding the student, such as related service providers; and the student (if appropriate). It is important to note that OSPI is not a member of the student's IEP team. The IEP must contain the following required elements: (a) student's present academic achievement/performance; (b) measurable annual goals; (c) a description of how and when the district will measure the student's progress toward the goals and provide progress updates; (d) a statement of special education services, related services, and supplementary aids and services to be provided to the student; (e) a statement of program modifications to be provided to school personnel related to the student; (f) an explanation as to the extent the student will not participate with nondisabled students in general education classroom or activities; (g) a statement of approved individual accommodations for tests and assessments; (h) whether an alternative assessment is necessary and why; (i) extended school year services if necessary; (i) the projected start date and frequency, location, and duration of services and modifications; (j) a post-secondary transition plan if the student will be turning 16 or older during the IEP (or younger if appropriate); (k) one year prior to age 18, a statement informing the student of IDEA rights; and (l) the district's procedures for notifying parents of the use of isolation, restraint, or a restraint device.

6. Given the varied nature of special education services a district's students may require, school districts must convene each student's entire IEP team (unless both the parent(s)/guardian(s) and the district agree to excuse someone) at least once annually to plan for



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

the provision of a free appropriate public education (FAPE) to individual students. OSPI has no part in IEP teams and has no control over them. Budgetary planning to implement the next year's anticipated special education services typically begins in the spring preceding the coming school year. Once the district's special education budget is set in approximately May, the district begins rolling-out various other planning steps, including, for example, personnel and resource best-fitting and acquisition. As an example, personnel planning—for example, hiring teachers and service providers—typically throughout the spring and summer preceding the coming school year. Across Washington, May 15, 2023, was the deadline for school districts to decide on staffing and to inform employees about those decisions for the following school year. While districts can rescind those notifications, individual staff have largely made decisions about their own employment for the coming school year.

7. I understand that Plaintiffs in this case are seeking a provisional certification of a class consisting of "[a]ll individuals who will be twenty-one on August 31, 2023, and who are at that time being provided special education services pursuant to an individualized education program ("IEP") implemented by any local educational agency ("LEA") in Washington." I also understand that Plaintiffs are seeking a preliminary injunction that would (1) enjoin OSPI from "allowing any LEA subject to their supervision to terminate IEP services for any member of said provisionally certified class by reason of said class member's age prior to said class member having reached age twenty-two" and (2) require OSPI to "take all actions necessary to ensure that each said class member to whom the Court's injunction extends continues to receive IEP services until the earlier of the resolution of this litigation or said class member reaches the age of twenty-two."

8. If Plaintiffs' requested preliminary injunction were issued, it would be impossible or extremely difficult for many school districts to implement the injunction and timely comply with its terms.



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

9. Implementation of the requested preliminary injunction would not be a matter of OSPI simply not "allowing any LEA subject to their supervision to terminate IEP services" for members of the provisional class. Implementation would upend school districts' nearly-complete planning for budgets and personnel for the next school year, and would likely be practically impossible given the lack of legislatively appropriated funds and available personnel. In many cases, OSPI could not ensure that members of the provisional class would receive special education services for an additional period of time beginning in September given the significant constraints facing the districts.

10. In addition, as a general matter, school districts do not "terminate IEP services" upon the completion of a school year. IEPs have fixed terms, covering only certain date ranges. At the end of the date range for an IEP, the IEP is not "terminated" but is complete. The continued provision of special education services past the date range of an IEP would require a new IEP and new planning by the school districts, IEP teams, and personnel as described above. For students under 21, the IEP team at this point would meet again for a particular student's annual IEP meeting. For students approaching 21 their IEP will expire—the IEP team has determined the student's graduation date and the student will graduate at the end of the school year, or the student may age out of the school system.

11. To continue providing special education services to students after their IEPs have expired, that school districts and IEP teams had planned would graduate or otherwise age out this school year, school districts would need to immediately arrange for the hiring of service providers and personnel. Typically, that process is handled five to nine months before the start of the next school year. By mid-May, school districts have largely concluded that process. Because potential employees seek positions on that same timeline, it would be impossible or extremely difficult for school districts to hire personnel and service providers in June for positions commencing in September.



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

12. In addition, to continue providing special education services to students after their IEPs have expired, school districts would need to immediately make possibly significant modifications to their budgets. Budgets for the school year are typically set no later than May of the previous school year. To require school districts in June to provide special education services beginning in September would likely be impossible without defunding other vital components of education or requiring districts to incur costs that are not funded through existing budgetary allocations. One example of this scenario is if a district were forced to provide an out-of-district placement (or to contract with an external provider) simply because the district was unable to secure adequate personnel or resources given the proximity to next school year. Depending on the services provided, an out-of-district placement could cost a district hundreds of thousands of dollars per year, per student. The district would have no guarantee that it would be reimbursed for such amounts, and would likely not be able to readily reallocate funds to cover the cost with existing budgets.

13. These difficulties in budgetary and personnel planning would be compounded by the timing on the eve of summer break. When schools are out for the summer in mid-June, the administrators who are responsible for budgetary and personnel planning are largely out of office and unavailable to make new plans for budgets and personnel.

14. OSPI does not know the identity or number of students who will exit special education due to turning 21 years of age before September. Among the students of that age who are receiving special education services, many will graduate and receive diplomas in June. Others may voluntarily drop out of school. School districts assign exit codes to students who exit special education. Only one of those exit codes—"Reached Maximum Age" (RMA)—corresponds to a student's aging out pursuant to Wash. Rev. Code § 28A.155.020. For the previous two school years, on average less than 20 students have been assigned the RMA exit code. Another exit code (D2) potentially involves a student's aging out but may also be used when a student voluntarily drops out. The timing of data submitted varies by school district as



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

some districts do not report exit, graduation, and drop out data until summer school is finished. OSPI receives this data in October of the following school year through the adjusted cohort preview. Even then, a student-by-student inquiry in each school district would be needed to identify which students exited special education due to aging out.

15. As to Plaintiff E.A., the information in OSPI's possession indicates that he is on track to graduate with a regular diploma at the end of the current school year. Though students in E.A.'s situation often receive transition services—which are aimed at helping students transition to work, independent-living, or post-secondary education—E.A.'s parents have declined to consider transition services for E.A.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this 30th day of May 2023, at Olympia, WA.

/s/ Tania May
DR. TANIA MAY
Assistant Superintendent of Special Education



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused the foregoing document to be served via the Court's CM/ECF system and via electronic mail, per agreement, on the following:

Ian Crosby
Susman Godfrey L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
icrosby@susmangodfrey.com
COxley@susmangodfrey.com
*Counsel for Plaintiffs*

Lara Hruska
Alex Hagel
Kaitlin Leifeur-Masterson
Cedar Law PLLC
113 Cherry Street, PMB 96563
Seattle, WA 98104
lara@cedarlawpllc.com
alex@cedarlawpllc.com
kaitlin@cedarlawpllc.com
*Counsel for Plaintiffs*

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED this 30th day of May 2023, at Seattle, Washington.

*/s/ Brian H. Rowe*
BRIAN H. ROWE, WSBA #56817
Assistant Attorney General



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744