UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| N.D., et al., <br><br> Plaintiffs, <br><br> v. <br><br> CHRIS REYKDAL, et al., <br><br> Defendants. | CASE NO. 2:22-cv-01621-LK <br><br> ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION |

This matter comes before the Court on Plaintiffs' motion for provisional certification of a class comprised of "disabled students at risk of prematurely 'aging out' of their special educational programs," and for "a preliminary injunction that would keep those students in those programs during the pendency of this litigation until they reach the age of twenty-two." Dkt. No. 35 at 6. For the reasons set forth below, the Court denies the motion.[1]

---

[1] Because the Court can decide the matter based on the parties' filings, it denies Plaintiffs' request for oral argument. Dkt. No. 35 at 1.

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 1

## I. BACKGROUND

At issue in this case is whether Washington's law that ends special education services at the end of the school year during which a student turns 21 violates the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The IDEA requires states to provide a "free appropriate public education" ("FAPE") to all individuals with disabilities residing in the state "between the ages of 3 and 21, inclusive[.]" 20 U.S.C. § 1412(a)(1)(A).[2] As a result, students' "eligibility for IDEA services ordinarily ends on [their] twenty-second birthday." *E.R.K. v. State Dep't of Ed.*, 728 F.3d 982, 986 (9th Cir. 2013). However, the statute includes an exception: a state's duty to provide a FAPE to students with disabilities does not extend to individuals aged 3 through 5 or 18 through 21 "to the extent that [the duty's] application to those children would be inconsistent with State law or practice . . . respecting the provision of public education to children in those age ranges[.]" 20 U.S.C. § 1412(a)(1)(B)(i). Washington law has such an inconsistency because it does not require provision of public education through a student's twenty-second birthday. Specifically, it "require[s] each school district in the state to insure an appropriate educational opportunity for all children with disabilities between the ages of three and *twenty-one*, but when the twenty-first birthday occurs during the school year, the educational program may be continued until the end of that school year." Wash. Rev. Code § 28A.155.020 (emphasis added); *see also* Wash. Admin. Code § 392.172A.02000(2)(c).[3]

In *E.R.K*, the Ninth Circuit addressed the above-mentioned IDEA exception and held that states "cannot deny special education to disabled students aged 18 through 21 if it in fact provides

---

[2] The obligation to provide a FAPE does not extend to "[c]hildren with disabilities who have graduated from high school with a regular high school diploma." 34 C.F.R. § 300.102(a)(3)(i).

[3] State law defines "school year" as "the annual period commencing on the first day of September of one calendar year and ending the last day of August of the ensuing calendar year[.]" Wash. Admin. Code § 392.121.031. Therefore, the current school year ends on August 31, 2023.

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 2

1 'free public education' to nondisabled students in that range of ages." 728 F.3d at 987. Plaintiffs argue that Washington provides nondisabled students who are 21 years or older free secondary education through two adult education programs described below. Dkt. No. 35 at 18–20. Defendants do not dispute that the programs are secondary education, but dispute that they are provided without charge. Dkt. No. 36 at 15–16. They also argue that Plaintiffs are not entitled to provisional class certification or a preliminary injunction because, among other reasons, named Plaintiffs N.D. and E.A. lack standing and have not established a likelihood of success on the merits or irreparable harm. *Id.* at 9–11, 15–16.

**A.       Washington's Education System**

       1.   <u>Washington's Special Education Services</u>

The Office of Superintendent of Public Instruction ("OSPI") is a named Defendant and the primary state agency charged with overseeing public K–12 education in Washington, working with 295 school districts across the state. Dkt. No. 40 at 2. Washington provides special education and related services to over 140,000 eligible students. *Id.* at 1.

Special education services include "a wide range of services depending on the particular needs of the individual enrolled students[.]" *Id.* at 2. Specialized services may include speech-language assistance, occupational or physical therapy, assistance from a paraeducator, and adaptive or assistive technology. *Id.*

The specific services each student will receive, their academic and functional goals, and the expectations for the school year are set forth in their individualized education program ("IEP"). *Id.* at 2–3. An IEP is created and implemented by the student's unique IEP team. *Id.* at 3. Required members of the team include the student's parent(s) or guardian(s), at least one of the student's general and special education teachers, a qualified representative of the school district, and an individual who can interpret the instructional implications of evaluation results. *Id.* The IEP must

1  contain certain required elements, including the student's present academic
2  achievement/performance, measurable annual goals, a statement of special education services to
3  be provided, extended school year services if necessary, and a post-secondary transition plan if the
4  student will be turning 16 or older during the IEP (or younger if appropriate). *Id.*[4]

   2. <u>Washington's Secondary Education Programs</u>

Washington has created a system of community and technical colleges that provide "continuing higher education," "occupational education and training," and "adult basic skills and literacy education." Wash. Rev. Code § 28B.50.020. The community and technical colleges may issue high school diplomas or certificates to individuals who meet statutory criteria. *Id.* § 28B.50.535.

