1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

N.D., et al.,

               Plaintiffs,

     v.

CHRIS REYKDAL, et al.,

               Defendants.

CASE NO. 2:22-cv-01621-LK

ORDER DENYING WITHOUT
PREJUDICE MOTION TO
APPROVE SETTLEMENT
AGREEMENT

16
17
18
19
20

     This matter comes before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and for Certification of Settlement Class. Dkt. No. 86. The Court has considered the parties' Settlement Agreement, Dkt. No. 86-1 at 4–5, and the balance of the record. For the reasons discussed below, the Court denies without prejudice their request for preliminary settlement approval.

21

## I.    BACKGROUND

22

### A.    Factual Background and Procedural History

23
24

     Plaintiffs filed this putative class action alleging that Washington's law that ends special education services at the end of the school year during which a student turns 21 violates the

1    Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Dkt. No. 31 at 12–

2    13; Wash. Rev. Code § 28A.155.020. The IDEA requires states to provide a "free appropriate

3    public education" ("FAPE") to all individuals with disabilities residing in the state "between the

4    ages of 3 and 21, inclusive[.]" 20 U.S.C. § 1412(a)(1)(A). As a result, students' "eligibility for

5    IDEA services ordinarily ends on [their] twenty-second birthday." *E.R.K. v. State Dep't of Ed.*,

6    728 F.3d 982, 986 (9th Cir. 2013). However, the statute includes an exception: a state's duty to

7    provide a FAPE to students with disabilities does not extend to individuals aged 3 through 5 or 18

8    through 21 "to the extent that [the duty's] application to those children would be inconsistent with

9    State law or practice . . . respecting the provision of public education to children in those age

10   ranges[.]" 20 U.S.C. § 1412(a)(1)(B)(i). Washington law does not require provision of public

11   education through a student's twenty-second birthday; instead, each school district is required "to

12   insure an appropriate educational opportunity for all children with disabilities between the ages of

13   three and *twenty-one*," and if "the twenty-first birthday occurs during the school year, the

14   educational program may be continued until the end of that school year." Wash. Rev. Code

15   § 28A.155.020 (emphasis added); *see also* Wash. Admin. Code § 392.172A.02000(2)(c). Under

16   that framework, both disabled and nondisabled students are ineligible for public education at the

17   end of the school year in which they turn 21. *See* Wash Rev. Code § 28A.225.160(1); *id.*

18   § 28A.150.220(5)(a).

19        Plaintiffs allege that because the State offers adult-education programs to 21-year-olds and

20   waives tuition fees for those who cannot pay, it must also provide free special education services

21   to 21-year-old disabled students. Dkt. No. 31 at 8–11, 13. They filed a motion for provisional

22   certification of a class comprised of "disabled students at risk of prematurely 'aging out' of their

23   special educational programs," and for "a preliminary injunction that would keep those students

24   in those programs during the pendency of this litigation until they reach the age of twenty-two."

1   Dkt. No. 35 at 6. This Court denied the motion for a preliminary injunction, as well as Plaintiffs'

2   subsequent motion for reconsideration. Dkt. Nos. 58, 72.

3          Plaintiffs appealed. Dkt. No. 73. The Ninth Circuit first considered mootness, concluding

4   that while the preliminary injunction appeal was moot as to Plaintiff N.D.—who is now 22 years

5   old—it was not moot as to Plaintiff E.A. Dkt. No. 75 at 10–12. As to the merits, the Ninth Circuit

6   noted that in *E.R.K.*, the court interpreted IDEA's statutory language to mean that a State "cannot

7   deny special education to disabled students aged 18 through 21 if it in fact provides 'free public

8   education' to nondisabled students in that range of ages." *Id.* at 17 (quoting *E.R.K.*, 728 F.3d at

9   987). The court found that Washington offers "free public education" to nondisabled students

10  through age 21 by virtue of its waivers of the $25 tuition fee for students who cannot pay, making

11  IDEA's exception inapplicable. *Id.* at 18. The court thus concluded that "the students have a high

12  likelihood of success on the merits of their claim." *Id.* at 19. The court also found that the students

13  met the other *Winter* factors. *Id.* at 20–23. The court therefore vacated this Court's order denying

14  a preliminary injunction and "remand[ed] for further proceedings including the entry of a

15  preliminary injunction." *Id.* at 23. The court did not address the propriety of class certification

