1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| N.D., et al.,<br><br>                Plaintiffs,<br><br>   v.<br><br>CHRIS REYKDAL, et al.,<br><br>                Defendants. | CASE NO. 2:22-cv-01621-LK<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS |

16    This matter comes before the Court on Plaintiffs' Unopposed Third Motion for Preliminary

17 Approval of Class Action Settlement and for Certification of Settlement Class. Dkt. No. 92.

18 Having read and considered the parties' Settlement Agreement, Dkt. No. 92-1 at 1–2, and the

19 balance of the record, the Court grants Plaintiffs' motion.

20                                          I.    **BACKGROUND**

21 **A.    Factual Background and Procedural History**

22    Plaintiffs filed this putative class action alleging that Washington's law that ends special

23 education services at the end of the school year during which a student turns 21 violates the

24 Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Dkt. No. 31 at 12–

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS - 1

13; Wash. Rev. Code § 28A.155.020. The IDEA requires states to provide a "free appropriate public education" ("FAPE") to all individuals with disabilities residing in the state "between the ages of 3 and 21, inclusive[.]" 20 U.S.C. § 1412(a)(1)(A). As a result, students' "eligibility for IDEA services ordinarily ends on [their] twenty-second birthday." *E.R.K. v. State Dep't of Ed.*, 728 F.3d 982, 986 (9th Cir. 2013). However, the statute includes an exception: a state's duty to provide a FAPE to students with disabilities does not extend to individuals aged 3 through 5 or 18 through 21 "to the extent that [the duty's] application to those children would be inconsistent with State law or practice . . . respecting the provision of public education to children in those age ranges[.]" 20 U.S.C. § 1412(a)(1)(B)(i). Washington law does not require provision of public education through a student's twenty-second birthday; instead, each school district is required "to insure an appropriate educational opportunity for all children with disabilities between the ages of three and *twenty-one*," and if "the twenty-first birthday occurs during the school year, the educational program may be continued until the end of that school year." Wash. Rev. Code § 28A.155.020 (emphasis added); *see also* Wash. Admin. Code § 392.172A.02000(2)(c). Under that framework, both disabled and nondisabled students are ineligible for public education at the end of the school year in which they turn 21. *See* Wash Rev. Code § 28A.225.160(1); *id.* § 28A.150.220(5)(a).

Plaintiffs allege that because the State offers adult-education programs to 21-year-olds and waives tuition fees for those who cannot pay, it must also provide free special education services to 21-year-old disabled students. Dkt. No. 31 at 8–11, 13. They filed a motion for provisional certification of a class comprised of "disabled students at risk of prematurely 'aging out' of their special educational programs," and for "a preliminary injunction that would keep those students in those programs during the pendency of this litigation until they reach the age of twenty-two."

Dkt. No. 35 at 6. This Court denied the motion for a preliminary injunction, as well as Plaintiffs' subsequent motion for reconsideration. Dkt. Nos. 58, 72.

Plaintiffs appealed. Dkt. No. 73. The Ninth Circuit first considered mootness, concluding that while the controversy was moot as to Plaintiff N.D.—who is now 22 years old—it was not moot as to Plaintiff E.A. Dkt. No. 75 at 10–12. As to the merits, the Ninth Circuit noted that in *E.R.K.*, the court interpreted IDEA's statutory language to mean that a State "cannot deny special education to disabled students aged 18 through 21 if it in fact provides 'free public education' to nondisabled students in that range of ages." *Id.* at 17 (quoting *E.R.K.*, 728 F.3d at 987). The court found that Washington offers "free public education" to nondisabled students through age 21 by virtue of its waivers of the $25 tuition fee for students who cannot pay, making IDEA's exception inapplicable. *Id.* at 18. The court thus concluded that "the students have a high likelihood of success on the merits of their claim." *Id.* at 19. The court also found that the students met the other *Winter* factors. *Id.* at 20–23. The court therefore vacated this Court's order denying a preliminary injunction and "remand[ed] for further proceedings including the entry of a preliminary injunction." *Id.* at 23. The court did not address the propriety of class certification because this Court had not addressed that issue. *Id.*

After the Ninth Circuit issued its mandate, the Court ordered the parties to file a joint status report proposing how the Court should proceed in light of the Ninth Circuit's opinion. Dkt. No. 78 at 1–2. The parties' joint status report stated that they "agree that the Ninth Circuit's opinion effectively resolves the merits of the case in favor of Plaintiffs." Dkt. No. 81 at 2. They reported that Defendant Office of the Superintendent of Public Instruction ("OSPI") "has begun acting as if a final order on the merits has been entered[.]" *Id.* The parties proposed that "the Court enter a Final Order on the Merits, consistent with Plaintiffs' Requests for Relief (a)-(c) of their Amended Complaint" and include the following findings and declaratory relief:

1

2

(a) Find and declare that OSPI's refusal to ensure the provision of FAPE to Plaintiff N.D., Plaintiff E.A., and the members of the Plaintiff Class on account of their age violates the IDEA;

3

4

(b) Find and declare that, by this conduct, OSPI has violated 20 U.S.C. § 1407 and 20 U.S.C. § 1412(11);

5

(c) Find and declare that Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000 are invalid as contrary to the IDEA to the extent they do not ensure eligible students receive a FAPE until they turn 22[.]

