1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| N.D., et al., | CASE NO. 2:22-cv-01621-LK |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS |
| v. | |
| CHRIS REYKDAL, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiffs' Motion for Attorneys' Fees and Plaintiffs' Motion for Final Approval of Class Action Settlement and Issu[ance] of Judgment Against the Defendant. Dkt. Nos. 96, 99. Defendants do not oppose the motions. Dkt. Nos. 103–104 (notices of non-opposition). For the reasons discussed below, the Court grants the motion for final approval and grants in part the motion for attorney's fees and costs.

## I.    BACKGROUND

### A.    Factual Background and Procedural History

Plaintiffs filed this putative class action alleging that Washington's law that ends special education services at the end of the school year during which a student turns 21 violates the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Dkt. No. 31 at 12–13; Wash. Rev. Code § 28A.155.020. The IDEA requires states to provide a "free appropriate public education" ("FAPE") to all individuals with disabilities residing in the state "between the ages of 3 and 21, inclusive[.]" 20 U.S.C. § 1412(a)(1)(A). As a result, students' "eligibility for IDEA services ordinarily ends on [their] twenty-second birthday." *E.R.K. v. State Dep't of Ed.*, 728 F.3d 982, 986 (9th Cir. 2013). However, the statute includes an exception: a state's duty to provide a FAPE to students with disabilities does not extend to individuals aged 3 through 5 or 18 through 21 "to the extent that [the duty's] application to those children would be inconsistent with State law or practice . . . respecting the provision of public education to children in those age ranges[.]" 20 U.S.C. § 1412(a)(1)(B)(i). Washington law does not require provision of public education through a student's twenty-second birthday; instead, each school district is required "to insure an appropriate educational opportunity for all children with disabilities between the ages of three and *twenty-one*," and if "the twenty-first birthday occurs during the school year, the educational program may be continued until the end of that school year." Wash. Rev. Code § 28A.155.020 (emphasis added); *see also* Wash. Admin. Code § 392.172A.02000(2)(c). Under that framework, both disabled and nondisabled students are ineligible for public education at the end of the school year in which they turn 21. *See* Wash Rev. Code § 28A.225.160(1); *id.* § 28A.150.220(5)(a).

Plaintiffs alleged that because the State offers adult-education programs to 21-year-olds and waives tuition fees for those who cannot pay, it must also provide free special education services to 21-year-old disabled students. Dkt. No. 31 at 8–11, 13. They filed a motion for provisional certification of a class comprised of "disabled students at risk of prematurely 'aging out' of their special educational programs," and for "a preliminary injunction that would keep those students in those programs during the pendency of this litigation until they reach the age of

twenty-two." Dkt. No. 35 at 6. This Court denied the motion for a preliminary injunction, as well as Plaintiffs' subsequent motion for reconsideration. Dkt. Nos. 58, 72.

Plaintiffs appealed. Dkt. No. 73. The Ninth Circuit first considered mootness, concluding that while the controversy was moot as to Plaintiff N.D.—who is now 22 years old—it was not moot as to Plaintiff E.A. Dkt. No. 75 at 10–12. As to the merits, the Ninth Circuit noted that in *E.R.K.*, the court interpreted IDEA's statutory language to mean that a State "cannot deny special education to disabled students aged 18 through 21 if it in fact provides 'free public education' to nondisabled students in that range of ages." *Id.* at 17 (quoting *E.R.K.*, 728 F.3d at 987). The court found that Washington offers "free public education" to nondisabled students through age 21 by virtue of its waivers of the $25 tuition fee for students who cannot pay, making IDEA's exception inapplicable. *Id.* at 18. The court thus concluded that "the students have a high likelihood of success on the merits of their claim." *Id.* at 19. The court also found that the students met the other *Winter* factors. *Id.* at 20–23. The court therefore vacated this Court's order denying a preliminary injunction and "remand[ed] for further proceedings including the entry of a preliminary injunction." *Id.* at 23. The court did not address the propriety of class certification because this Court had not addressed that issue. *Id.*

After the Ninth Circuit issued its mandate, the Court ordered the parties to file a joint status report proposing how the Court should proceed in light of the Ninth Circuit's opinion. Dkt. No. 78 at 1–2. The parties' joint status report stated that they "agree that the Ninth Circuit's opinion effectively resolves the merits of the case in favor of Plaintiffs." Dkt. No. 81 at 2. The parties therefore proposed that "the Court enter a Final Order on the Merits, consistent with Plaintiffs' Requests for Relief (a)-(c) of their Amended Complaint" and include certain findings and declaratory relief. *Id.* The parties further agreed that "the case is ripe for final determination of class certification and entry of judgment providing relief for class members affected by the

unlawful age-out policy" but they did not agree on "how that class should be defined, or the manner in which any compensatory education owed to them should be provided." *Id.* They filed a stipulation to engage in mediation on these topics, Dkt. No. 82, and in the meantime, they agreed that the Court "should issue a preliminary injunction against OSPI, preventing it from 'enforcing the age-out provisions in Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.0200[0](2)(c),' and directing OSPI 'to take all actions necessary to ensure those students are able to continue attending their programs pending this litigation or until reaching the age of twenty-two.'" Dkt. No. 81 at 3 (quoting Dkt. No. 35 at 7).

On July 10, 2024, the Court granted Plaintiffs' motion and certified the following provisional class:

> All students with disabilities in Washington who aged out of their special education programs at the end of the 2022-2023 school year who have not yet turned 22 and all students with disabilities in Washington at risk of aging out of their special education programs before they turn 22 years old as a result of Section 28A.155.020 of the Revised Code of Washington and Section 392.172A.02000(2)(c) of the Washington Administrative Code.

Dkt. No. 83 at 11. The Court also issued the following declaratory judgment:

> (a) OSPI's refusal to ensure the provision of FAPE to Plaintiff E.A. and the members of the provisional class on account of their age violates the IDEA;
>
> (b) By this conduct, OSPI has violated 20 U.S.C. § 1407 and 20 U.S.C. § 1412(11);
>
> (c) Section 28A.155.020 of the Revised Code of Washington and Section 392.172A.02000 of the Washington Administrative Code are invalid as contrary to the IDEA to the extent they do not ensure eligible students receive a FAPE until they turn 22[.]

*Id.* at 12. Based on the Ninth Circuit's holding that Plaintiffs "meet all four of the *Winter* requirements," Dkt. No. 75 at 23, the Court granted the requested preliminary injunction:

> Defendant Office of the Superintendent of Public Instruction is enjoined from enforcing the age-out provisions in Section 28A.155.020 of the Revised Code of Washington and Section 392.172A.02000(2)(c) of the Washington Administrative Code, and is directed to take all actions necessary to ensure that disabled students are able to continue attending their special education programs pending disposition

ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS - 4

of this matter or until they reach the age of 22.

*Id.* at 14. Finally, the Court appointed Plaintiff E.A. to serve as provisional class representative, and the firms of Cedar Law PLLC and Susman Godfrey L.L.P. as class counsel for the provisional class. *Id.*; Fed. R. Civ. P. 26(g).

The parties filed a notice of settlement on July 22, 2024. Dkt. No. 85. Plaintiffs then filed their first motion for preliminary approval of the class action settlement and certification of a settlement class. Dkt. No. 86. The Court denied that motion because the parties' proposed class definition was unnecessarily complicated, their notice plan was insufficient, and the settlement would have required the Court to "retain[] jurisdiction . . . over any appeals that result from Due Process Hearings regarding the appropriateness of any compensatory education awards." Dkt. No. 87 at 9–12. The parties subsequently entered into a revised settlement agreement, Dkt. No. 89-1 at 2–3, but the Court denied Plaintiffs' second motion for preliminary approval of the class action settlement and certification of a settlement class because there were deficiencies in the proposed notices and the amended settlement agreement continued to require the Court to exercise jurisdiction over a broad swath of potential appeals, Dkt. No. 91 at 2–4.