The community and technical colleges are overseen by the Washington State Board for Community and Technical Colleges ("SBCTC"). *Id.* § 28B.50.030(6) (defining the "College board" to mean "the state board for community and technical colleges created by this chapter"); *id.* § 28B.50.090 (defining powers and duties of the College board). SBCTC supervises and monitors two basic education for adults ("BEdA") programs that Plaintiffs contend constitute free secondary education. Dkt. No. 35-3 at 9; Dkt. No. 35 at 19–20.

One such program, High School + ("HS+") is "the state's competency-based high school diploma program" for students who are at least 18 years old. Dkt. No. 35-3 at 10; *id.* at 27. HS+ "renders a high school diploma" that is the same as those awarded by the state's secondary schools. *Id.* at 11, 15–16. SBCTC monitors to ensure "that the high school diplomas being awarded by the

---

[4] Some students who need special education services between the ages of 18 and 21 receive those services through the state's BRIDGES Transition program, which focuses on "personal living skills, employability, daily and community living, functional academics, and connection with the agencies that are available to assist students once they exit the District." Dkt. No. 38 at 4. IEP teams also link those students with "adult-service agencies and employment opportunities." *Id.*

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 4

34 colleges meet the requirements stated in [the] statute[.]" *Id.* at 13. The HS+ program "is offered by the state's community and technical colleges, often in partnership with community-based organizations." *Id.* at 27.

SBCTC also oversees the community and technical colleges' preparation classes for the state's General Education Development ("GED") exam. *Id.* at 13. Successful passage of the GED exam renders a high school equivalency certificate. *Id.* at 14; Wash. Admin. Code § 131-48-030. Individuals who are at least 16 years old may participate in the BEdA GED preparation classes but if they under 19, they must be formally released from high school before participating. Dkt. No. 35-3 at 50.

Of particular relevance here, the community and technical colleges charge tuition of $25 per quarter for the HS+ and GED programs. *Id.* at 18. Each college is required to have a process and criteria to waive the tuition. *Id.* at 20–21. The criteria include inability to pay. *Id.* at 21. Under that rubric, the HS+ and GED programs "can be offered free of charge if the student asks for and qualifies for a waiver." *Id.* at 22; *id.* at 27 ("Many students qualify for waivers" of the $25 tuition). Defendants do not allege, and there is no evidence in the record, that either the HS+ or the GED programs provide IEP services to students with disabilities.

**B.    Plaintiff N.D. Files a Complaint**

Plaintiff N.D., by and through his parents and guardians, filed a class action complaint for declaratory and injunctive relief in November 2022 against Defendants OSPI and Chris Reykdal in his capacity as the Superintendent of Public Instruction. Dkt. No. 2-1. N.D. was eligible for special education services because he has Autism. *Id.* at 4.

The complaint alleged that N.D. "was denied his right to a continued FAPE as required under federal law by the IDEA until his 22nd birthday solely because he had exceeded [Washington's] age cutoff[.]" *Id.* at 2. Specifically, N.D. "moved from an out-of-state residential

school, where he had been placed on an IEP by Seattle Public Schools since 2017, to an adult residential placement in Kirkland after Seattle Public Schools terminated educational services to him on August 31, 2022[.]" *Id.* at 3. Plaintiffs further allege that "[h]ad N.D. not been improperly denied a FAPE as of August 31, 2022, he would have continued to reside in Seattle and receive educational services through Seattle Public Schools." *Id.*

C. **The Complaint Is Amended to Add Plaintiff E.A.**

In March 2023, N.D. filed a motion for leave to file an amended complaint, which the Court granted. Dkt. Nos. 22, 27. The amended complaint added an additional named plaintiff, E.A., by and through his parents and guardians. Dkt. No. 31 at 1–2.