16  because this Court had not addressed that issue. *Id.*

17         After the Ninth Circuit issued its mandate, the Court ordered the parties to file a joint status

18  report proposing how the Court should proceed in light of the Ninth Circuit's opinion. Dkt. No. 78

19  at 1–2. The parties' joint status report stated that they "agree that the Ninth Circuit's opinion

20  effectively resolves the merits of the case in favor of Plaintiffs." Dkt. No. 81 at 2. They reported

21  that Defendant Office of the Superintendent of Public Instruction ("OSPI") "has begun acting as

22  if a final order on the merits has been entered[.]" *Id.* The parties proposed that "the Court enter a

23  Final Order on the Merits, consistent with Plaintiffs' Requests for Relief (a)-(c) of their Amended

24  Complaint" and include certain findings and declaratory relief. *Id.* The parties further agreed that

"the case [wa]s ripe for final determination of class certification and entry of judgment providing relief for class members affected by the unlawful age-out policy" but they "d[id] not agree . . . on how that class should be defined, or the manner in which any compensatory education owed to them should be provided." *Id.* They filed a stipulation to engage in mediation on these topics, Dkt. No. 82, and in the meantime, they agreed that the Court "should issue a preliminary injunction against OSPI, preventing it from 'enforcing the age-out provisions in Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.0200[0](2)(c),' and directing OSPI 'to take all actions necessary to ensure those students are able to continue attending their programs pending this litigation or until reaching the age of twenty-two.'" Dkt. No. 81 at 3 (quoting Dkt. No. 35 at 7).

On July 10, 2024, the Court granted Plaintiffs' motion and certified the following provisional class:

> All students with disabilities in Washington who aged out of their special education programs at the end of the 2022-2023 school year who have not yet turned 22 and all students with disabilities in Washington at risk of aging out of their special education programs before they turn 22 years old as a result of Section 28A.155.020 of the Revised Code of Washington and Section 392.172A.02000(2)(c) of the Washington Administrative Code.

Dkt. No. 83 at 11. The Court also issued the following declaratory judgment:

> (a) OSPI's refusal to ensure the provision of FAPE to Plaintiff E.A. and the members of the provisional class on account of their age violates the IDEA;
>
> (b) By this conduct, OSPI has violated 20 U.S.C. § 1407 and 20 U.S.C. § 1412(11);
>
> (c) Section 28A.155.020 of the Revised Code of Washington and Section 392.172A.02000 of the Washington Administrative Code are invalid as contrary to the IDEA to the extent they do not ensure eligible students receive a FAPE until they turn 22.

*Id.* at 12. And finally, the Court granted the requested preliminary injunction and ordered that:

> Defendant Office of the Superintendent of Public Instruction is enjoined from enforcing the age-out provisions in Section 28A.155.020 of the Revised Code of

Washington and Section 392.172A.02000(2)(c) of the Washington Administrative Code, and is directed to take all actions necessary to ensure that disabled students are able to continue attending their special education programs pending disposition of this matter or until they reach the age of 22.

*Id.* at 14. The Court appointed Plaintiff E.A. to serve as provisional class representative, and the firms of Cedar Law PLLC and Susman Godfrey L.L.P. as class counsel for the provisional class.

*Id.*; Fed. R. Civ. P. 26(g). The parties filed a notice of settlement on July 22, 2024. Dkt. No. 85.

**B.      The Motion for Preliminary Approval of the Settlement Class and Settlement Agreement**

Plaintiffs subsequently filed this motion for preliminary approval of the class action settlement and certification of a settlement class. Dkt. No. 86. They ask the Court to:

(1) certify the proposed settlement class, (2) appoint as class counsel the law firms of Susman Godfrey LLP and Cedar Law PLLC, (3) appoint N.D. and E.A., by and through their respective guardians, as class representatives, (4) grant preliminary approval of the settlement, (5) approve the proposed notice plan, and (6) schedule any final fairness hearing and related deadlines.

*Id.* at 2. They key terms of the settlement are as follows.

1.   <u>Class Definition</u>

The class is defined as:

all students who, within the two years prior to the filing of this lawsuit and up to the present, were exited from special education services [in Washington] due to age before their 22nd birthday.

Dkt. No. 86-1 at 4. Plaintiffs note that "[t]he class definition also accounts for the IDEA's two-year statute of limitations." Dkt. No. 86 at 4 (citing 20 U.S.C. § 1415(6)(B)).