6

7

*Id.* The parties further agreed that "the case is ripe for final determination of class certification and

8

entry of judgment providing relief for class members affected by the unlawful age-out policy" but

9

they "do not agree . . . on how that class should be defined, or the manner in which any

10

compensatory education owed to them should be provided." *Id.* They filed a stipulation to engage

11

in mediation on these topics, Dkt. No. 82, and in the meantime, they agreed that the Court "should

12

issue a preliminary injunction against OSPI, preventing it from 'enforcing the age-out provisions

13

in Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.0200[0](2)(c),' and

14

directing OSPI 'to take all actions necessary to ensure those students are able to continue attending

15

their programs pending this litigation or until reaching the age of twenty-two.'" Dkt. No. 81 at 3

16

(quoting Dkt. No. 35 at 7).

17

On July 10, 2024, the Court granted Plaintiffs' motion and certified the following

18

provisional class:

19

20

21

All students with disabilities in Washington who aged out of their special education programs at the end of the 2022-2023 school year who have not yet turned 22 and all students with disabilities in Washington at risk of aging out of their special education programs before they turn 22 years old as a result of Section 28A.155.020 of the Revised Code of Washington and Section 392.172A.02000(2)(c) of the Washington Administrative Code.

22

Dkt. No. 83 at 11. The Court also issued the requested declaratory judgment. *Id.* at 12. The Court

23

also granted the requested preliminary injunction:

24

Defendant Office of the Superintendent of Public Instruction is enjoined from enforcing the age-out provisions in Section 28A.155.020 of the Revised Code of Washington and Section 392.172A.02000(2)(c) of the Washington Administrative Code, and is directed to take all actions necessary to ensure that disabled students are able to continue attending their special education programs pending disposition of this matter or until they reach the age of 22.

*Id.* at 14. Finally, the Court appointed Plaintiff E.A. to serve as provisional class representative, and the firms of Cedar Law PLLC and Susman Godfrey L.L.P. as class counsel for the provisional class. *Id.*; Fed. R. Civ. P. 26(g).

The parties filed a notice of settlement on July 22, 2024, Dkt. No. 85, followed by Plaintiffs' first motion for preliminary approval of the class action settlement and certification of a settlement class, Dkt. No. 86. The Court denied that motion because the parties' proposed class definition was unnecessarily complicated, their notice plan was insufficient, and the settlement would have required the Court to "retain[] jurisdiction . . . over any appeals that result from Due Process Hearings regarding the appropriateness of any compensatory education awards." Dkt. No. 87 at 9. The parties subsequently entered into a revised settlement agreement, Dkt. No. 89-1 at 2–3, but the Court denied Plaintiff's second motion for preliminary approval of the class action settlement and certification of a settlement class because there were deficiencies in the proposed notices and the amended settlement agreement continued to require the Court to exercise jurisdiction over a broad swath of potential appeals, Dkt. No. 91.

**B.     The Third Motion for Preliminary Approval of the Settlement Class and Settlement Agreement**

On October 22, 2024, Plaintiffs filed this third motion for preliminary approval of the class action settlement and certification of a settlement class. Dkt. No. 92. Plaintiffs' motion asks the Court to:

(1) certify the proposed settlement class, (2) appoint as class counsel the law firms of Susman Godfrey LLP and Cedar Law PLLC, (3) appoint N.D. and E.A., by and through their respective guardians, as class representatives, (4) grant preliminary

approval of the settlement, (5) approve the proposed notice plan, and (6) schedule any final fairness hearing and related deadlines.

*Id.* at 2–3. Plaintiff also filed an amended settlement agreement (the "Settlement Agreement").

Dkt. No. 92-1. The key terms of the settlement are as follows.

1. <u>Class Definition</u>

The class is defined as:

All students who were exited from special education services due to age before their 22nd birthday between November 11, 2020 and the present.

Dkt. No. 92 at 4. Plaintiffs note that "[t]he class definition also accounts for the IDEA's two-year

statute of limitations." *Id.* at 5 (citing 20 U.S.C. § 1415(6)(B)).

2. <u>Further Declaratory Relief</u>

The parties agree and request that in addition to the relief the Court has already awarded,

Dkt. No. 83, the Court award the following declaratory relief:

the state's policy of aging students out of special education at the end of the school year in which they turn 21 pursuant to Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(c) presently violates the IDEA, has violated the IDEA at all times during the two years preceding the filing of this lawsuit, and will continue to violate the IDEA absent a substantial change in the state's policies for charging and waiving tuition for its adult secondary education programs.