On October 22, 2024, Plaintiffs filed their third motion for preliminary approval of an amended class action settlement and for certification of a settlement class. Dkt. No. 92. Plaintiffs' motion asked the Court to:

> (1) certify the proposed settlement class, (2) appoint as class counsel the law firms of Susman Godfrey LLP and Cedar Law PLLC, (3) appoint N.D. and E.A., by and through their respective guardians, as class representatives, (4) grant preliminary approval of the settlement, (5) approve the proposed notice plan, and (6) schedule any final fairness hearing and related deadlines.

*Id.* at 2–3. The Court granted that motion, then issued an amended order at Plaintiffs' unopposed request to clarify the deadlines, Dkt. Nos. 93–95. The amended order granting Plaintiffs' motion for preliminary approval appointed E.A. and N.D., by and through their respective guardians, as

1    Class Representatives; appointed Susman Godfrey L.L.P. and Cedar Law PLLC as Class Counsel;

2    preliminarily approved reimbursements to E.A. and N.D.; and preliminarily approved attorney's

3    fees and costs of $440,000. Dkt. No. 95 at 22–23. The order also provisionally certified the

4    following class: "All students who were exited from special education services due to age before

5    their 22nd birthday between November 11, 2020 and the present." *Id.* at 6, 14.

6        On January 6, 2025, Plaintiffs filed these motions for final approval of the settlement and

7    for attorney's fees and costs. Dkt. Nos. 96–99. On May 27, 2025, the Court received a timely

8    objection filed by two parents on behalf of their adult son (the "objectors"). Dkt. No. 113 at 1.[1]

9    The objectors note that on or around June 23, 2023, a few weeks after their son's 21st birthday,

10   they received notice that the Bellevue School District was discontinuing his special education

11   services because he was aging out. *Id.* at 2. He subsequently received a regular high school

12   diploma, and the school district has "refused to convene an IEP meeting or otherwise engage in

13   discussions with the Family" in light of this case and the student's receipt of a diploma. *Id.* The

14   objectors contend that the Settlement Agreement harms their son "first by wrongfully exiting him

15   from IDEA services prior to age 22, and again by excluding him from the class action remedy due

16   to a diploma issued on the basis of his aging out." *Id.* at 3. Plaintiffs and Defendants filed timely

17   responses to the objection. Dkt. Nos. 115, 116.

18       The Court held a final fairness hearing on June 17, 2025. Dkt. No. 125. Counsel for the

19   parties, the mother of class representative E.A., and the objecting father and his counsel attended.

20   **A. Amended Settlement Agreement**

21       The key terms of the parties' amended settlement agreement (the "Settlement Agreement"),

22   Dkt. No. 92-1, are as follows.

23   _____

24   [1] The deadline to mail or file objections was May 23, 2025. It appears that the objectors mailed their objection on May 23, 2025. Dkt. No. 113 at 8.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1.  Class Definition

The class is defined as:

> All students who were exited from special education services due to age before their 22nd birthday between November 11, 2020 and the present.

Dkt. No. 92-1 at 1. Plaintiffs noted that "[t]he class definition also accounts for the IDEA's two-year statute of limitations." Dkt. No. 92 at 5 (citing 20 U.S.C. § 1415(6)(B)).

2.  Further Declaratory Relief

The parties requested that in addition to the relief the Court has already awarded, Dkt. No. 83, the Court award additional declaratory relief, Dkt. No. 92 at 5; *see also* Dkt. No. 92-1 at 1. Consistent with that request, the Court entered the following declaratory judgment:

> the state's policy of aging students out of special education at the end of the school year in which they turn 21 pursuant to Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(c) presently violates the IDEA, has violated the IDEA at all times during the two years preceding the filing of this lawsuit, and will continue to violate the IDEA absent a substantial change in the state's policies for charging and waiving tuition for its adult secondary education programs.

Dkt. No. 95 at 21–22.

3.  Provision of Compensatory Education to Settlement Class Members

The agreement also provides for compensatory education to eligible students who wish to receive it:

> OSPI shall direct LEAs to reconvene IEP teams for all students in the class who wish to receive an award of compensatory education. Compensatory education shall be awarded to students in the class according to the recommendations of their IEP teams. If a student, IEP team, and LEA agree, a student may receive monetary compensation in lieu of compensatory education. Any class members who have paid privately for special education services after having been exited due to age from LEA-provided special education programs may seek reimbursement of such documented expenses, and OSPI shall direct LEAs to offer reimbursement of reasonable expenses in line with the prior recommendations of the class member's IEP team. OSPI shall direct LEAs that they may not decline to provide compensatory education on grounds of age for IEP services not provided to class members as a result of their exit prior to turning age 22. OSPI shall ensure through

ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS - 7

the exercise of its supervisory powers, to the extent authorized by law, that LEAs comply with these directions.

Dkt. No. 92-1 at 1. "OSPI's direction to LEAs shall be without prejudice to the right or ability of LEAs to deny compensatory education via appropriate procedures either on the basis of having received a regular high school diploma or lack of continuing need for services as of the time that services were withdrawn." *Id.* at 1–2.

### 4. Reimbursement to Guardians of N.D. and E.A.

The Settlement Agreement provides for payments to the guardians of class representatives E.A. and N.D. For E.A., OSPI has agreed to

> reimburse the guardians of E.A. for up to $60,000 in documented expenses incurred to provide him with private educational and related support services since he was exited from the Selah School District on August 31, 2023, and, in lieu of reinstatement in the Selah School District and to avoid further disruption, shall continue to fund those services through the end of the current school year on August 31, 2024.

*Id.* at 2. And for N.D., OSPI has agreed to

> directly pay for or reimburse the guardians of N.D. for up to $150,000 in documented expenses for educational services, including without limitation occupational therapy, vocational instruction/counseling, speech therapy, applied behavior analysis, tutoring, social activities, day programming, or any other services that could be available to special education students under the IDEA, including related services such as transportation; Plaintiffs will have up to five years from the entry of judgment to seek such services and will submit all claims for reimbursement within 90 days of the five-year period[.]

*Id.*

### 5. Attorney's Fees and Costs

The parties agreed that OSPI will "pay all Plaintiffs' reasonable attorney's fees and costs incurred in this action through the entry of the settlement decree by the Court, as well as for any guardian ad litem whose appointment the Court may require pursuant to LCR 17(c) or otherwise[.]" *Id.* Plaintiffs averred that as of the time they filed their motion for preliminary

approval of the settlement agreement, they had incurred attorney's fees of "approximately $440,000 between Susman Godfrey and Cedar Law." Dkt. No. 92 at 7.

6. Notice

The parties proposed to provide notice to class members of the settlement and their rights in multiple ways using one of two notice forms. *Id.* First, they agreed that OSPI would direct LEAs to provide direct notice to all class members who were assigned an "exit code" of "RMA" (Reached Maximum Age) or "D2" since November 11, 2020. Dkt. No. 92-1 at 1; *see also* Dkt. No. 35-3 at 36 (explaining that school districts select and assign an exit code to use in reporting to OSPI the reason a student exited a special education program). The direct notice would inform potential class members of the nature of the suit, the settlement terms, how to obtain more information about settlement, how the class member may object if they disagree with the Settlement Agreement, and who class members should contact at the LEA to schedule the required IEP meeting. Dkt. No. 92-1 at 4–7.

Second, the parties agreed that OSPI would publish notice of the settlement, including a link to the Court's Order, on its website and in its regular bulletins. *Id.* at 1. At the same time, OSPI would send the same notice to various disability advocacy organizations in Washington, including The Arc of Washington State, the Washington Autism Alliance, and Disability Rights Washington, with permission to republish the notice. *Id.*; *see also id.* at 9–12 (the "general notice"). The general notice contained the same information as the direct notice, "except without reference to a specific individual, instead recommending that students contact their district's director of special education or Plaintiffs' counsel to schedule the required IEP meeting." Dkt. No. 92 at 8.