Plaintiff E.A. is an individual with a disability (Autism) who turns twenty-one in August 2023. *Id.* at 3, 5; Dkt. No. 35-1 at 1. He has been receiving a FAPE through the Selah School District, including one-on-one support from a paraeducator, but he will no longer receive special education services when the school year ends on August 31, 2023. Dkt. No. 31 at 3; Dkt. No. 39 at 2. The amended complaint alleges that E.A. "would meaningfully benefit from additional special education and related services, including extended school year services (ESY) under the IDEA until his 22nd birthday in summer 2024." Dkt. No. 31 at 4.

E.A.'s mother states that he "suffered extraordinary regression during the COVID-19 related school closures" based on the loss of his routines and in person instruction. Dkt. No. 35-1 at 2. He lost "significant communication skills" and regressed academically. *Id.* at 3. Once he returned to in person school, "[i]t took months of services" to return him to "where he had been emotionally, behaviorally, and academically[.]" *Id.* His mother believes that E.A. "will experience something similar once he is exited from special education." *Id.*[5]

---

[5] During the 2020-2021 school year, E.A. was in the school building the majority of the time with his dedicated paraeducator and attending classes by Zoom while his peers attended only through Zoom. Dkt. No. 37-1 at 90.

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 6

The amended complaint seeks declaratory and injunctive relief as well as "compensatory education to Plaintiffs N.D., E.A., and members of the Plaintiff Class to the extent they have already been unlawfully denied a FAPE[.]" Dkt. No. 31 at 13–14. In addition to the injunctive relief described below, Plaintiffs seek a declaration that Defendants have violated the IDEA and that "Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000 are invalid as contrary to the IDEA to the extent they do not ensure eligible students receive a FAPE until they turn 22[.]" *Id.* at 14.

### D.  Plaintiffs File a Motion for a Preliminary Injunction

On May 10, 2023, Plaintiffs filed this Motion for Provisional Certification and Preliminary Injunction. Dkt. No. 35. They request that the Court certify a provisional class defined as:

> All individuals who will be twenty-one on August 31, 2023, and who are at that time being provided special education services pursuant to an individualized education program ("IEP") implemented by any local educational agency ("LEA") in Washington.

Dkt. No. 35-6 at 1.[6] They also seek an order enjoining Defendants "from allowing any LEA subject to their supervision to terminate IEP services for any member of said provisionally certified class by reason of said class member's age prior to said class member having reached age twenty-two" and requiring them "to take all actions necessary to ensure that each said class member to whom the Court's injunction extends continues to receive IEP services until the earlier of the resolution of this litigation or said class member reaches the age of twenty-two." Dkt. No. 35-6 at 1–2.

---

[6] By separate motion, Plaintiffs seek certification of a class defined as:

> All individuals who turned 21 during or after the 2019-2020 school year and had not yet turned 22 by two years before the filing of this action or will turn 21 during the pendency of this action who are provided or were provided a FAPE under the IDEA by any school district in Washington and who but for their turning 21 would otherwise qualify or would have qualified for a FAPE because they have not or had not yet graduated from high school with a "regular high school diploma" as defined at 34 C.F.R. § 300.102(a)(3)(iv).

Dkt. No. 45 at 7–8.

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 7

1    Defendants responded by challenging E.A.'s standing and arguing that he is on track to
2    graduate and earn a regular high school diploma after completing an ESY program in the summer
3    of 2023. Dkt. No. 36 at 9; Dkt. No. 39 at 3; Dkt. No. 40 at 7. Plaintiffs argued in their reply brief
4    that E.A. might not receive a "regular" diploma or one that is "fully aligned with State standards."
5    Dkt. No. 42 at 6. The Court denied Defendants' subsequent request to strike the new argument but
6    granted their alternative request for an opportunity to respond to it. Dkt. No. 44 at 1; Dkt. No. 47
7    at 1. Defendants then filed their response to the new argument. Dkt. No. 48. The response indicated
8    that E.A. would receive a regular high school diploma by July 31, 2023. *Id.* at 1; Dkt. No. 49 at 3.
9    As that date was quickly approaching, the Court asked for supplemental briefing from the parties
10   regarding whether E.A. in fact received a regular high school diploma. Dkt. No. 50. Defendants
11   responded that E.A. has "earned" and "will soon receive" a regular high school diploma but has
12   not received it yet because on July 24, 2023, E.A. requested a due process hearing and invoked a
13   statutory "stay-put." Dkt. No. 54 at 1; Dkt. No. 52-1 at 25–26; 20 U.S.C. § 1415(j). According to
14   Defendants, "[t]he stay-put means that E.A. must stay in his current school placement and that his
15   school district cannot issue his high school diploma until the due process hearing concludes." Dkt.
16   No. 54 at 1 (citing Wash. Admin. Code § 392-172A-05125(1); 34 C.F.R § 300.518(a)); Dkt. No.
17   56-1 at 2 ("The District's understanding is that graduation is a change in placement that cannot go
18   into effect while there is a due process hearing pending challenging that change in placement.").