2.   <u>Further Declaratory Relief</u>

The parties agree and request that in addition to the relief the Court has already awarded, Dkt. No. 83, the Court award the following declaratory relief:

the state's policy of aging students out of special education at the end of the school year in which they turn 21 pursuant to Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(c) presently violates the IDEA, has violated the IDEA at all times during the two years preceding the filing of this lawsuit, and

1

2

will continue to violate the IDEA absent a substantial change in the state's policies for charging and waiving tuition for its adult secondary education programs.

3

Dkt. No. 86 at 5; Dkt. No. 86-1 at 4. They further agree that OSPI will take the following actions

4

to ensure that local education agencies ("LEAs") comply with the Court's ruling that Sections

5

28A.155.020 and 392.172A.02000(2)(c) of the Revised Code of Washington violate the IDEA:

6

    a. Direct [LEAs] to extend age eligibility for special education services until the student's 22nd birthday.

7

8

    b. Direct LEAs to offer to immediately resume services under the last implemented [individualized education program ("IEP")] for each student who has not yet turned 22 who aged out during the pendency of the lawsuit.

9

    c. Direct LEAs to reconvene IEP teams for all students in the class who wish to receive an award of compensatory education.

10

Dkt. No. 86 at 5–6; Dkt. No. 86-1 at 4.

11

    3.  <u>Provision of Compensatory Education to Settlement Class Members</u>

12

    The parties' settlement agreement also provides for the provision of compensatory

13

education to eligible students:

14

OSPI shall direct LEAs to reconvene IEP teams for all students in the class who wish to receive an award of compensatory education. Compensatory education shall be awarded to students in the class according to the recommendations of their IEP teams. If a student, IEP team, and LEA agree, a student may receive monetary compensation in lieu of compensatory education. Any class members who have paid privately for special education services after having been exited due to age from LEA-provided special education programs may seek reimbursement of such documented expenses, and OSPI shall direct LEAs to offer reimbursement of reasonable expenses in line with the prior recommendations of the class member's IEP team. OSPI shall direct LEAs that they may not decline to provide compensatory education on grounds of age for IEP services not provided to class members as a result of their exit prior to turning age 22. OSPI shall ensure through the exercise of its supervisory powers, to the extent authorized by law, that LEAs comply with these directions.

15

16

17

18

19

20

21

22

Dkt. No. 86-1 at 4. "The agreement preserves the right of class members to use of either Due

23

Process Hearing procedures (Wash. Admin. Code § 392-172A-05090) or OSPI's Community

24

Complaint process (Wash. Admin. Code § 392-172A-05025) to challenge any proposed offers of

compensatory education by an LEA, or the failure of an LEA to reconvene an IEP team." Dkt. No. 86 at 6; Dkt. No. 86-1 at 4–5.

4. <u>Reimbursement to Guardians of N.D. and E.A.</u>

For E.A., OSPI has agreed to

> reimburse the guardians of E.A. for up to $60,000 in documented expenses incurred to provide him with private educational and related support services since he was exited from the Selah School District on August 31, 2023, and, in lieu of reinstatement in the Selah School District and to avoid further disruption, [to] continue to fund those services through the end of the current school year on August 31, 2024.

Dkt. No. 86-1 at 5. And for N.D., OSPI has agreed to

> directly pay for or reimburse the guardians of N.D. for up to $150,000 in documented expenses for educational services, including without limitation occupational therapy, vocational instruction/counseling, speech therapy, applied behavior analysis, tutoring, social activities, day programming, or any other services that could be available to special education students under the IDEA, including related services such as transportation; Plaintiffs will have up to five years from the entry of judgment to seek such services and will submit all claims for reimbursement within 90 days of the five-year period[.]

*Id.*

5. <u>Attorneys' Fees and Costs</u>

The parties have agreed that OSPI will "pay all Plaintiffs' reasonable attorney's fees and costs incurred in this action through the entry of the settlement decree by the Court," the fees Plaintiffs incurred as part of the preliminary injunction appeal, and "any fees associated with any guardian ad litem process the Court may require," "as well as for any guardian ad litem whose appointment the Court may require pursuant to LCR 17(c) or otherwise[.]" *Id.*; Dkt. No. 86 at 7 n. 1. Plaintiffs aver that as of the time they filed this motion, they have incurred attorney's fees of "approximately $440,000 between Susman Godfrey and Cedar Law." Dkt. No. 86 at 7. They state that they will file a final motion for attorney's contemporaneously with any motion for final approval of the settlement agreement. *Id.*