Dkt. No. 92 at 5; *see also* Dkt. No. 92-1 at 1. They further agree that OSPI will take the following

actions to ensure that local education agencies ("LEAs") comply with the Court's ruling that

Section 28A.155.020 of the Revised Code of Washington and Section 392.172A.02000(2)(c) of

the Washington Administrative Code violate the IDEA:

a. Direct LEAs to extend age eligibility for special education services until the student's 22nd birthday.

b. Direct LEAs to offer to immediately resume services under the last implemented IEP for each student who has not yet turned 22 who aged out during the pendency of the lawsuit.

c. Direct LEAs to reconvene IEP teams for all students in the class who wish to receive an award of compensatory education.

d. Direct LEAs that they may not decline to provide compensatory education on grounds of age for IEP services not provided to class members as a result of their exit prior to turning age 22.

Dkt. No. 92 at 5–6; *see also* Dkt. No. 92-1 at 1.

> 3.  Provision of Compensatory Education to Settlement Class Members

The agreement also provides for compensatory education to eligible students who wish to receive it:

> OSPI shall direct LEAs to reconvene IEP teams for all students in the class who wish to receive an award of compensatory education. Compensatory education shall be awarded to students in the class according to the recommendations of their IEP teams. If a student, IEP team, and LEA agree, a student may receive monetary compensation in lieu of compensatory education. Any class members who have paid privately for special education services after having been exited due to age from LEA-provided special education programs may seek reimbursement of such documented expenses, and OSPI shall direct LEAs to offer reimbursement of reasonable expenses in line with the prior recommendations of the class member's IEP team. OSPI shall direct LEAs that they may not decline to provide compensatory education on grounds of age for IEP services not provided to class members as a result of their exit prior to turning age 22. OSPI shall ensure through the exercise of its supervisory powers, to the extent authorized by law, that LEAs comply with these directions.

Dkt. No. 92-1 at 1. "OSPI's direction to LEAs shall be without prejudice to the right or ability of LEAs to deny compensatory education via appropriate procedures either on the basis of having received a regular high school diploma or lack of continuing need for services as of the time that services were withdrawn." *Id.* at 1–2.

> 4.  Reimbursement to Guardians of N.D. and E.A.

The Settlement Agreement provides for payments to the guardians of proposed class representatives E.A. and N.D. For E.A., OSPI has agreed to

> reimburse the guardians of E.A. for up to $60,000 in documented expenses incurred to provide him with private educational and related support services since he was exited from the Selah School District on August 31, 2023, and, in lieu of reinstatement in the Selah School District and to avoid further disruption, shall continue to fund those services through the end of the current school year on August 31, 2024.

*Id.* at 2. And for N.D., OSPI has agreed to

> directly pay for or reimburse the guardians of N.D. for up to $150,000 in documented expenses for educational services, including without limitation occupational therapy, vocational instruction/counseling, speech therapy, applied behavior analysis, tutoring, social activities, day programming, or any other services that could be available to special education students under the IDEA, including related services such as transportation; Plaintiffs will have up to five years from the entry of judgment to seek such services and will submit all claims for reimbursement within 90 days of the five-year period[.]

*Id.*

### 5. Attorneys' Fees and Costs

The parties have agreed that OSPI will "pay all Plaintiffs' reasonable attorney's fees and costs incurred in this action through the entry of the settlement decree by the Court, as well as for any guardian ad litem whose appointment the Court may require pursuant to LCR 17(c) or otherwise[.]" *Id.* Plaintiffs aver that as of the time they filed this motion, they have incurred attorney's fees of "approximately $440,000 between Susman Godfrey and Cedar Law." Dkt. No. 92 at 7. They plan to file a final motion for attorney's fees contemporaneously with any motion for final approval. *Id.*

### 6. Notice

The parties propose to provide notice to class members of the settlement and their rights in multiple ways using one of two notice forms. *Id.* First, within five business days of this Order, OSPI will direct LEAs to provide direct notice to all class members who were assigned an "exit code" of "RMA" (Reached Maximum Age) or "D2" since November 11, 2020. Dkt. No. 92-1 at 1; *see also* Dkt. No. 35-3 at 36 (explaining that school districts select and assign an exit code to use in reporting to OSPI the reason a student exited a special education program). The direct notice will inform potential class members of the nature of the suit, the settlement terms, how to obtain more information about settlement, how the class member may object if they disagree with the

Settlement Agreement, and will specify who class members should contact at the LEA to schedule the required IEP meeting. Dkt. No. 92-1 at 4–7.

Second, within five business days of this Order, OSPI will publish notice of the settlement, including a link to the Court's Order, on its website and in its regular bulletins. *Id.* at 1. At the same time, OSPI will send the same notice to various disability advocacy organizations in Washington, including The Arc of Washington State, the Washington Autism Alliance, and Disability Rights Washington, with permission to republish the notice. *Id.*; *see also id.* at 9–12 (the "second notice"). The second notice will contain the same information as the first notice described above, "except without reference to a specific individual, instead recommending that students contact their district's director of special education or Plaintiffs' counsel to schedule the required IEP meeting." Dkt. No. 92 at 8.