Finally, the parties agreed that OSPI would direct LEAs to report the number of students who have scheduled or attempted to schedule an IEP meeting by a specific date that was at least thirty days prior to the planned fairness hearing. *Id.*

1    7.   Retention of Jurisdiction

2    The Settlement Agreement asks the Court to "retain jurisdiction over the administration,

3    consummation, enforcement, and interpretation of any approved settlement agreement, and any

4    Court orders approving the settlement agreement for five years." Dkt. No. 92-1 at 2.

5    ## II.   DISCUSSION

6    Settlement of class actions "must be fair, adequate, and reasonable." *Dennis v. Kellogg*

7    *Co.*, 697 F.3d 858, 864 (9th Cir. 2012); *see* Fed. R. Civ. P. 23(e)(1)(B)(2). Under Federal Rule of

8    Civil Procedure 23(e), settling claims brought by a proposed class requires provisional

9    certification, notice to the class, and a fairness hearing before the court. In this case, for the reasons

10   set forth herein, the Court approves the parties' settlement.

11   **A.    Class Certification**

12   Before granting final approval of a class action settlement, courts must assess whether the

13   class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *See Hanlon v.*

14   *Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998), *overruled on other grounds by Wal-*

15   *Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). The reasoning underlying the Court's provisional

16   certification of the class remains unchanged since its order preliminarily approving the settlement,

17   and therefore the Court incorporates its prior analysis under Rule 23(a) and (b) as set forth therein.

18   *See* Dkt. No. 95 at 10–14. Accordingly, the Court finds that Plaintiffs have met their burden of

19   showing that the requirements of Rule 23(a) are met and that the class is maintainable under Rule

20   23(b) for purposes of settlement approval. *See, e.g.*, *Juarez v. Soc. Fin., Inc.*, No. 20-CV-03386-

21   HSG, 2023 WL 3898988, at *3 (N.D. Cal. June 8, 2023) (certifying the settlement class for final

22   approval when no material changes occurred between preliminary and final certification); *Lalli v.*

23   *First Team Real Est.-Orange Cnty.*, No. 8:20-CV-00027-JWH-ADS, 2022 WL 8207530, at *4

24   (C.D. Cal. Sept. 6, 2022) (same).

**B.** **Adequacy of Notice**

Unlike for Rule 23(b)(3) classes, "[n]otice to class members is optional for a Rule 23(b)(2) class" like this one. *Zaldivar v. T-Mobile USA, Inc.*, No. C07-1695 RAJ, 2009 WL 2029965, *5 (W.D. Wash. July 10, 2009); *see* Fed. R. Civ. P. 23(c)(2)(A) ("the court *may* direct appropriate notice to the class") (emphasis added). Although notice may be required under Rule 23(e)(1)(B) when putative class members are bound by the resolution, that is not the situation here. The settlement agreement does not require class members to release any claims, and instead preserves their "rights to initiate a due process hearing or community complaint[.]" Dkt. No. 92-1 at 2. Still, the Court can require "appropriate notice" "to protect class members and fairly conduct the action" at "any step in the action[.]" Fed. R. Civ. P. 23(d)(1)(B)(i).

Here, the Court required notice because even though class members are not bound, they needed to be aware of the significant compensatory education benefits available under the settlement—as well as the potential for significant monetary relief in lieu of compensatory education when appropriate. Dkt. No. 92-1 at 1; Dkt. No. 95 at 19. In addition, the Court noted that class members' reaction to receiving the notice would be key in determining the value of the settlement to the class. Dkt. No. 95 at 19; *see Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 993 n.2 (9th Cir. 2023) ("[O]ur recent case authority has emphasized that disregarding a low claims rate would result in unreasonable fee awards that are 'disproportionate to the class benefit.'" (quoting *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021)).

The Court previously approved the contents of the notices and the plan for their distribution. *See* Dkt. No. 95 at 19–21. After receiving a joint status report from the parties, Dkt. No. 108, the Court ordered Defendants to provide updated notice to the class and rescheduled the final fairness hearing to allow more time for that notice and any objections from class members, Dkt. Nos. 108-1, 109 at 3–4.

1        Based on the record before it, the Court finds that Defendants have sufficiently

2 implemented the notice process to comply with the Court's orders. On April 24, 2025, OSPI's

3 Assistant Superintendent of Special Education filed a declaration stating that since November 11,

4 2020, 346 students had received exit codes of [Reached Maximum Age ('RMA')] or D2 and were

5 therefore potential members of the class." Dkt. No. 111-1 at 1–2. 296 students were sent notices

6 by March 24, 2025, *id.* at 2, the deadline previously set by the Court, Dkt. No. 109 at 4. Notices

7 were sent to 42 additional students by March 28, 2025, and the remaining seven students received

8 notice by April 18, 2025. Dkt. No. 111-1 at 2.[2] Because all class members had received notice by

9 April 18, 2025, the Court notified the parties that it was maintaining its previously issued schedule,

10 Dkt. No. 109, including the May 23, 2025 deadline for class members to mail or file any objections

11 to the settlement, and the June 17, 2025 Final Fairness Hearing. Dkt. No. 112.

12        LEAs sent the notices to the student's last known address—both physical and email, or if

13 an address for the student was unknown, the last known address of the students' parents and/or

14 legal guardians. Dkt. No. 99 at 8. As described above, the notice informed class members of the

15 nature of the suit, the settlement terms, how to obtain more information about the settlement, how

16 class members may object if they disagreed with the Settlement Agreement, and who class

17 members should contact at the LEAs to schedule the required IEP meeting. Dkt. No. 92-1 at 4–7;

18 Dkt. No. 108-1; Dkt. No. 109 at 3.

19        In addition to that direct notice, OSPI maintains information on the class action on their

20 website, https://ospi.k12.wa.us/student-success/special-education, including the general notice,

21 the Court's Order preliminarily approving the Settlement Agreement and settlement class, the

22 Settlement Agreement, and the general settlement notice. Dkt. No. 100 at 2; Dkt. No. 111-1 at 2.

23

24

---

[2] One student has since passed away, so no notice was sent. *Id.*

ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS - 12

1    OSPI has also sent the same information to various disability advocacy organizations in

2    Washington, including The Arc of Washington State, the Washington Autism Alliance, and

3    Disability Rights Washington, with permission to republish the notice. Dkt. No. 100 at 2; Dkt. No.

4    111-1 at 2.

5        Plaintiffs' counsel has also provided the Court with information regarding the number of

6    students who (1) have declined any offer of compensatory education, (2) continue to receive

7    services without interruption, (3) have requested an IEP meeting to discuss compensatory

8    education, and (4) have not responded to the notification. Dkt. No. 117 at 2. As of June 4, 2025,

9    "[o]f the 345 students who were sent the second notice, the reporting OSPI obtained indicates that

10   17 have declined compensatory education, 47 have continued to be served in school, 17 have

11   requested an IEP meeting to discuss compensatory education, and 264 have not responded to the

12   notice." *Id.*

13       Based on the declarations indicating that Defendants complied with the notice plan, Dkt.

14   Nos. 100, 111-1, the Court is satisfied that class members received "appropriate notice" "to protect

15   class members and fairly conduct the action[.]" Fed. R. Civ. P. 23(d)(1)(B)(i).

16   **C. Settlement Approval**

17       1. <u>Legal Standard</u>

18       "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or

19   unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir.

20   2008). Before a district court approves a class action settlement, it must determine that the

21   settlement is "fundamentally fair, adequate, and reasonable." *In re Heritage Bond Litig.*, 546 F.3d

22   667, 674–75 (9th Cir. 2008). And as set forth below, where the parties reach a class action

23   settlement prior to class certification, district courts apply "a higher standard of fairness and a more

24

1   probing inquiry than may normally be required under Rule 23(e)." *Dennis*, 697 F.3d at 864

2   (citation modified).

3   District courts must balance a number of factors in order to assess a settlement proposal.

4   These factors include (1) whether the class representative and class counsel have adequately

5   represented the class; (2) whether the proposal was negotiated at arm's length; (3) whether the

6   relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial

7   and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,

8   including the method of processing class member claims; and (iii) the terms of any proposed award

9   of attorney's fees, including timing of payment; and (4) whether the proposal treats class members

10  equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)–(D); *see also Zwicky v. Diamond*

11  *Resorts Mgmt. Inc.*, 343 F.R.D. 101, 119 (D. Ariz. 2022); *K.W. v. Armstrong*, 180 F. Supp. 3d 703,

12  723 (D. Idaho 2016). "The proposed settlement need not be ideal, but it must be fair and free of

13  collusion, consistent with counsel's fiduciary obligations to the class." *Rollins v. Dignity Health*,

14  336 F.R.D. 456, 461 (N.D. Cal. 2020).