19   Defendants contend that "E.A.'s invocation of a stay-put cannot cure his lack of standing
20   to represent a class but confirms he is preoccupied with two unique defenses." Dkt. No. 54 at 1.
21   First, E.A. has earned a regular high school diploma and will receive it when the due process
22   proceeding concludes, most likely within 75 days. *Id.* at 1–2. At that point, E.A. "will be ineligible
23   for further special education services under the IDEA by virtue of his diploma. *Id.* at 2 (citing 34
24   C.F.R. § 300.102(a)(3)(i)). Second, "E.A. cannot litigate—much less represent a class—before

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 8

1  exhausting administrative channels for the same relief he seeks in litigation." *Id.* at 2; Dkt. No. 52-
2  1 at 25–26 (listing relief sought in due process hearing).

3        Plaintiffs counter that the stay-put does not preclude Defendants "from issuing a diploma
4  or the procedurally-required prior written notice *proposing* to change a student's placement on that
5  basis while a stay-put is in force." Dkt. No. 57 at 3 (emphasis original). E.A. assumed that his
6  school district was going to issue him a diploma and written notice to change his placement based
7  on that diploma, so he invoked the stay-put provision "only to prevent any notice to that effect
8  from becoming effective." *Id.* But the school district did not issue the expected notice or diploma.
9  Instead, the notice the school district provided his parents checked a box that his entitlement to a
10 FAPE will end because "[t]he student's 21st birthday will occur on or before Aug[ust] 31, 2023[.]"
11 Dkt. No. 56-2 at 2. The form did not check the other box to indicate that E.A.'s entitlement to a
12 FAPE would end because he "is scheduled to graduate with a regular high school diploma." *Id.*
13 And the district has confirmed that the "stay-put does not operate to extend a student's eligibility
14 for services beyond the age of eligibility, and [that] the District therefore will not be enrolling this
15 student to receive services during the 2023-24 school year." Dkt. No. 56-1 at 2; *see also* Dkt. No.
16 57 at 3. Therefore, E.A.'s IEP services are ending on August 31, 2023 absent an injunction.

## II. DISCUSSION

18       The Court has jurisdiction over Plaintiffs' claims because they arise under the IDEA. 28
19 U.S.C. § 1331; 20 U.S.C. § 1400 *et seq.*

20       Defendants argue that E.A. is the "only possible representative plaintiff for the provisional
21 class since N.D. falls outside of even the improperly expanded class definition," and even so, E.A.
22 lacks standing because he has earned a regular high school diploma and he must first exhaust his
23 administrative remedies. Dkt. No. 36 at 10–11. Plaintiffs counter that E.A. has not received a
24 regular high school diploma and his pending due process hearing is irrelevant. Dkt. No. 57 at 1.

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 9

Standing is a "threshold issue and an essential and unchanging part of the case-or-controversy requirement of Article III." *B.K. v. Snyder*, 922 F.3d 957, 966 (9th Cir. 2019) (cleaned up). Accordingly, the Court must determine that "the constitutional standing requirements are satisfied before proceeding to the merits." *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007). The Court therefore first addresses standing, then considers Defendants' exhaustion defense and whether the provisional class, if certified, would be entitled to a preliminary injunction.[7]

**A.    Standing**

    1.   Legal Standards

The plaintiff "bears the burden of showing that he has standing for each type of relief sought," including an injunction. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011) ("In a class action, the plaintiff class bears the burden of showing that Article III standing exists."). To obtain injunctive relief, a plaintiff "must have suffered an injury in fact—a concrete and imminent harm to a legally protected interest, like property or money—that is fairly traceable to the challenged conduct and likely to be redressed by the lawsuit." *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023) (citing *Lujan*, 504 U.S. at 560–61); *see also Strike 3 Holdings LLC v. Doe*, 849 F. App'x 183, 185 (9th Cir. 2021) (explaining that "[s]tanding for declaratory relief requires a similar showing as any other case or controversy.").