ORDER DENYING WITHOUT PREJUDICE MOTION TO APPROVE SETTLEMENT AGREEMENT - 7

6.   Notice

The parties propose to provide notice to class members of the settlement and their rights in multiple ways. First, OSPI will direct LEAs to provide direct notice to all class members who were assigned an "exit code" of "RMA" (Reached Maximum Age) or "D2." *Id.*; *see also* Dkt. No. 35-3 at 36 (explaining that school districts select and assign an exit code to use in reporting to OSPI the reason a student exited a special education program). Second, notice will be provided through OSPI's website and its regular bulletins for a period of at least 30 days following the Court's judgment. Dkt. No. 86 at 7. And third, OSPI will send the same information "to various disability advocacy organizations in Washington, including The Arc of Washington State, the Washington Autism Alliance, and Disability Rights Washington, with permission to republish the notice." *Id.* The parties agree that the notice will state:

> students who exited their special education programs due to their age before their 22nd birthday in the two years preceding the filing of this lawsuit may be eligible for an award of compensatory education (and reinstatement if not yet 22 years old) under this settlement, subject to the recommendation of their IEP team or as may be ordered by the Court.

*Id.* at 7–8.

7.   Retention of Jurisdiction

The parties request that the Court "retain jurisdiction over this settlement for five years, including retaining jurisdiction over any appeals that result from Due Process Hearings regarding the appropriateness of any compensatory education awards." *Id.* at 8. The settlement agreement provides:

> Class members shall retain all rights to initiate a due process hearing or community complaint to challenge (a) any proposal or refusal to offer compensatory education by an LEA that has reconvened a class member's IEP team at OSPI's direction pursuant to this settlement and (b) any failure by an LEA to follow OSPI's direction to reconvene their IEP teams. Any appeals from these challenges shall be heard by the Court as part of its jurisdiction as described in paragraph 15.

Dkt. No. 86-1 at 4–5. In turn, paragraph 15 of the settlement agreement states that "[t]he Court shall retain jurisdiction to enforce and administer the settlement for five years following its entry." *Id.* at 5.

## II.   DISCUSSION

Settlement of class actions "must be fair, adequate, and reasonable." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012). Under Federal Rule of Civil Procedure 23(e), the "claims, issues, or defenses of . . . a class proposed to be certified for purposes of settlement . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (cleaned up). "This more exacting review" helps "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (cleaned up). To the extent certain provisions are problematic, the court may not "delete, modify or substitute" them; instead, "[t]he settlement must stand or fall in its entirety." *Dennis*, 697 F.3d at 868.

Here, for the reasons set forth below, the Court finds problematic the settlement agreement's requirement that the Court retain jurisdiction for class members' appeals and the proposed notice to class members.

### A.   Retention of Jurisdiction

As set forth above, the parties request that the Court "retain jurisdiction over this settlement for five years, including retaining jurisdiction over any appeals that result from Due Process Hearings regarding the appropriateness of any compensatory education awards." Dkt. No. 86 at 8; *see also* Dkt. No. 86-1 at 5.

Federal courts have ancillary jurisdiction to enforce a settlement agreement "if the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *K.C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)). Here, the Court is generally willing to retain jurisdiction over the administration, consummation, enforcement, and interpretation of any approved settlement agreement and any Court order. *See, e.g.*, *Garcia v. Harborstone Credit Union*, No. 3:21-cv-05148-LK, 2023 WL 7412842, at *13 (W.D. Wash. Nov. 9, 2023). But the settlement agreement and its retention of jurisdiction provision would require the Court to exercise jurisdiction over a broad swath of appeals of "any proposal" to offer compensatory education and the failure of LEAs to reconvene IEP teams. Dkt. No. 86-1 at 4–5. Plaintiffs cite no authority in support of the Court retaining such broad jurisdiction to adjudicate what could be scores of individual appeals and challenges. Moreover, any such cases would turn on individualized facts with which this Court would have no student-specific background or expertise. Absent any such ties justifying continuing jurisdiction, the Court sees no basis to depart from the default rule of case assignment "by random selection." LCR 3(d); *see also Reardon v. Wenski*, No. 11-24606-CIV-ZLOCH, 2012 WL 718719, at *1 (S.D. Fla. Mar. 6, 2012) ("[R]andom assignment protects the integrity of the judicial system by leaving the pairing of cases and judges to chance." (cleaned up)). Furthermore, there appears to be no reason to retain jurisdiction to adjudicate any individual students' appeals when Washington law provides that an aggrieved student may file a civil action. Wash. Admin. Code § 392-172A-05115(1); *see Beltran v. Olam Spices & Vegetables, Inc.*, Case No. 1:18-cv-01676-NONE-SAB, 2020 WL 2850211, at *14 (E.D. Cal. June 2, 2020) (recommending that the court deny the parties' request for continuing jurisdiction as unnecessary), *report and recommendation*

*adopted*, 2021 WL 4318141 (E.D. Cal. Sept. 23, 2021).