Finally, OSPI will direct LEAs to report the number of students who have scheduled or attempted to schedule an IEP meeting by a specific date that is at least thirty days prior to the planned fairness hearing. *Id.*

7.  Retention of Jurisdiction

The Settlement Agreement asks the Court to "retain jurisdiction over the administration, consummation, enforcement, and interpretation of any approved settlement agreement, and any Court orders approving the settlement agreement for five years." Dkt. No. 92-1 at 2.

## II.  DISCUSSION

Settlement of class actions "must be fair, adequate, and reasonable." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012); *see* Fed. R. Civ. P. 23(e)(1)(B)(2). Under Federal Rule of Civil Procedure 23(e), settling claims brought by a proposed class requires provisional certification, notice to the class, and a fairness hearing before the court. In this case, for the reasons

set forth herein, the Court finds that provisional certification and notice are warranted and will proceed to schedule a final fairness hearing.

**A.      Provisional Class Certification**

To utilize Rule 23's procedure for aggregating claims, plaintiffs must make two showings. First, they "must establish 'there are questions of law or fact common to the class,' as well as demonstrate numerosity, typicality and adequacy of representation." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc) (quoting Fed. R. Civ. P. 23(a)). Second, plaintiffs must show that the class satisfies Rule 23(b) by demonstrating "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P 23(b)(3). In addition, "[t]he criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). In the latter context, manageability at trial is not a concern, but "a district court must give heightened attention to the definition of the class or subclasses." *Id.* at 556–57; *accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, the Court finds that Plaintiffs have met their burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable under Rule 23(b) for purposes of preliminary settlement approval.

1.   Rule 23(a)

The class preliminarily satisfies the four prerequisites of Federal Rule of Civil Procedure 23(a) because Plaintiffs have demonstrated numerosity, commonality, typicality, and adequacy of representation.

### (a) Numerosity

Plaintiffs argue, and Defendants do not dispute, that the proposed settlement class is sufficiently numerous. Dkt. No. 92 at 9–10. "[C]ourts need not determine the exact size of a class in order to find numerosity satisfied," and "[g]enerally, . . . a class that is likely to exceed forty members satisfies numerosity." *R.P.-K. v. Dep't of Educ., Haw.*, 272 F.R.D. 541, 547 (D. Haw. 2011). As the Court previously found, "at least sixty and probably many more students who [were] receiving a FAPE in Washington public schools [turned] twenty-one on August 31, 2023, and [were] therefore subject to having their special education services terminated on September 1" of that year. Dkt. No. 83 at 7. And Plaintiffs note that "the additional years contained within the settlement class only bolster the number of class members." Dkt. No. 92 at 10. The proposed settlement class is therefore sufficiently numerous because "joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1); *see Johnson v. City of Grants Pass*, 50 F.4th 787, 803 (9th Cir. 2022) (numerosity is generally satisfied when the class comprises 60 members or more), *amended and superseded on denial of rehearing en banc on other grounds*, 72 F.4th 868 (9th Cir. 2024).

### (b) Commonality

The Court previously found that "[w]hether Washington's age-out law violates the IDEA is a dispositive question that applies to all members of the proposed provisional class." Dkt. No. 83 at 7. That is still the case. Commonality is thus satisfied under Rule 23(a)(2). *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (commonality can be satisfied by even a "single significant question of law or fact" (cleaned up)).

### (c) Typicality

Plaintiffs contend that "[b]oth N.D. and E.A.'s injuries are typical of the class" because "[b]oth students were unlawfully exited from their special education programming on September

1, 2022 and 2023 respectively" before they turned 22. Dkt. No. 92 at 11. They argue, and Defendants do not dispute, that the other putative class members suffered the same injury. *Id.* E.A. and N.D.'s claims are thus typical of the class, and this requirement is satisfied. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992))).

> *(d) Adequacy*

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also Mansor v. U.S. Citizenship and Immigr. Servs.*, 345 F.R.D. 193, 206 (W.D. Wash. 2023). As Plaintiffs note, "[b]oth N.D. and E.A. are represented by their parents who have actively participated in the litigation and previously advocated for the rights of their children." Dkt. No. 92 at 11 (citing Dkt. Nos. 35-1, 35-2). Their interests are coextensive with, and not antagonistic to, those of the class members, and there is no evidence of a conflict of interest. The Court thus finds that E.A. and N.D., by and through their guardians, will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

Plaintiffs' motion states that the Court need not appoint guardians for N.D. and E.A. because their parents already serve in that role:

> [I]t is Plaintiffs' position that because the Court already must approve the agreement and because N.D. and E.A. are both represented by their parents, who are court appointed guardians, the use of a guardian ad litem is unnecessary ("the court may dispense with the appointment of the guardian ad litem if a general guardian has been previously appointed for such minor or incompetent.) LCR 17(c).