15  Here, the proposal would not bind class members, so the fairness inquiry is not required.

16  *See* Fed. R. Civ. P. 26(e)(2) ("If the proposal would bind class members, the court may approve it

17  only after a hearing and only on finding that it is fair, reasonable, and adequate after considering"

18  the factors that follow); *see also* Dkt. No. 92 at 5 (the "agreement contains no release language

19  and is instead framed as a judgment against the Defendant"). Nonetheless, Plaintiffs state that

20  "given the nature of the relief being made available, Plaintiffs believe that consideration under

21  Rule 23(e)(2) provides important assurances to the Court of the appropriateness of the relief." Dkt.

22  No. 99 at 9. The Court agrees and addresses the factors as it did in its prior order preliminarily

23  approving the settlement. Dkt. No. 95 at 16–19.

24

1

2.  Fairness, Reasonableness, and Adequacy

2

The Court finds that the Settlement Agreement is "fair, reasonable, and adequate"

3

considering the quality of representation provided by the class representatives and class counsel,

4

the arm's length negotiations between the parties, the adequacy of relief to class members, and the

5

equitable treatment of class members relative to each other. Fed. R. Civ. P. 23(e)(2)(A)–(D).

6

(a)  Adequacy of Representation

7

E.A. and N.D., by and through their guardians, and class counsel have prosecuted this

8

action vigorously on behalf of the class for over two years, investigating the potential claims,

9

preparing the complaint, conducting discovery, prevailing on appeal, and ultimately, negotiating a

10

favorable resolution. Dkt. No. 95 at 3–5, 12–13. In addition, class counsel, who are experienced

11

education and class action attorneys, *see* Dkt. No. 97 at 1–5; Dkt. No. 98 at 1–4, invested more

12

than 800 hours in this case, Dkt. No. 97-1 at 2–7; Dkt. No. 98-1 at 2–11. The Court therefore finds

13

that E.A. and N.D., by and through their guardians, and class counsel have adequately represented

14

the class, which weighs in favor of final approval. Fed. R. Civ. P. 23(e)(2)(A).

15

(b)  Arm's Length Negotiations

16

The Court next finds that the Settlement Agreement is the result of serious, informed, and

17

arm's-length negotiations between attorneys with years of experience working with class actions

18

and in the special education context. *See* Fed. R. Civ. P. 23(e)(2)(B); *In re Apple Inc. Device*

19

*Performance Litig.*, 50 F.4th 769, 782 (9th Cir. 2022). The record reflects that the parties engaged

20

in significant fact discovery, and following the remand from the Ninth Circuit, they conducted

21

settlement negotiations directly and through mediation. *See* Dkt. No. 92 at 13. Based on the record

22

before the Court, there are no indications that settlement negotiations were driven by self-interest

23

rather than the class's interests.

24

1

*(c)  Adequacy of the Relief Provided*

2      In deciding whether the relief provided for the class is adequate, courts consider: "(i) the

3 costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of

4 distributing relief to the class, including the method of processing class-member claims; (iii) the

5 terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

6 agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C); *see also*

7 *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (risk, expense, complexity and

8 likely duration of litigation supports the adequacy of relief).

9      Here, the Settlement Agreement provides significant benefits to class members, including

10 requiring LEAs to "extend age eligibility for special education services until the student's 22nd

11 birthday," "reconvene IEP teams for all students in the class who wish to receive an award of

12 compensatory education" and award such education according to the recommendations of the IEP

13 teams; offer reimbursement for expenses incurred for special education services and allow students

14 to receive monetary compensation in lieu of compensatory education if the student, the IEP team,

15 and the LEA agree. Dkt. No. 92-1 at 1–2. Plaintiffs argue, and Defendants do not dispute, that

16 using "individual IEP teams to determine compensatory education for class members provides an

17 effective means of determining individual compensatory education awards and alleviates the need

18 for the parties to potentially litigate those issues for all class members." Dkt. No. 99 at 10. Plaintiffs

19 note that the IEP teams "are better positioned to provide individualized review of each class

20 member[']s[] needs by a team familiar with both the student and the resources available to the

21 specific LEA." *Id.* Class members also retain the right to challenge a decision regarding proposed

22 compensatory education, thereby providing procedural safeguards. *Id.* at 11; Dkt. No. 92-1 at 1–

23 2. Plaintiffs have filed the Settlement Agreement and thus satisfied Rule 23(e)(3).

24      In addition, the Washington state legislature has passed a new bill extending special

ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS - 16

education services to students with disabilities until the end of the school year in which the student turns 22. The report accompanying the Senate Committee's bill proposal cites this Court's declaratory judgment—issued pursuant to the settlement—that "The state's policy of aging students out of special education at the end of the school year in which they turn 21 pursuant to [state statute] and [state administrative rule] presently violates the IDEA, has violated the IDEA at all times during the two years preceding the filing of this lawsuit, and will continue to violate the IDEA absent a substantial change in the state's policies for charging and waiving tuition for its adult secondary education programs." Wash. State Senate Bill Report on SB 5253 at 2 (Jan. 29, 2025) (quoting Dkt. No. 95 at 22), *available at* https://app.leg.wa.gov/committeeschedules/Home/Documents/32557; *see also* Act of May 14, 2025, 2025 Wash. Laws 256, *available at* https://lawfilestestext.leg.wa.gov/BienniumTest/2025-26/Htm/Bills/Senate%20Passed%20Legislature/5253-S.PL.htm.

        Turning to the objection, it does not appear to be properly before the Court. The objection is filed by an "Attorney for Parent" who does not indicate that she represents the student. Dkt. No. 113 at 6; *see also* Dkt. No. 118 at 1–2 (Notice of Appearance for a second attorney for the parents "on behalf of their adult son"). Although the student may be a class member, the parents are not class members, and only class members have standing to object. *See* Fed. R. Civ. P. 23(e)(5) ("Any class member may object to the [settlement] proposal if it requires court approval"). Guardians can sue in their own names, Fed. R. Civ. P. 17(a)(1)(C), but the parents are not the guardians of their son, Dkt. No. 119 at 1 (identifying their son as "an individual with disabilities" who is "without a guardian or conservator"). On June 10, 2025, in a late attempt to remedy that deficiency, the parents filed a petition for an order appointing them as guardian ad litem for their adult son. Dkt. No. 119. The Court struck that petition without prejudice because the parents did not note it in accordance with Local Civil Rule 7, Dkt. No. 122, and the parents have not refiled their petition.

1    Nor did the parents file their petition sufficiently in advance of the June 17, 2025 fairness hearing

2    to allow the Court to rule on it in time. *See* LCR7(j) (cautioning that "whenever possible," a motion

3    for relief from a deadline should "be filed sufficiently in advance of the deadline to allow the court

4    to rule on the motion prior to the deadline.").

5           Even if the objection were properly before the Court, it would not change the Court's

6    conclusion that the Settlement Agreement is fair, adequate, and reasonable. The objectors take

7    issue with paragraphs 10 and 12 of the Settlement Agreement. Dkt. No. 113 at 3–5.[3] They ask the

8    Court to reject paragraph 10 and "[r]evise or modify" paragraph 12 to adopt their proposed

9    language. *Id.* at 5. However, courts may not "delete, modify or substitute certain provisions. The

10   settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026 (citation modified). Thus,

11   the Court does not have the ability to modify, revise, or reject certain portions of the Settlement

12   Agreement, so it considers whether the relief in the Settlement Agreement, *as written*, is adequate.

13          Together with paragraph 9, paragraph 10 of the Settlement Agreement requires OSPI to

14   direct LEAs "that they may not decline to provide compensatory education on grounds of age for

15   IEP services not provided to class members as a result of their exit prior to turning age 22";

16   provided, however, that such direction "shall be without prejudice to the right or ability of LEAs

17   to deny compensatory education via appropriate procedures either on the basis of having received

18   a regular high school diploma or lack of continuing need for services as of the time that services

19   were withdrawn." Dkt. No. 92-1 at 1–2. The objectors argue this "carve out allows LEAs to deny

20   compensatory education . . . to certain class members . . . without first requiring them to undergo

21   any protocol to determine" whether there is a continuing need for services or received a regular

22

23   ------

[3] The paragraph numbering used by the objectors is off by one number because OSPI had inadvertently posted on its website a version of the Settlement Agreement in which paragraphs 1 and 2 were combined instead of the version the Court approved, Dkt. No. 92-1. However, the version of the Settlement Agreement that was posted on OSPI's website was materially identical to the version the Court approved. The current version is now on OSPI's website, https://ospi.k12.wa.us/sites/default/files/2024-11/settlement-agreement-case-2-22-cv-01621-lk.pdf.