For alleged future injuries, the "'threatened injury must be certainly impending to constitute injury in fact'"; "[a]llegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis omitted) (quoting *Whitmore v. Arkansas*,

---

[7] With the current record, it is most efficient to decide whether the putative class is entitled to a preliminary injunction first and leave for another day, with complete briefing, the issue of whether they are entitled to class certification. Dkt. No. 45.

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 10

495 U.S. 149, 158 (1990)). The same requirements apply in class actions: a "named plaintiff in a class action must show that the threat of injury" is "real and immediate, not conjectural or hypothetical." *Sosna v. Iowa*, 419 U.S. 393, 402–03 (1975) (cleaned up); *see also Bates*, 511 F.3d at 985 (explaining that "[t]he plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." (cleaned up)). In addition to those elements, "the claimed threat of injury must be likely to be redressed by the prospective injunctive relief." *Bates*, 511 F.3d at 985.

Standing "is a jurisdictional element that must be satisfied prior to class certification." *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985); *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004). A litigant who fails to establish standing may not "seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

When evaluating a plaintiff's standing, "regardless of whether the plaintiff sues individually or as class representative, [courts] look concretely at the facts that pertain to that plaintiff." *B.K.*, 922 F.3d at 967. The Court therefore examines the facts as they pertain to Plaintiffs' standing to obtain the preliminary injunction sought.

2. E.A. Has Standing

Defendants argue that E.A. lacks standing because he has earned a regular high school diploma. Dkt. No. 54 at 1. As such, they maintain that he has not shown an injury because the obligation to provide a FAPE does not extend to "[c]hildren with disabilities who have graduated from high school with a regular high school diploma." 34 C.F.R. § 300.102(a)(3)(i).

The "snapshot in time for determining initial standing" is now, when the Plaintiffs seek certification of a provisional class. *Bates*, 511 F.3d at 987. At this point, even if E.A. has *earned* a diploma, he has not *received* one. Thus, he has not "graduated from high school with a regular high school diploma." 34 C.F.R. § 300.102(a)(3)(i). The anticipation of a diploma—even one that

the student has earned—is insufficient to defeat their standing. *A.R. v. Conn. State Bd. of Educ.*, 5 F.4th 155, 162–63 (2nd Cir. 2021) (affirming the district court's conclusion that the plaintiff's earning of a high school diploma did not defeat standing when he "deferred" receipt of the diploma and thus did not receive it). E.A.'s school district has confirmed that they are ending his IEP services not because of an anticipated diploma but because his "21st birthday will occur on or before Aug[ust] 31, 2023." Dkt. No. 57 at 2. That threatened injury—the loss of special education services—is a "concrete and particularized legal harm" that is "real and immediate." *Bates*, 511 F.3d at 985 (cleaned up).

The school district's clear proclamation that E.A. will lose services because of his age also satisfies the causation element: the impending loss of IEP services on August 31, 2023 is caused by the state's challenged conduct—the ending of IEP services before a student turns 22. *Lujan*, 504 U.S. at 560. And E.A. has shown that his injury would be redressable by the injunction sought. Enjoining Defendants from "terminat[ing] IEP services for any member of [the] provisionally certified class by reason of said class member's age prior to said class member having reached age twenty-two" as Plaintiffs seek, Dkt. No. 35-6 at 1, would require Defendants to continue to provide such services to E.A. until he turns 22. Therefore, E.A. has shown that the requested injunction will remedy the threatened injury. *Harris v. Bd. of Supervisors, Los Angeles Cnty.*, 366 F.3d 754, 763 (9th Cir. 2004) (to meet the redressability component of standing, "plaintiffs must also demonstrate that the requested relief will remedy their injury"). E.A. therefore has standing to seek the relief sought by the proposed provisional class.

Defendants also argue that N.D. lacks standing to pursue the injunctive relief the class seeks because he is not a member of the proposed provisional class. Dkt. No. 36 at 10; *see also Slayman v. FedEx Ground Package Sys.*, 765 F.3d 1033, 1047–48 (9th Cir. 2014) (named plaintiff lacked standing to seek injunctive or declaratory relief because he would not benefit from that

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 12

relief). However, "only one Plaintiff needs to have standing for a class action to proceed." *In re Zappos.com, Inc.*, 888 F.3d 1020, 1028 n.11 (9th Cir. 2018); *Casey v. Lewis*, 4 F.3d 1516, 1519 (9th Cir. 1993) (in a putative class action, the focus is on whether "any named plaintiff" has standing). Because E.A. has standing, the Court does not consider whether N.D. does too.