For these reasons, Plaintiffs have not shown that the Court should retain jurisdiction over all individual challenges that may arise.

**B.    Notice**

Unlike for Rule 23(b)(3) classes, "[n]otice to class members is optional for a Rule 23(b)(2) class" like this one. *Zaldivar v. T-Mobile USA, Inc.*, No. C07-1695 RAJ, 2009 WL 2029965, *5 (W.D. Wash. July 10, 2009); *see* Fed. R. Civ. P. 23(c)(2) ("the court *may* direct appropriate notice to the class") (emphasis added). Although notice may be required under Rule 23(e)(1)(B) when putative class members are bound by the resolution, the parties do not suggest that is the situation here. *See, e.g.*, Dkt. No. 86 at 5 (Plaintiffs noting that the "agreement contains no release language and is instead framed as a judgment against the Defendant."). Still, the Court can require "appropriate notice" "to protect class members and fairly conduct the action" at "any step in the action[.]" Fed. R. Civ. P. 23(d)(1)(B).

Here, the Court requires notice because even if absent class members are not bound, they need to be aware of the significant compensatory education benefits available under the settlement. Dkt. No. 86-1 at 4. In addition, the class members' reaction to receiving the notice will be key in determining the value of the settlement to the class. *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 993 n.2 (9th Cir. 2023) ("[O]ur recent case authority has emphasized that disregarding a low claims rate would result in unreasonable fee awards that are 'disproportionate to the class benefit.'" (quoting *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021)). However, the parties' proposed notice plan is deficient.[1] First, neither the settlement agreement nor the motion states how LEAs will

---

[1] The parties have not provided a copy of the proposed notice, so the Court can only evaluate their plan based on the motion and settlement agreement provisions. If the parties renew their motion for preliminary approval, they should include a proposed notice.

provide "individualized notice" to eligible students or when they will do so. *Id.*; *see, e.g.*, *G. F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *15 (N.D. Cal. July 30, 2015) (setting deadline for distribution of notice to the settlement class). Second, the proposed notice plan does not inform students who to contact to request compensatory education and to learn more about the settlement and its benefits. *See, e.g.*, *Student A v. Berkeley Unified Sch. Dist.*, No. 17-cv-02510-JST, 2021 WL 6332353, at *3 (N.D. Cal. July 8, 2021) (requiring—per the judicial district's guidelines—notification of class counsel's website where relevant information and documents could be found). Third, the proposed notice includes an unnecessarily vague description of eligibility. Dkt. No. 86-1 at 4 (providing for compensatory education to "students who exited their special education programs due to their age before their 22nd birthday *in the two years preceding the filing of this lawsuit*") (emphasis added). A specific eligibility date would be more informative and less confusing to class members.[2] Finally, it is not apparent from the parties' briefing or the settlement agreement that there is any mechanism to track the efficacy of the notice; even where the parties do not plan to send claim forms to class members, it is important to have some means to determine what proportion of class members avail themselves of the relief offered by the settlement. Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges* 14–15 (3d ed. 2010) ("Establishing a claims procedure at [the preliminary approval] stage can provide [the court] with valuable information about class members' rate of presenting claims, information that is often essential in identifying the true size of the settlement fund, and in making [the court's] fairness determination.").

Based on the foregoing, the Court cannot approve the notice plan as currently proposed.

---

[2] The Court sees no reason why a more specific date could not be used in the class definition as well. Dkt. No. 86-1 at 4 (defining the proposed settlement class as "all students who, within the two years prior to the filing of this lawsuit and up to the present, were exited from special education services [in Washington] due to age before their 22nd birthday").

ORDER DENYING WITHOUT PREJUDICE MOTION TO APPROVE SETTLEMENT AGREEMENT - 12

### III.   CONCLUSION

For the foregoing reasons, the Court DENIES without prejudice Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and for Certification of Settlement Class. Dkt. No. 86. The Court STRIKES as moot Plaintiffs' previously filed, pre-settlement motion for class certification. Dkt. No. 45.

Dated this 30th day of August, 2024.

Lauren King
United States District Judge