Dkt. No. 92 at 7 n.1. E.A.'s and N.D.'s parents have confirmed in their previously filed declarations

that they are the legal guardians of their respective children. *See* Dkt. No. 35-1 at 1 (P.A. stating that she is the "legal guardian of E.A."); Dkt. No. 46 at 1 (same); Dkt. No. 35-2 at 1 (T.D. is the "legal co-guardian" for N.D.); Dkt. No. 31 at 2–3 (same). Because "a general guardian has been previously appointed" for E.A. and N.D., the Court need not appoint guardians ad litem for them. LCR 17(c).

Turning to the adequacy of counsel, the Court has already found that "Plaintiffs' counsel have significant experience in class action, civil rights, and disability law litigation." Dkt. No. 83 at 8. The Court is satisfied that class counsel will continue to devote the necessary time and resources to obtain final approval and ensure proper administration of the settlement. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

2.  Rule 23(b)(2)

Certification under Rule 23(b)(2) is appropriate when a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) ("Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive."). "The principle undergirding this requirement is that the 'indivisible nature of the injunctive or declaratory remedy' justifies certification because the 'conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *A.F. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474, 484 (S.D.Cal.2013) (quoting *Dukes*, 564 U.S. at 360). Here, the Settlement Agreement includes primarily injunctive relief. *See generally* Dkt. No. 92-1. It requires OSPI to take specific actions, including (1) directing LEAs to ensure that students can access special education services until age 22, and (2) ensuring that LEAs convene IEP teams to determine and provide compensatory education for those students who have already exited their

special education programs due to age. *Id.* at 1–2. Accordingly, the Court provisionally certifies the proposed settlement class.

### 3. Class Representative and Class Counsel

In light of the above, the Court appoints E.A. and N.D., by and through their respective guardians, as class representatives, and appoints as class counsel the law firms of Susman Godfrey LLP and Cedar Law PLLC. *See* Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must . . . appoint class counsel under Rule 23(g)."). The Court finds that counsel will fairly and adequately represent the interests of the class, have worked to identify and investigate potential claims, have the requisite experience and legal knowledge, and will commit the necessary resources to representing the class. Fed. R. Civ. P. 23(g)(1), (4).

## B.   Preliminary Settlement Approval

Having found that provisional class certification is appropriate, the Court turns now to the substance of the parties' proposed settlement.

### 1. Legal Standard

"The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Before a district court approves a class action settlement, it must determine that the settlement is "fundamentally fair, adequate, and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008). And where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis*, 697 F.3d at 864 (cleaned up). Pre-certification settlement agreements must withstand an such heightened scrutiny "for evidence of collusion or other conflicts of interest" because at this stage, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prods. Liab.*

1  *Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). "This more exacting review" helps "to ensure that class

2  representatives and their counsel do not secure a disproportionate benefit at the expense of the

3  unnamed plaintiffs who class counsel had a duty to represent." *Roes, 1-2 v. SFBSC Mgmt., LLC*,

4  944 F.3d 1035, 1049 (9th Cir. 2019) (cleaned up).

5      Rule 23(e)(2) provides that the court may approve a class action settlement that will bind

6  class members only on a finding that it is fair, reasonable, and adequate after considering, among

7  other factors, whether: (a) the class representatives and class counsel have adequately represented

8  the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is

9  adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of the

10  proposed method of distributing relief, and the terms of any proposed attorney's fees award; and

11  (d) the proposal treats class members equitably relative to each other. *See also Rollins v. Dignity

12  Health*, 336 F.R.D. 456, 461 (N.D. Cal. 2020); *accord Zwicky v. Diamond Resorts Mgmt. Inc.*, 343

13  F.R.D. 101, 119 (D. Ariz. 2022); *K.W. v. Armstrong*, 180 F. Supp. 3d 703, 723 (D. Idaho 2016).

14  "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent

15  with counsel's fiduciary obligations to the class." *Rollins*, 336 F.R.D. at 461. In addition, courts

16  may not "delete, modify or substitute certain provisions. The settlement must stand or fall in its

17  entirety." *Hanlon*, 150 F.3d at 1026 (citations omitted).

18      Here, the proposal would not bind class members, so the fairness inquiry is not required.

19  *See* Dkt. No. 92 at 5 (the "agreement contains no release language and is instead framed as a

20  judgment against the Defendant"). Nonetheless, the parties contend that their proposed settlement

21  meets the Rule 23(e)(2) requirements, Dkt. No. 92 at 13–15, so the Court addresses those factors.

22      2.  Analysis

23      The Court preliminarily approves the amended Settlement Agreement, Dkt. No. 92-1, and

24  the terms set forth therein, for the reasons discussed below.