24

high school diploma because the student aged out. Dkt. No. 113 at 3. They note that although a school district may terminate a FAPE based on the receipt of a regular high school diploma, 34 C.F.R. § 300.102(a)(3), "this may only occur in Washington when the Student has also met 'regular high school graduation requirements.'" Dkt. No. 113 at 3 (quoting Wash. Admin. Code § 392-172A-02000(2)(b)). They also argue that "lack of continuing need" is not the correct standard. *Id.* at 4. Instead, "to discontinue services based on lack of need, a 'group of qualified professionals and the parent of the student, based on a reevaluation, [must] determine[s] the student is no longer eligible for special education services[.]'" *Id.* (quoting Wash. Admin. Code § 392-172A-02000(2)(a)). Defendants respond that "the right or ability of LEAs to stop providing special education services is established by federal regulation"; consequently, paragraph 10's "recognition of federal law does not harm the Student and cannot weigh against approval of the settlement." Dkt. No. 116 at 3. Plaintiffs agree that school districts are free to exit students from their special education programs before their twenty-second birthday based on something other than their age as long as they do so "via appropriate procedures." Dkt. No. 115 at 2 (quoting paragraph 10, Dkt. No. 92-1 at 1–2).

As Plaintiffs note, *id.* at 2–3, this provision is consistent with applicable federal and state law, *see, e.g.*, 34 C.F.R. § 300.102(a)(3) (requirement to provide a FAPE does not apply to students with disabilities who have graduated with "a regular high school diploma"); 34 C.F.R. § 300.102(a)(3)(iii) (requiring written notice before exiting a student based on receipt of a regular high school diploma); Wash. Admin. Code § 392-172A-02000(2)(b) (state requirements). By recognizing these standards, the Settlement Agreement does not supplant them or waive students' rights. Nor does it displace the federal and state procedural requirements imposed on districts before determining that a student is no longer in need of services. As Plaintiffs note, Dkt. No. 115 at 4, if a district fails to comply with federal or state law by exiting a student who has not met

graduation requirements, or who has a continued need for services, the class member may file for due process under paragraph 12 of the Settlement Agreement, Dkt. No. 92-1 at 2. *See also* Dkt. No. 116 at 2 (citing 34 C.F.R. § 300.507(a); Wash. Admin. Code § 392-172A-05080)). Furthermore, the Settlement Agreement is not binding on students, nor does it contain a release of claims. Students therefore remain free to file their own class actions or individual lawsuits to remedy any violation of law that is not addressed by this Settlement Agreement.

The objectors contend that paragraph 12's statement regarding class members' rights to initiate a due process hearing or community complaint fails to "remedy the substantive harm" caused by paragraph 10 because the school district may refuse to convene an IEP for students who received a diploma because they aged out, or because the statute of limitations may have run. Dkt. No. 113 at 4–5. As set forth above, paragraph 10 does not cause "substantive harm" because it does not negate class members' existing protections under state and federal law. Rather, as paragraph 12 states, they "retain all rights to initiate a due process hearing or community complaint to challenge (a) any proposal or refusal to offer compensatory education by an LEA that has reconvened a class member's IEP team at OSPI's direction pursuant to this settlement and (b) any failure by an LEA to follow OSPI's direction to reconvene their IEP teams." Dkt. No. 92-1 at 2. The objectors also raise the statute of limitations as a concern, Dkt. No. 113 at 5, but as Plaintiffs note, Dkt. No. 115 at 4–5, this action is not the proper vehicle to impose equitable tolling on the school districts, which are not defendants in this case. *See Defries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1097 (9th Cir. 2024) (explaining that "*American Pipe* tolling begins upon the filing of a putative class action complaint, which 'commences a suit and thereby notifies *the defendants* not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.'" (emphasis added;

1   quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 555 (1974)).[4] Nor does the absence of

2   equitable tolling in the Settlement Agreement render the substantial relief it provides inadequate.

3        In sum, the Court finds that the proposed relief is adequate.

4        *(d) The Individual Reimbursements Are Reasonable and Not Preferential Treatment*

5        Under Rule 23(e)(2)(D), the Court must consider whether the settlement agreement treats

6   settlement class members equitably relative to each other. In this case, the Settlement Agreement

7   requires Defendants to (1) reimburse the guardians of E.A. for up to $60,000 in documented

8   expenses incurred to provide him with private educational and related support services since he

9   was exited from the Selah School District, and (2) directly pay for or reimburse the guardians of

10  N.D. for up to $150,000 in documented expenses for educational services. Dkt. No. 92-1 at 2. The

11  IDEA empowers courts "to order school authorities to reimburse parents for their expenditures on

12  private special education for a child if the court ultimately determines that such placement . . . is

13  proper under the Act." *Sch. Comm. of Burlington v. Dep't of Ed. of Mass.*, 471 U.S. 359, 370

14  (1985). E.A.'s parent has submitted a spreadsheet of expenses totaling over $55,000 that E.A.'s

15  family incurred after he was exited from Selah School District to provide educational services

16  consistent with those he was receiving under his IEP. Dkt. Nos. 102, 102-1. N.D. received "special

17  education and related services at a residential school" pursuant to his IEP until he aged out, and

18  his parents plan to use the funds to attempt to replicate those services as best they can. Dkt. No.

19  101 at 1, 3. The Court finds that the individual reimbursements here are reasonable because the

20  funds can only be used for documented educational and support services, Dkt. No. 92-1 at 2, and

21  correlate to the amounts the families of E.A. and N.D. have spent and anticipate spending on their

22

---

23  [4] Defendants note that the statute of limitations had not yet run for the objectors when they filed their objections, so the student was still able to bring an individual due process challenge regarding the issuance of his diploma and termination of services. Dkt. No. 116 at 1; *see also* Dkt. No. 117 at 2 (stating that on May 30, 2025, OSPI emailed a parent of the student with "detail about the special education dispute resolution options (special education community complaint and due process), including the statute of limitations for those options.").

24

1    special education needs, Dkt. No. 101 at 1–3; Dkt. No. 102 at 2–3.

2         These awards do not represent preferential treatment because the Settlement Agreement

3    provides that all class members (not just E.A. and N.D.) may be awarded monetary compensation

4    in lieu of compensatory education. *Id.* at 1. The only distinction is that the funds for E.A. and

5    N.D.'s guardians will come directly from OSPI rather than the LEAs. Dkt. No. 99 at 11. Finally,

6    while the payments to E.A. and N.D.'s guardians are not necessarily "service" or "incentive"

7    awards, incentive awards (which are "intended to compensate class representatives for work done

8    on behalf of the class, to make up for financial or reputational risk undertaken in bringing the

9    action, and, sometimes, to recognize their willingness to act as a private attorney general") are

10   "fairly typical in class action cases." *Rodriguez*, 563 F.3d 958–59. The Court finds that the

11   agreement treats all class members equitably and this factor also weights in favor of approval.

12            *(e)  Reasonableness of Fees Requested*

13        OSPI has agreed to pay "all of Plaintiffs' reasonable attorney's fees and costs incurred in

14   this action through the entry of the settlement decree by the Court[.]" Dkt. No. 92-1 at 2. As set

15   forth below, the Court finds that the fees requested are reasonable as adjusted.