B.     **Exhaustion of Administrative Remedies**

The IDEA "provide[s] administrative appeal procedures to be pursued before seeking judicial review." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1302 (9th Cir. 1992); *Kutasi v. Las Virgenes Sch. Dist.*, 494 F.3d 1162, 1163 (9th Cir. 2007) ("[P]laintiffs must exhaust administrative remedies before filing a civil lawsuit if they seek relief for injuries that could be redressed to any degree by the IDEA's administrative procedures."). Now that E.A. has filed a due process challenge, Defendants argue that he "cannot litigate—much less represent a class—before exhausting administrative channels for the same relief he seeks in litigation." Dkt. No. 54 at 2.[8] They argue that "[t]he relief E.A. seeks in his due process hearing request is nearly identical to the relief Plaintiffs seek in their complaint and in their provisional motion." Dkt. No. 54 at 2. Plaintiffs counter that the claim advanced and relief sought are different in the administrative forum. Dkt. No. 57 at 5–6. E.A.'s due process complaint confirms that contention; his due process challenge focuses on challenging the issuance of a diploma, excludes E.A.'s challenge to being aged out of his placement, and does not seek an injunction related to the age issue. Dkt. No. 52-1 at 15 n.1, 25–26. Therefore, that issue, and the related relief sought, are not identical to the relief sought here.

In addition, the IDEA's exhaustion requirement is not "rigid" and is "subject to certain exceptions." *Hoeft*, 967 F.2d at 1302–03. Among those exceptions, plaintiffs are not required to

---

[8] Defendants included an affirmative defense in their answer to the amended complaint that "Plaintiffs failed to exhaust administrative remedies." Dkt. No. 34 at 10.

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 13

exhaust administrative remedies if the defendant "has adopted a policy or pursued a practice of general applicability that is contrary to the law[.]" *Id.* at 1303–04 (emphasis omitted). The Court in *Hoeft* explained that the "preliminary inquiry" is whether "only questions of law are involved in determining the validity of a policy, as when the policy facially violates the IDEA[.]" *Id.* at 1305. That is the case here: Plaintiffs challenge the facial legality of Washington's generally applicable age out law. Regardless of the merits of their claim, Plaintiffs are not required to exhaust administrative remedies prior to challenging that broadly applicable policy and practice. *See R.P.-K. v. Haw. Dep't of Educ.*, 272 F.R.D. 541, 552–53 (D. Haw. 2011) (finding that plaintiffs were not required to exhaust the "discrete legal question" of whether a state law improperly denied a FAPE to students who reached the age of 20); *see also K.S. ex rel. C.S. v. R.I. Bd. of Educ.*, 44 F. Supp. 3d 193, 197 (D.R.I. 2014) (factual inquiry into the availability of public education programs to general education students over the age of 21 is "an issue to which specialized administrative understanding plays little role" (cleaned up)).

Where, as here, the case presents a legal issue that "does not require technical educational expertise or the benefit of an administrative record," a court must still "afford[] the agency an opportunity to consider and correct errors." *Hoeft*, 967 F.2d at 1307. Nonetheless, as discussed, Plaintiffs' claim does not challenge an "error," but rather an existing law. *Cf. Student A ex rel. Parent A v. San Francisco Unified Sch. Dist.*, 9 F.4th 1079, 1082–83 (9th Cir. 2021) (affirming dismissal for failure to exhaust when plaintiffs "did not challenge policies or practices of general applicability as contrary to law," but instead "challenged what amounted to 'failures in practice'" by the school district). And Plaintiffs gave Defendants an opportunity to change course; before filing this case, Plaintiffs informed OSPI of its challenge to the age out law. Dkt. No. 35-5 at 8–9; Dkt. No. 52-1 at 3–6. They filed suit when those efforts proved unsuccessful. Dkt. No. 1.

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 14

Accordingly, E.A. was not required to exhaust administrative remedies before bringing this challenge.

**C.      Preliminary Injunction**

Plaintiffs seek an order enjoining Defendants "from allowing any LEA subject to their supervision to terminate IEP services for any member of [the] provisionally certified class by reason of said class member's age prior to said class member having reached age twenty-two" and requiring them "to take all actions necessary to ensure that each said class member to whom the Court's injunction extends continues to receive IEP services until the earlier of the resolution of this litigation or said class member reaches the age of twenty-two." Dkt. No. 35-6 at 1–2.