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS - 15

*(a) Adequacy of Representation and Arm's Length Negotiations*

The amended Settlement Agreement appears to be the result of serious, informed, lengthy, and arm's-length negotiations between attorneys with years of experience working with class actions and in the special education context. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 782 (9th Cir. 2022). The record reflects that the parties engaged in significant fact discovery, and following the remand from the Ninth Circuit, they conducted settlement negotiations directly and through mediation. *See* Dkt. No. 92 at 13. Based on the record before the Court, there are no indications that settlement negotiations were driven by self-interest rather than the class's interests.

*(b) Adequacy of the Relief Provided*

In deciding whether the relief provided for the class is adequate, courts consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (risk, expense, complexity and likely duration of litigation supports the adequacy of relief).

Here, the Settlement Agreement provides benefits to class members, including requiring LEAs "to reconvene IEP teams for all students in the class who wish to receive an award of compensatory education"; awards compensatory education according to the recommendations of their IEP teams; and allows student to receive monetary compensation in lieu of compensatory education if the student, the IEP team, and the LEA agree. Dkt. No. 92-1 at 1–2. Plaintiffs argue, and Defendants do not dispute, that using "individual IEP teams to determine compensatory education for class members provides an effective means of determining individual compensatory

education awards and alleviates the need for the parties to potentially litigate those issues for all class members." Dkt. No. 92 at 13–14. Plaintiffs note that the IEP teams "are better positioned to provide individualized review of each class member[']s[] needs by a team familiar with both the student and the resources available to the specific LEA." *Id.* at 14. Class members also retain the right to challenge a decision regarding proposed compensatory education, thereby providing procedural safeguards. *Id.*; Dkt. No. 92-1 at 1–2. Plaintiffs have filed the Settlement Agreement and thus satisfied Rule 23(e)(3).

Accordingly, at this juncture, the Court finds that the proposed relief is adequate.

### *(c) Preferential Treatment*

At the preliminary approval stage, district courts must also evaluate whether the proposed settlement "improperly grant[s] preferential treatment to class representatives or segments of the class[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). In this case, the Settlement Agreement requires Defendants to (1) reimburse the guardians of E.A. for up to $60,000 in documented expenses incurred to provide him with private educational and related support services since he was exited from the Selah School District, and (2) directly pay for or reimburse the guardians of N.D. for up to $150,000 in documented expenses for educational services. Dkt. No. 92-1 at 2. These awards do not represent preferential treatment because the Settlement Agreement provides that other students may be awarded monetary compensation in lieu of compensatory education. *Id.* at 1. The only distinction is that the funds for E.A. and N.D.'s guardians will come directly from OSPI rather than the LEAs. Dkt. No. 92 at 15. Finally, while the payments to E.A. and N.D.'s guardians are not necessarily "service" or "incentive" awards, incentive awards, which are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general" are "fairly typical in

1   class action cases." *Rodriguez*, 563 F.3d 958–59.

2       Because the Court will ultimately consider the evidence presented at the final fairness

3   hearing and evaluate the reasonableness of any awards requested at that time, and in light of the

4   preliminary indicia that such awards are warranted, the Court finds no basis to preclude

5   preliminary approval on account of this factor.

6       *(d) Reasonableness of Fees Requested*

7       OSPI has agreed to pay "all of Plaintiffs' reasonable attorney's fees and costs incurred in

8   this action through the entry of the settlement decree by the Court[.]" Dkt. No. 92-1 at 2. Plaintiffs

9   aver that as of the time they filed this motion, they have incurred attorney's fees of "approximately

10   $440,000 between Susman Godfrey and Cedar Law." Dkt. No. 92 at 7. They plan to file a final

11   motion for attorney's fees contemporaneously with any motion for final approval. *Id.* The Court

12   will carefully scrutinize the reasonableness of the requested attorneys' fee award at the final

13   approval stage to determine if it is appropriate in this case. *In re Bluetooth*, 654 F.3d at 942. At

14   this stage, however, the fee award appears appropriate.

15       *(e) Obvious Deficiencies*

16       The Court also considers whether there are any obvious deficiencies in the Settlement

17   Agreement. "Obvious deficiencies in a settlement agreement include 'any subtle signs that class

18   counsel have allowed pursuit of their own self-interests to infect the negotiations.'" *Zwicky*, 343

19   F.R.D. at 121 (quoting *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021)). For

20   the reasons discussed herein, the Court finds no such deficiencies, and therefore finds that this

21   factor weighs in favor of preliminary approval.

22   **C.   Class Notice Plan**

23       Unlike for Rule 23(b)(3) classes, "[n]otice to class members is optional for a Rule 23(b)(2)

24   class" like this one. *Zaldivar v. T-Mobile USA, Inc.*, No. C07-1695 RAJ, 2009 WL 2029965, *5

(W.D. Wash. July 10, 2009); *see* Fed. R. Civ. P. 23(c)(2)(A) ("the court *may* direct appropriate notice to the class") (emphasis added). Although notice may be required under Rule 23(e)(1)(B) when putative class members are bound by the resolution, again, the parties do not suggest that is the situation here. *See, e.g.*, Dkt. No. 92 at 5. Still, the Court can require "appropriate notice" "to protect class members and fairly conduct the action" at "any step in the action[.]" Fed. R. Civ. P. 23(d)(1)(B)(i).