16            *(f)  Obvious Deficiencies*

17        The Court also considers whether there are any obvious deficiencies in the Settlement

18   Agreement. "Obvious deficiencies in a settlement agreement include 'any subtle signs that class

19   counsel have allowed pursuit of their own self-interests to infect the negotiations.'" *Zwicky*, 343

20   F.R.D. at 121 (quoting *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021)). For

21   the reasons discussed herein, the Court finds no such deficiencies, and therefore finds that this

22   factor weighs in favor of approval.

23            *(g)  Churchill Factors*

24        In addition to the above-mentioned factors under Rule 23(e)(2), district courts generally

ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS - 22

1    still consider the eight "*Churchill* factors": (1) the strength of plaintiff's case; (2) the risk, expense,

2    complexity, and likely duration of additional litigation; (3) the risk of maintaining class action

3    status throughout trial; (4) the settlement amount; (5) the extent of discovery completed and the

4    stage of the proceedings; (6) the experience and opinions of counsel; (7) the presence of a

5    governmental participant; and (8) the reaction of Class Members to the settlement amount. *See*

6    *Kim*, 8 F.4th at 1178; *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Many

7    of these factors "fall within the ambit of the revised Rule 23(e)," and have therefore been discussed

8    above as part of the Court's analysis. *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021)

9    *see also In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025)

10   (noting that the "factors are now baked into the text of Rule 23(e), and the remaining ones can still

11   be considered for Rule 23(e)(2) analysis."). Nevertheless, the Court briefly notes that the strength

12   of Plaintiffs' case—as reflected by the decision of the Ninth Circuit and this Court's approval of a

13   preliminary injunction—weighs in favor of approving the settlement. Continued litigation would

14   likely be protracted, expensive, and very risky for Defendants in light of the past rulings in this

15   case. The Court also weighs in favor of approval the presence of government defendants, their

16   non-opposition to the motion for settlement approval, and their agreement to the Settlement

17   Agreement as in the public's interest. *See, e.g.*, *Hernandez v. Garland*, No. EDCV 16-620 JGB

18   (KKx), 2022 WL 1176752, at *7 (C.D. Cal. Mar. 28, 2022). Finally, the reaction of the class and

19   receipt of only one (improper) objection weigh in favor of approval. Dkt. No. 117 at 2 (noting that

20   47 students continue to be served in school, 17 have requested an IEP meeting to discuss

21   compensatory education, and 17 have declined compensatory education). At the hearing,

22   Defendants indicated that the large number of notice recipients who had not responded could be

23   explained by the fact that the exit codes used in the notification process were overbroad,

24   encompassing students who had exited for reasons other than aging out.

1    Accordingly, and for the reasons stated above, the Court finds that the *Churchill* factors

2    weigh in favor of approval. *See In re Bofl Holding, Inc. Sec. Litig.*, No. 3:15-CV-02324-GPC-

3    KSC, 2022 WL 9497235, at *7 (S.D. Cal. Oct. 14, 2022) (finding that a low number of opt outs or

4    objectors supports the conclusion that the relief provided to class members is adequate).

5        3.    Pre-Certification Factors

6    Pre-certification settlement agreements must also withstand heightened scrutiny "for

7    evidence of collusion or other conflicts of interest" because at this stage, "there is an even greater

8    potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset*

9    *Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). "This more exacting review" helps "to

10   ensure that class representatives and their counsel do not secure a disproportionate benefit at the

11   expense of the unnamed plaintiffs who class counsel had a duty to represent." *Roes, 1-2 v. SFBSC*

12   *Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (citation modified). As the Ninth Circuit has

13   cautioned, collusion in this context "may not always be evident on the face of a settlement, and

14   courts therefore must be particularly vigilant not only for explicit collusion, but also for more

15   subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain

16   class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947; *accord Saucillo v.*

17   *Peck*, 25 F.4th 1118, 1130–31 (9th Cir. 2022). Therefore, proposed agreements preceding formal

18   class certification must be examined for more "subtle signs" of collusion, such as (1) counsel

19   receiving a disproportionate distribution of the settlement; (2) the parties negotiating a "clear

20   sailing" arrangement, which carries the potential of enabling a defendant to pay class counsel

21   excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the

22   class; and (3) the parties creating a reverter that returns unclaimed funds to the defendant. *Roes, 1-*

23   *2*, 944 F.3d at 1049.

24

1  Plaintiffs seek $448,478 in attorneys' fees through the date of filing their motion for final

2  approval. Dkt. No. 99 at 13. Generally, "agreement on attorneys' fees should be viewed as a

3  'package deal'" in so far as it reflects "the defendant's overall willingness to pay." *In re Bluetooth*,

4  654 F.3d at 949 (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996)).

5  Here, though, Defendants have not agreed to pay a set amount as a package deal or fees as a

6  percentage of a settlement fund. Rather, they have agreed to pay "all Plaintiffs' reasonable

7  attorney's fees and costs incurred in this action," so the fees are not coming out of the settlement

8  fund. Dkt. No. 92-1 at 2. In addition to the reimbursements to E.A. and N.D., other students may

9  be awarded monetary compensation in lieu of compensatory education. *Id.* Thus, the provision of

10 up to $210,000 in reimbursements to E.A. and N.D. does not represent the full cash value of the

11 settlement. Nor does it take into account the value of the compensatory education provided to other

12 class members. *Id.* Based on E.A.'s experience, expenses associated with continuing IEP-

13 equivalent educational services for one year amounted to over $55,000. Dkt. Nos. 102, 102-1.

14 Applying that annual expense to the class members who either continue to be served in school or

15 are exploring compensatory education as a result of the settlement, Dkt. No. 117 at 2, results in a

16 settlement value of $3,520,000 (64 class members x $55,000).

17 In light of these factors, the Court concludes that class counsel are not receiving a

18 disproportionate share of the settlement. It also finds that the other precertification factors do not

19 weigh against approval because the settlement agreement did not preclude Defendants from

20 opposing Plaintiffs' motion for attorney's fees, and the parties did not create a reverter. *Roes, 1-2*,

21 944 F.3d at 1049.

22 4.  Further Approval Under Federal Rule of Civil Procedure 17 and Local Civil Rule 17

23 Plaintiffs note that "[d]istrict courts have a special duty, derived from Federal Rule of Civil

24 Procedure 17(c), to safeguard the interests of litigants who are minors." Dkt. No. 99 at 13 (quoting

1    *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011)). "In the context of proposed

2    settlements in suits involving minor plaintiffs, this special duty requires a district court to conduct

3    its own inquiry to determine whether the settlement serves the best interests of the minor." *Id.*

4    District courts have also applied this rule in the context of an incompetent litigant's claims. *Private*

5    *Client Fiduciary Corp. v. Chopra*, No. 22-CV-00436-LK, 2023 WL 8828842, at *2 (W.D. Wash.

6    Dec. 21, 2023).

7        Both N.D. and E.A. are "incompetent" under Washington law, as their parents have been

8    appointed legal guardians. *See* Dkt. Nos. 35-1, 35-2. However, as the Court noted in its order

9    preliminarily approving the settlement, it need not appoint settlement-related guardians for E.A.

10   and N.D. because general guardians have been appointed for them. Dkt. No. 95 at 13 (citing LCR

11   17(c)). For the reasons set forth above, the Court finds that the Settlement Agreement as to E.A.,

12   N.D., and the rest of the class is fair and reasonable in light of their claims. It is also in their best

13   interests; the settlement aims to fulfill a central purpose of the IDEA to "ensure that all children

14   with disabilities have available to them a free appropriate public education that emphasizes special

15   education and related services designed to meet their unique needs," 20 U.S.C. § 1400(d)(1)(A),

16   by offering (1) continuity of free education through age 22 and (2) compensatory education,

17   including but not limited to reimbursement of expenses for those students who paid for educational

18   services due to being wrongfully aged out, Dkt. No. 92-1 at 1–2. The settlement is thus

19   appropriately tailored to the harm class members suffered due to Defendants' violation of the

20   IDEA.

21   **D.    Attorney's Fees and Costs**

22       Plaintiffs seek $455,848 in fees and costs for all work performed. Dkt. No. 96 at 1; Dkt.

23   No. 125 at 2. OSPI has agreed to pay "all of Plaintiffs' reasonable attorney's fees and costs incurred

24   in this action through the entry of the settlement decree by the Court[.]" Dkt. No. 92-1 at 2.