Plaintiffs argue that they are entitled to a preliminary injunction because they are "reasonably certain to prevail on the merits and will suffer irreparable harm from termination of their existing FAPEs while this lawsuit is pending." Dkt. No. 35 at 13. Defendants counter that Plaintiffs are not entitled to the mandatory injunction they seek, they have not shown a likelihood of success on the merits or irreparable harm, and the balance of equities and the public interest favor Defendants. Dkt. No. 36 at 13–18.

1. <u>Legal Standards</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs seeking a preliminary injunction must establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Id.* at 20. The "possibility" of irreparable harm is insufficient; the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22 (emphasis original). Likelihood of success is the most important *Winter* factor. *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015).

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 15

The Ninth Circuit also employs a "sliding scale" approach, under which the four elements are balanced "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For example, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotation marks omitted). Under that rubric, a plaintiff must still "make a showing on all four prongs" to obtain a preliminary injunction. *Id.* The moving party bears the burden of persuasion and must make a clear showing that it is entitled to such relief. *Juarez v. Asher*, 556 F. Supp. 3d 1181, 1187 (W.D. Wash. 2021) (citing *Winter*, 555 U.S. at 22).

### 2. Plaintiffs Seek a Mandatory Injunction

The parties dispute whether Plaintiffs are seeking a mandatory injunction or merely seeking to maintain the status quo. Plaintiffs contend that the requested injunction would require Defendants to "simply maintain the status quo and continue to educate the students already enrolled in their classes as required under their IEPs." Dkt. No. 35 at 23.[9] Defendants counter that "Plaintiffs' requested relief would overturn the status quo rather than preserve it—requiring Defendants to take rather than abstain from action[.]" Dkt. No. 36 at 6; *see also id.* at 13–14.

Injunctions requiring parties to take affirmative action rather than simply maintaining the status quo are "particularly disfavored," *Garcia*, 786 F.3d at 740 (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)), and require the moving parties to shoulder a "doubly

---

[9] Plaintiffs also argue that "a 'stay-put' order maintaining a child's current education placement is mandatory during the pendency of individual proceedings to enforce rights under the IDEA." *Id.* (citing 20 U.S.C. § 1415(j)). But Plaintiffs do not contend that such a stay-put exists for all of the putative proposed class members. If that were true, there would be no need for an injunction from this Court.

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 16

demanding" burden of establishing "not simply that [they are] likely to succeed," but that "the law and facts *clearly favor* [their] position[.]" *Id.* (emphasis original); *Stanley*, 13 F.3d at 1320.

Here, Plaintiffs are seeking to alter the status quo. Absent an injunction, students who will be 21 years old before September will age out and not receive special education services during the upcoming school year. *See* Dkt. No. 36 at 13. Under the injunction sought, school districts would have to "take all actions necessary" to continue to provide special education services to those students until the litigation resolves or they turn 22. Dkt. No. 35-6 at 2. That change would require the school districts to extend services and engage in additional planning and hiring. Dkt. No. 40 at 5 (explaining that the "continued provision of special education services past the date range of an IEP would require a new IEP and new planning by the school districts, IEP teams, and personnel" and the "hiring of service providers and personnel"); Dkt. No. 39 at 2 (three students in the Selah School District, including E.A., will exit the district due to graduation or aging out; continuing to provide services to them for the upcoming school year would require hiring "at least two additional paraeducators"). Because the relief Plaintiffs request would alter the status quo, they are seeking a mandatory injunction and the Court examines whether they have met their "doubly demanding" burden. *Garcia*, 786 F.3d at 740.

### 3. Plaintiffs Have Not Adequately Demonstrated Irreparable Harm

The Court next examines whether Plaintiffs have adequately demonstrated that they will suffer irreparable harm absent an injunction. *All. for the Wild Rockies*, 632 F.3d at 1135. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Plaintiffs state, and Defendants do not dispute, that money damages are not available under the IDEA. Dkt. No. 35 at 22; *see Witte v. Clark Cnty. Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir. 1999), *overruled on other grounds by Payne v. Peninsula Sch. Dist.*, 653 F.3d 863 (9th Cir. 2011).