Here, the Court requires notice because even if class members are not bound, they need to be aware of the significant compensatory education benefits available under the settlement—as well as the potential for significant monetary relief in lieu of compensatory education when appropriate. Dkt. No. 92-1 at 1. In addition, the class members' reaction to receiving the notice will be key in determining the value of the settlement to the class. *See Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 993 n.2 (9th Cir. 2023) ("[O]ur recent case authority has emphasized that disregarding a low claims rate would result in unreasonable fee awards that are 'disproportionate to the class benefit.'" (quoting *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021)).

The Court has reviewed the contents of the notices and Plaintiffs' proposed methods for providing notice to the class. Dkt. No. 92-1 at 1, 4–7, 9–12. The contents of the proposed class action notices are reasonably calculated to notify class members of their rights. The proposed methods of dissemination meet the requirements of due process and Federal Rules of Civil Procedure 23(c)(2) and 23(e)(1) and are the best notice that is practicable under the circumstances. The Court therefore approves the proposed methods of providing notice, *id.* at 1, and the proposed notices, *id.* at 4–7, 9–12.

Under Rule 23(h), class members must be given a full and fair opportunity to examine and object to an attorney's fees motion. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 992, 993–94 (9th Cir. 2010). The notices inform class members that the settlement provides for

reimbursement of Plaintiffs' reasonable attorney's fees and that they have the right to object to the Settlement Agreement. Dkt. No. 92-1 at 6–7, 11–12. Plaintiffs state that their counsel will file a separate motion for attorney's fees and costs prior to final approval. Dkt. No. 92 at 7. In order to provide class members sufficient time to review and object to any fees request and for final approval, settlement class counsel shall file its motion no later than 30 days after the Initial Mailing Date as set forth below, and note the motion on the Court's calendar in compliance with Local Civil Rule 7(d)(4). Any settlement class member may comment on, or object to, the Settlement Agreement and/or settlement class counsel's application for attorney's fees and costs.

Accordingly, the Court orders the following schedule:

| Event | Deadline |
|---|---|
| Deadline to mail Notices of Settlement, publish notice of settlement on OSPI's website and in its regular bulletins, and for OSPI to send the same publication notice to the organizations in the Settlement Agreement ("Initial Mailing Date") | 5 Business Days from Issuance of this Order |
| Deadline for Plaintiffs' Motion for Final Approval and Attorney's Fees and Costs | 30 Days after Initial Mailing Date |
| Deadline to post Plaintiff's Motion for Final Approval and Attorney's Fees and Costs on OSPI's website | 1 Business Day after Filing of Motion |
| Deadline for Class Members to postmark objections and exclusion requests ("Notice Deadline") | 60 Days after Initial Mailing Date |
| Deadline for parties to file response to Class Member objections | 14 Days after Notice Deadline |
| Final Approval Hearing | February 26, 2025 at 10:00 a.m. |

The Court finds that this proposed notice schedule provides sufficient time for class members to evaluate the proposed settlement and determine if they wish to object.

1

**D.      Declaratory Judgment**

2

Finally, the Court considers Plaintiffs' unopposed request that the Court enter further

3  declaratory relief. Dkt. No. 92 at 5. Under the Declaratory Judgment Act, a court "may declare the

4  rights and other legal relations of any interested party seeking such declaration, whether or not

5  further relief is or could be sought." 28 U.S.C. § 2201(a). The Act gives federal courts discretion

6  in determining whether to declare the rights of litigants or to decline to enter a declaratory

7  judgment. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288–89 (1995). Exercising that discretion, a

8  court should declare the parties' rights and obligations when the judgment will (1) clarify or settle

9  the legal relations at issue, and (2) terminate or afford relief from the uncertainty, insecurity, and

10  controversy giving rise to the proceeding. *Cent. Mont. Elec. Power Co-op., Inc. v. Adm'r of*

11  *Bonneville Power Admin.*, 840 F.2d 1472, 1475 n.1 (9th Cir. 1988). "Basically, the question in

12  each case is whether the facts alleged, under all the circumstances, show that there is a substantial

13  controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

14  warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.

15  118, 127 (2007) (citation omitted). Here, the parties' request for declaratory relief is aimed at

16  quieting the uncertainty regarding whether Washington law is consistent with the IDEA and

17  whether OSPI's actions have violated the IDEA, including for students who fall outside the class

18  definition. Dkt. No. 92 at 5. Entering a declaratory judgment as Plaintiffs request will settle this

19  ongoing issue. Therefore, the Court issues the following declaratory judgment:

20          the state's policy of aging students out of special education at the end of the school
          year in which they turn 21 pursuant to Wash. Rev. Code § 28A.155.020 and Wash.
21          Admin. Code § 392.172A.02000(2)(c) presently violates the IDEA, has violated
          the IDEA at all times during the two years preceding the filing of this lawsuit, and
22          will continue to violate the IDEA absent a substantial change in the state's policies
          for charging and waiving tuition for its adult secondary education programs.