Following Plaintiffs' successful appeal, the Ninth Circuit also "transfer[red] the consideration of attorney's fees incurred by Appellants on appeal to the district court from which the parties' appeal was taken." Dkt. No. 80 at 1. The objectors do not object to the request for fees and costs. *See generally* Dkt. No. 113.

    1.  <u>Attorney's Fees</u>

       *(a) Legal Standard*

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). District courts, however, "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. Courts can employ one of two methods: the lodestar or a percentage of the recovery. *In re Apple Inc.*, 50 F.4th at 784. Under the lodestar method, the court "multiplies the number of hours the prevailing party reasonably spent on litigation by a reasonable hourly rate to determine a presumptively reasonable fee award," which can then be adjusted "by an appropriate positive or negative multiplier" based on factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Kim*, 8 F.4th at 1180–81 (quoting *In re Bluetooth*, 654 F.3d at 941–42). The percentage of the recovery method considers fees as a percentage of a recovered common fund, with a benchmark percentage of 25%. Like the lodestar, this percentage can be adjusted upward or downward. *In re Apple Inc.*, 50 F.4th at 784. "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth*, 654 F.3d at 942.

       *(b) Analysis*

Because precisely valuing the overall settlement, including injunctive relief, is difficult

based on the current record, the Court finds that the lodestar method is more appropriate than the percentage of recovery method. *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019); *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. C17-541-RSM, 2018 WL 5013764, at *6, 12 (W.D. Wash. Oct. 16, 2018) (finding the lodestar method more appropriate where the settlement "did not create a true common fund as it did not establish a single sum for both class compensation and attorneys' fees," and part of the relief obtained was injunctive relief). Furthermore, the lodestar method "is appropriate in class actions brought under fee-shifting statutes," *In re Bluetooth*, 654 F.3d at 941, and Plaintiffs brought a claim pursuant to the IDEA, which is subject to fee-shifting under 20 U.S.C. § 1415(i)(3)(B). The IDEA provides that a court has discretion to award reasonable attorney's fees to a disabled child's parents when they are a "prevailing party" in a legal action against a local educational agency. 20 U.S.C. § 1415(i)(3)(B)(i); 34 C.F.R. 300.517(a)(1). To be entitled to attorneys' fees as a prevailing party under the IDEA, Plaintiffs must demonstrate than an order effectuated "a material alteration of the legal relationship of the parties." *V.S. v. Los Gatos-Saratoga Joint Union High Sch.*, 484 F.3d 1230, 1233 (9th Cir. 2007) (quoting *Shapiro v. Paradise Valley Unified School Dist.,* 374 F.3d 857, 864 (9th Cir. 2004)). As reflected in the Ninth Circuit opinion and the Settlement Agreement, there is a material alteration in the relationship of the parties: LEAs are precluded from enforcing Washington's age-out provisions to deny 21-year-old students special education services to which they are otherwise entitled, and Plaintiffs are entitled to compensatory education and reimbursements as set forth above. Accordingly, Plaintiffs are prevailing parties and entitled to their reasonable attorneys' fees and costs for this action. The Court thus considers their requested fees and costs up through their January 6, 2025 motion for attorney's fees and costs, Dkt. No. 96, and their subsequent request for fees incurred after that motion was submitted, Dkt. No. 125.

*(c) Work performed from November 2022 through January 6, 2025*

With respect to the reasonableness of the hours expended, class counsel from two law firms accrued 822.2 hours litigating this case between November 2022 and January 2025. Specifically, Susman Godfrey L.L.P. billed 298.5 hours from the inception of the case through August 2, 2024. Dkt. No. 97 at 5; Dkt. No. 97-1 at 2–7. In addition, Cedar Law spent 523.7 hours working on this matter. Dkt. No. 98 at 2; Dkt. No. 98-1 at 2–11. Although two law firms were involved, there does not appear to have been an unnecessary duplication of work. Lara Hruska, the managing partner at Cedar Law, states that her team "worked closely with Ian Crosby at Susman Godfrey to ensure that there was always coordination of work to avoid duplication of work whenever possible." Dkt. No. 98 at 4; *see also* Dkt. No. 96 at 12 ("Plaintiffs generally split the work with Mr. Crosby generally handling class certification issues, and Mr. Hagel and Ms. Hruska generally handling the merits portions—although inevitable overlap occurred, especially on edits and rewrites."). The Court has reviewed the billing entries submitted by class counsel, *see* Dkt. No. 97-1 at 2–7, and finds that the number of hours spent litigating this case for over two years, through investigation, drafting and filing the complaint, conducting discovery, drafting and filing the motion for a preliminary injunction, litigating the appeal, negotiating the settlement, and drafting the motions for preliminary and final approval of the class and Settlement Agreement is reasonable in this case.

When determining a reasonable hourly rate, courts generally consider the "experience, skill and reputation of the attorney requesting fees," *Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996) (quoting *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995)), as well as "the prevailing market rates in the relevant community[.]" *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The relevant community is the forum in which the district court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The party seeking an award of attorney's fees bears the burden of producing "satisfactory evidence—in addition to the attorney's own

affidavits—that the requested rates are in line with those prevailing in the community for similar services" by comparable lawyers. *Blum*, 465 U.S. at 895 n.11; *accord Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014). District judges can also "consider the fees awarded by other judges in the same locality in similar cases," *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008), and rely on their own knowledge and familiarity with the legal market in setting a reasonable rate, *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam).

Cedar Law's hourly rates are (1) $500 for Lara Hruska, the founder and managing partner of Cedar Law with over 11 years of experience, Dkt. No. 98 at 1, 3–4,[5] (2) $400 for Alex Hagel, who has five years of experience, *id.* at 4, and (3) $200 for Kaitlin Leifur-Masterson, who has worked in the legal field since 2012, worked as a paralegal for the majority of this case, and became a licensed attorney in September 2024, *id.* at 3–4. Ms. Hruska details in her declaration the significant experience in the field of education and education-related law possessed by all three individuals. *Id.* at 2–4. The Court finds these rates to be reasonable and in line with the prevailing rates in the community. *See, e.g.*, *S.H. v. Issaquah Sch. Dist.*, 2:21-cv-00137-DGE, 2023 WL 3011732, at *3 (W.D. Wash. Mar. 14, 2023) (accepting the statements of practitioners that "special education attorneys in the Seattle area generally charge somewhere between $250.00 and $450.00 per hour for their services"). Although Ms. Hruska's hourly rate is a bit higher than the typical range, and Mr. Hagel's rate is high relative to his experience level, the Court notes that their rates are justified by their prior experience in the education system. Dkt. No. 96 at 8; Dkt. No. 98 at 3 (noting that Ms. Hruska received an MSW in Child and Family Welfare Policy from Columbia University, an MSEd in Special and General Childhood Education from Bank Street College of

---

[5] Ms. Hruska's declaration states that she founded the firm in November 2014, but later states that she founded it in 2015. *Id.* The declaration states that she began practicing in 2013 and represented school districts before founding Cedar Law. *Id.* at 3–4.

1   Education, and a BA in Peace and Conflict Studies from U.C. Berkeley; she taught children from

2   pre-kindergarten through middle school in California, New York, and Louisiana, where she served

3   "as the founding special education director for two post-Katrina charter schools in New Orleans");

4   *see also id.* (noting Mr. Hagel's prior experience as a teacher, including teaching special education

5   classes). Based on the totality of the record, the Court's familiarity with the legal market, and the

6   fees awarded by other judges, the Court is satisfied that the hourly rates requested by Cedar Law

7   are reasonable. *See, e.g.*, *Byles v. Ace Parking Mgmt., Inc.*, No. C16-0834-JCC, 2019 WL 3936663,

8   at *1 (W.D. Wash. Aug. 20, 2019) (approving hourly rates between $300 per hour to $550 per

9   hour); *Wilbur v. City of Mount Vernon*, No. C11-1100-RSL, 2014 WL 11961980, at *3 (W.D.