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 17

Plaintiffs argue that they will suffer irreparable harm if they are forced to exit their special education programs before they turn 22. Dkt. No. 35 at 22–23. E.A.'s mother states that when E.A.'s education was interrupted by the COVID-19 pandemic, he experienced mental health issues, lost social skills, and regressed academically, and she anticipates similar outcomes when his special education services end. Dkt. No. 35-1 at 2–3. Plaintiffs argue that other students will suffer similar consequences when their services end. Dkt. No. 35 at 22–23. Defendants respond that "[t]he only harm asserted by Plaintiffs—an exit from special education during a student's age-21 school year instead of at age 22—can be rectified by compensatory education and is therefore not irreparable." Dkt. No. 36 at 16.

Relying on *N.D. v. State Department of Education*, 600 F.3d 1104 (9th Cir. 2010), Plaintiffs argue that "[t]he Ninth Circuit has long recognized that disruption of special education services causes irreparable harm." Dkt. No. 35 at 22; *see also* Dkt. No. 42 at 15. But *N.D.* did not hold that *all* disruptions cause irreparable harm. Rather, the court found that the plaintiffs had demonstrated that they were likely to experience irreparable harm from Hawaii's practice of closing schools for all students, including those on IEPs, on 17 Fridays due to budgetary reasons. *N.D.*, 600 F.3d at 1107–08, 1113. Parents of the affected students submitted declarations "detailing the injuries their children had suffered" as a result of the furloughs and stating that it could be expected that students would continue to experience the same effects from the ongoing practice. *Id.* at 1112. Here, while the Court is sympathetic to the harms E.A. suffered from the COVID-19 related school closures and his mother's fear that the harms could reoccur when his services end, the facts do not rise to the level of a showing of irreparable harm. Specifically, Plaintiffs have not shown that E.A.—or any student—is likely to experience the same effects from a long-planned end to their special education services as they experienced from the unexpected and sudden school closures during the pandemic. In addition, those students are entitled to transition services after their IEP services end,

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 18

although E.A. has rejected them. Dkt. No. 39 at 3. Neither party has submitted expert evidence, and at this stage, there is a dearth of evidence in the record regarding the harms the students are expected to suffer and whether compensatory education services, if later granted, would be sufficient to remedy them. A speculative injury does not constitute an "irreparable injury." *Colorado River Indian Tribes v. Parker*, 776 F.2d 846, 849 (9th Cir. 1985); *Prime Grp., Inc. v. Dixon*, No. 2:21-cv-00016-RAJ, 2021 WL 1664007, at *6–7 (W.D. Wash. Apr. 28, 2021) (finding that plaintiff failed to establish a likelihood of irreparable harm based on the lack of evidence establishing "irreparable harm, not mere speculation of such harm.").[10]

Therefore, based on the current record, Plaintiffs have not met their burden to demonstrate that they will suffer irreparable harm absent an injunction. Failure to establish one of the *Winter* prongs is fatal to a motion for preliminary injunctive relief. *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (holding that a "plaintiff must make a showing on all four prongs to obtain a preliminary injunction" (cleaned up)). Having determined that Plaintiffs have not established this *Winter* prong, the Court need not consider the others to conclude that they have failed to meet their burden to obtain a preliminary injunction.

Because the Court is denying the request for preliminary injunctive relief, it does not reach Defendants' contention that the relief Plaintiffs seek is overly broad, and denies as moot Plaintiffs' request for provisional certification of an injunctive class. *See, e.g.*, *Dunsmore v. San Diego Cnty. Sheriff's Dep't*, 20-cv-00406-AJB-WVG, 2022 WL 3362279, at *6 (S.D. Cal. Aug. 15, 2022)

---

[10] Plaintiffs also rely on an article to support their anticipated harm. Dkt. No. 35 at 23 n.4 (citing HM Genova *et al.*, *Effects of School Closures Resulting From COVID-19 in Autistic and Neurotypical Children*, Front. Educ. 6:761485 (Nov. 23, 2021), https://www.frontiersin.org/-articles/10.3389/feduc.2021.761485/full). Defendants did not object to the Court considering that article, but regardless, it does not assist Plaintiffs in demonstrating irreparable harm. As reflected in its title, the article focuses on the "Effects of School Closures Resulting *From COVID-19*" and the authors note in the introduction that results from the study "indicate that children with autism are at greater risk for negative outcomes *due to emergency-related school disruptions*." (emphasis added).

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION AND FOR PROVISIONAL CLASS CERTIFICATION - 19

(denying as moot plaintiffs' motion for provisional class certification of an injunctive class after denying their motion for a preliminary injunction).

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' motion for provisional class certification and a preliminary injunction. Dkt. No. 35.

Dated this 31st day of August, 2023.

*Lauren King*

Lauren King
United States District Judge