23  Dkt. No. 92 at 5; *see also* Dkt. No. 92-1 at 1.

24

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Unopposed Third Motion for Preliminary Approval of Class Action Settlement and for Certification of Settlement Class. Dkt. No. 92.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. The Court provisionally certifies the following Class for purpose of settlement: All students who were exited from special education services due to age before their 22nd birthday between November 11, 2020 and the present.

2. For the reasons set forth above, the Class satisfies the four prerequisites of Federal Rule of Civil Procedure 23(a) (numerosity, commonality, typicality, adequacy).

3. For the reasons set forth above, the Class also satisfies the requirements of Federal Rule of Civil Procedure 23(b)(2).

4. The Court appoints E.A. and N.D., by and through their respective guardians, as Class Representatives.

5. The Court appoints Susman Godfrey LLP and Cedar Law PLLC as Class Counsel.

6. The Court preliminarily approves the Settlement Agreement and the terms set forth therein.

7. The Court preliminarily approves the (1) reimbursement to the guardians of E.A. for up to $60,000 in documented expenses incurred to provide him with private educational and related support services since he was exited from the Selah School District, and (2) reimbursement or direct payment to the guardians of N.D. for up to $150,000 in documented expenses for educational services.

8. The Court preliminarily approves the attorney's fees and costs payment of $440,000.

9.      The Court approves the form and content of the proposed notices substantially in the form attached as Exhibits A and B to the Settlement Agreement, Dkt. No. 92-1 at 4–7, 9–12, and Orders OSPI to provide notice as set forth herein and in the Settlement Agreement.

10.     No later than five (5) business days after entry of this Order, OSPI shall cause notice to be delivered in the manner set forth in the Settlement Agreement to all Class Members, publish the notice of the proposed class action settlement on OSPI's website and in its regular bulletins, and send the same publication notice to the organizations listed in the Settlement Agreement.

11.     The Court finds that the notices and the manner of their dissemination described in the Settlement Agreement constitute the best practicable notice under the circumstances and are reasonably calculated, under all the circumstances, to apprise Class Members of the pendency of this action, the terms of the Settlement Agreement, and their right to object to the settlement and appear at the final approval hearing. The Court finds that the notice plan is reasonable, that it constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, Fed. R. Civ. P. 23(c), and that it meets the requirements of due process, and any other applicable laws.

12.     Class Members who wish to receive compensatory education must contact their school district's Director of Special Education or Plaintiffs' counsel as set forth in the notices.

13.     Class Counsel shall file their motion for final approval, including their request for an award of attorneys' fees and costs, no later than thirty (30) days after the Initial Mailing Date. Class Counsel's motion for final approval, including their request for an award of attorney's fees and costs, shall be posted on OSPI's website no later than one (1) business day after filing.

14.     Class Members who wish to object to the Settlement must do one of the following:

      a.  **Mail** an objection letter to the Court,[1] postmarked no later than January 27,

---

[1] The Court's mailing address is: U.S. District Court, Clerk's Office, 700 Stewart Street, Suite 2310, Seattle, WA 98101.

2025. Objection letters submitted by mail must include (1) the person's name, address, and telephone number; (2) the name of the case, *N.D. v. Reykdal,* Civil Case No. 2:22-cv-01621-LK; (3) the reasons why the person thinks the Court should not approve the settlement; (4) any supporting documentation the person wishes the Court to consider; and (5) the person's signature; or

b. **File** a written objection directly with the Court at any location of the United States District Court for the Western District of Washington no later than January 27, 2025. Objection letters filed directly with the Court must include (1) the person's name, address, and telephone number; (2) the name of the case, *N.D. v. Reykdal,* Civil Case No. 2:22-cv-01621-LK; (3) the reasons why the person thinks the Court should not approve the settlement; (4) any supporting documentation the person wishes the Court to consider; and (5) the person's signature.

Any objection not timely made in one of these two manners shall be waived and forever barred.

15. The parties shall file their responses to any Class Member objections no later than February 10, 2025 (fourteen (14) days after the Notice Deadline).

16. A Final Approval Hearing shall be held before this Court on February 26, 2025 at 10:00 a.m., to determine whether the Settlement Agreement is fair, reasonable, and adequate and should be given final approval. The Court may postpone, adjourn, or continue the Final Approval Hearing without further notice to the Settlement Class. After the Final Approval Hearing, the Court may enter a Final Approval Order and final judgment in accordance with the Settlement Agreement.

All proceedings before the Court are stayed pending final approval of the settlement, except as may be necessary to implement the settlement or comply with the terms of the Settlement Agreement.

Dated this 20th day of November, 2024.

Lauren King
United States District Judge