10  Wash. Apr. 15, 2014) (finding rates between $190 and $580 to be reasonable in a civil rights class

11  action lawsuit); *see also Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009) (granting

12  paralegal and law student rates that were "in line with those rates prevailing in the community for

13  similar services by paralegals of reasonably comparable skill, experience and reputation" (citation

14  modified)).

15          As for Susman Godfrey, partner Ian Crosby has submitted a declaration stating that his

16  rates are $850 to $950, Dkt. No. 97 at 3, and the motion clarifies that his rate was $850 until it

17  increased to $950 "at the start of 2024," Dkt. No. 96 at 6. The billing records confirm that his rate

18  was $850 for work performed in 2022 and 2023, and $950 for work performed in 2024. Dkt. No.

19  97-1 at 2–5. Mr. Crosby has more than 25 years of experience, and he has notable expertise in the

20  field of class action litigation. Dkt. No. 97 at 1–3; *see also Trevino*, 99 F.3d at 924. Mr. Crosby

21  notes that courts in other jurisdictions have affirmed his firm's rates, Dkt. No. 97 at 4, but the

22  Court must consider the "prevailing market rates in the relevant community," *Blum*, 465 U.S. at

23  895. His assertion that "[his] law firm has a national litigation practice, and [they] set [their]

24  published rates accordingly," Dkt. No. 97 at 3, does not establish prevailing rates in this market.

As the Sixth Circuit has observed, "it's called the 'community market rule' for a reason: the relevant inquiry is what billing rates are required to encourage competent lawyers *within the relevant community* to undertake legal representation." *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020) (citation modified) (finding that the district court erred when it improved higher rates for class counsel based on a national practice). Indeed, lawyers in this Circuit must show that "local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case," to recover out-of-forum rates. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (quoting *Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir. 1992)). "And here class counsel would be hard pressed to make such a showing since they are very much in-town attorneys. Local lawyers litigating a case in a local courthouse should receive local billing rates." *Linneman*, 970 F.3d at 630. Plaintiffs do not cite any decisions from this district approving such high rates, and the evidence they provided establishes significantly lower rates in education-related cases. Dkt. No. 96 at 8. The Court thus cannot conclude that Mr. Crosby's rates are reasonable.

When a party requests an excessive rate, "the proper solution is for the district court to *reduce* it to the 'prevailing market rate,' not to deny the request entirely." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1122 (9th Cir. 2000). The Court can "consider the fees awarded by other judges in the same locality in similar cases," *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008), and rely on its own knowledge and familiarity with the legal market in setting a reasonable rate, *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam). Considering the fees awarded by other judges in this district in similar cases, and relying on the Court's knowledge and familiarity with the legal market, the Court finds that an hourly rate of $750 for Mr. Crosby is reasonable in this market. *See, e.g.*, *Nwauzor v. GEO Group, Inc.*, No. 3:17-cv-05769-RJB, 2021 WL 5907797, at *2 (W.D. Wash. Dec. 14, 2021) (approving rates including $625 and $550 for

class action attorneys with over 40 years and 30 years of experience, respectively; noting evidence that attorney rates for this district typically range from $275 to $650, depending on experience); *Garcia v. Harborstone Credit Union*, No. 3:21-cv-05148-LK, 2023 WL 7412842, at \*11 (W.D. Wash. Nov. 9, 2023) (approving in a class action the rate of $575 per hour for firm's founding member with 21 years of experience); *Brown v. Papa Murphy's Holdings Inc.*, No. C19-5514-BHS, 2022 WL 1303176, at \*3 (W.D. Wash. May 2, 2022) (adjusting managing partner's hourly rate to $600 in a class action); *see also* U.S. Bureau of Labor Statistics, Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm. Adjusting Mr. Crosby's rate to $750 to align with the prevailing rates in this district leads to a new lodestar for Susman Godfrey of $210,975 (reflecting 281.3 hours billed by Mr. Crosby multiplied by an hourly rate of $750).

With respect to billers Joanna Stanley and Zaakir Tameez, Mr. Crosby's declaration and attachment provide no information about their positions or experience. *See generally* Dkt. Nos. 97, 97-1. Nor does the motion provide that information, referring generally to the number of hours worked by "Ian Crosby and his team at Susman Godfrey" without identifying those team members by name or title. Dkt. No. 96 at 6. Although the motion details the reasonableness of Mr. Crosby's rates, it says nothing about the rates of the other team members. *Id.* at 9–10. Consequently, the Court cannot evaluate the "experience, skill and reputation" of Stanley and Tameez, *Trevino*, 99 F.3d at 924, and Plaintiffs have failed to meet their burden to show that their rates are reasonable, *Blum*, 465 U.S. at 895 n.11. The Court therefore excludes their hours billed:

| Biller | Hourly Rate | Number of Hours Billed | Total |
|---|---|---|---|
| Joanna Stanley | $400 | 6.0 | $2,400 |
| Zaakir Tameez | $125 | 11.2 | $1,400 |

For the reasons laid out above, the Court awards attorneys' fees of $409,545 ($198,570 for Cedar Law and $210,975 for Susman Godfrey) through January 6, 2025.

ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS - 33

1

                          *(d) Work performed from January 7, 2025 through June 2025*

2

        In their Motion for Attorneys' Fees, Plaintiffs' counsel forecasted that they would incur

3

"no more than an additional $10,000 in fees" for time spent responding to any concerns expressed

4

by class members and attending the final fairness hearing. Dkt. No. 96 at 7. After the final fairness

5

hearing, Plaintiffs' counsel submitted a declaration and their supplemental billing records. Dkt.

6

Nos. 125, 125-1. Since January 2025, Mr. Hagel has billed an additional 18.3 hours and Ms.

7

Hruska has billed an additional .1 hour at the same hourly rates described above ($500 for Ms.

8

Hruska and $400 for Mr. Hagel). Dkt. No. 125-1 at 2–3. The Court has reviewed these

9

supplemental billing entries and finds that the number of hours spent litigating this case for the

10

past several months, including drafting a response to the objection, drafting a joint status report,

11

and preparing for and attending the final fairness hearing, is reasonable in this case. Accordingly,

12

the Court awards attorneys' fees of $7,370 for Cedar Law for work performed from January 7,

13

2025 through June 2025.

14

        2.  <u>Costs</u>

15

        Class counsel are permitted to recover reasonable expenses that "would normally be

16

charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quoting

17

*Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986), *reh'g denied and opinion*

18

*amended*, 808 F.2d 1373 (9th Cir. 1987)). Cedar Law has requested reimbursement of the $450 it

19

spent "accessing court records for research purposes." Dkt. No. 96 at 6; *see also* Dkt. No. 98-1 at

20

11. Susman Godfrey requests reimbursement of $639.27 in costs for research fees through PACER

21

and Westlaw, Dkt. No. 97-1 at 6, and an additional $3,752.40 for depositions, trial transcripts, and

22

filing fees, *id.* at 7. Because these costs were reasonable and necessary, and the types of costs

23

normally charged to a paying client, the Court approves them.

24

ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS - 34

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Attorneys' Fees, Dkt. No. 96, GRANTS Plaintiffs' Motion for Final Approval of Class Action Settlement and Issue of Judgment Against the Defendant, Dkt. No. 99, and ORDERS as follows:

1.     The Court finds that the Settlement Agreement is fair, reasonable, and adequate. The Court GRANTS final approval of the Settlement Agreement under Federal Rule of Civil Procedure 23.

2.     The Court finds that the Settlement Agreement is fair and reasonable in light of the Plaintiffs' claims. The Court GRANTS final approval of the Settlement Agreement under Federal Rule of Civil Procedure 17(c) and Local Civil Rule 17(c).

3.     The Court approves the (1) reimbursement to the guardians of E.A. for up to $60,000 in documented expenses incurred to provide him with private educational and related support services since he was exited from the Selah School District, and (2) reimbursement or direct payment to the guardians of N.D. for up to $150,000 in documents expenses for educational services.

4.     The Court GRANTS IN PART Plaintiffs' motion for attorney's fees and costs and awards attorney's fees in the amount of $416,915 and costs in the amount of $4,841.67.

5.   The Court will enter judgment consistent with this Order.

Dated this 23rd day of June, 2025.

Lauren King
United States District Judge