# Exhibit A

WASHINGTON STATE
OFFICE OF ADMINISTRATIVE HEARINGS

| In the matter of: | |
|---|---|
| Bellevue School District | Docket Nos. 06-2025-OSPI-02584<br>06-2025-OSPI-02594<br>07-2025-OSPI-02623<br><br>**ORDER ON SUMMARY JUDGMENT**<br><br>Agency: Office of Superintendent of Public Instruction<br>Program: Special Education<br>Cause Nos. 2025-SE-0091<br>2025-SE-0095<br>2025-SE-0112 |

On September 5, 2025, the Bellevue School District (District) filed a Motion for Summary Judgment. On November 17, 2025, the Parents of the Adult Student[1] (Adult Student) filed a Response to Motion for Summary Judgment & Supplemental Brief. Based upon the statements of the parties, the pleadings and documents on file, and rulings made by the Administrative Law Judge (ALJ), IT IS ORDERED:

## ISSUES

1. On June 9, 2025, the Parents filed the first due process hearing request (06-2025-OSPI-02584) and on June 16, 2025, filed the second due process hearing request (06-2025-OSPI-02594). The District filed a response to each of the two due process hearing requests on July 3, 2025. The same day, the District also filed a due process hearing request (07-2025-OSPI-02623) because the Parents requested an Independent Educational Evaluation (IEE) at public expense on June 23, 2025, and the District denied the Parents' request for an IEE.

2. On July 14, 2025, at the first prehearing conference, the matters were consolidated. (First Prehearing Order, pp.1-3.)

3. In the First Prehearing Order, the tribunal established the following three threshold issues based on the parties' pleadings:

> *a. Whether the District's obligation to provide the Student with a free, appropriate public education (FAPE) and / or special education services*

[1] To ensure confidentiality, names of parents and students are not used.



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

*ended in June 2023, with the issuance of a regular high school diploma to the Student (WAC 392-0172A-05010);*

*b. Whether the District's obligation to provide the Student with a FAPE and / or special education services ended because the Student reached the age of twenty-two (22) and the 2023-2024 school year ended in June 2024;*

*c. Whether the Parents' claims are barred by the statute of limitations as per WAC 392-172A-05080, because the Parents failed to file a request for a due process hearing within two (2) years of when they knew or should have known about the events that formed the basis of their claims;*

(First Prehearing Order, p.3.)

4. Also, the District's due process hearing request identifies the following issue for resolution: Whether the Parents are "not entitled to an IEE at public expense as a matter of law, and / or because the District's most recent reevaluation of Student was appropriate at the time it was completed on January 31, 2022." (Due Process Hearing Request, July 3, 2025, pp.1-2.)

## PLEADINGS CONSIDERED

5. The three requests for a due process hearing (06-2025-OSPI-02584, 06-2025-OSPI-02594, and 07-2025-0PSI-02623), the District's responses. and the following pleadings were considered when ruling on the District's Motion for Summary Judgment:

**a. Filed by the District:**

-District's Motion for Summary Judgment and Declaration of Sally Sue McDonald, and Supporting Exhibits, filed September 5, 2025

-District's Supplemental Grounds for Summary Judgment, October 13, 2025

**b. Filed by the Parents:**

-Parents' Consolidated Response and Supporting Exhibits, filed August 1, 2025

-Parents' Motion to Invalidate High School Diploma Due to Failure to Meet Washington Graduation Requirements, filed August 1, 2025

-Parents' Motion to Invalidate IEPs and High School Diploma Issued After May 3, 2020, filed August 1, 2025

-Parents' Request for Judicial Notice, filed August 4, 2025



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

-Parents' Motion for Partial Summary Judgment and Exhibits, October 14, 2025
-Parents' Response to Motion for Summary Judgment & Supplemental Brief
-Parents' Document: Adult Student Evaluation, November 17, 2025
-Parents' Document: SCOTUS IDEA Ruling , November 17, 2025
-Parents' Document: Affidavit November 17, 2025
-Parents' Email with Attachments, November 18, 2025

6. The following pleadings were not considered when ruling on the District's Motion for Summary Judgment because the Parents filed the documents after the District moved for summary judgment on November 17, 2025:

-Parents' Cross Motion for Summary Judgment, November 17, 2025
-Parents' Amended Complaint, November 17, 2025

## FINDINGS OF FACT

1. The Adult Student's date of birth is May 3, 2002. (Declaration of Sally Sue McDonald, Exhibit A; Parents' Due Process Hearing Requests, June 9, 2025 & June 16, 2025.) The Adult Student enrolled at the District in kindergarten and remained continuously enrolled through June 19, 2023. (Dec. McDonald, Ex. A.)

2. A meeting was held on January 31, 2022, to complete the Adult Student's last triennial reevaluation (Reevaluation). (Dec. McDonald, ¶ 2, Ex. A.) The Parents attended this meeting and the District provided the Parents with a copy of the final Reevaluation report. (Dec. McDonald, Ex A.) The District subsequently sent a second copy of the Reevaluation Report on February 4, 2022. (Dec. McDonald, Ex. B.)

3. Both the January 31, 2022, and the February 4, 2022, Reevaluation Reports contained the following: "Notice of Procedural Safeguards for Special Education Students and Their Families has been provided to parents." (Dec. McDonald, Ex. A, pp.3, 27-28 and Ex. B, pp.2, 28-29.)

4. The Adult Student's Reevaluation team, including the Parents, concluded that the Adult Student remained eligible for special education services in the category of "Other Health Impairment (22q Deletion Syndrome and Schizophrenia Paranoid)." (Dec. McDonald, Ex. A & Ex. B.) Specifically, the Reevaluation Team recommended specially designed instruction (SDI) in the areas of social-emotional, behavior, adaptive, academic skills, and related services for communication. (*Id.*) The



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

Reevaluation Team also recommended that the Adult Student receive 1:1 paraeducator support and other related services. (*Id*.)

5. The Adult Student's Individualized Education Program (IEP) team, including the Parents, convened on February 9, 2022, and discussed the Adult Student's annual IEP, including updated goals and a Secondary Transition Plan. (Dec. McDonald, Ex. C. and Ex. D.) The Parents and the Adult Student attended the IEP meeting. (*Id.*) The IEP was finalized on February 17, 2022, and implemented on February 24, 2022. (Dec. McDonald, ¶5, Ex. C and Ex. D.) The IEP placed the Adult Student in the Evergreen Transition Program "until the year that he turns age 21. [The Adult Student] is projected to graduate in June of 2023, or earlier if deemed appropriate by the IEP Team." (Dec. McDonald; Ex. D, p.5.) The Adult Student was placed in the general education setting 75.41% of the time. (*Id*.)

6. As of February 9, 2022, the Student "has passed all required state and district assessments for graduation. [The Student] completed and passed Math, Reading, and Writing WA-AIM testing while attending Bellevue High School. There are no additional state or district assessments in the [Evergreen] Transition Program." (Dec. McDonald; Ex. D, p.7.)

7. The Evergreen Transition Program is a community-based program where "the community serves as the general education setting where [the Adult Student] participates in instruction ad activities with typically functioning peers." (Dec. McDonald, Ex. D, p.9.) Specifically, the Adult Student's program required him to work at community jobsites with peers, learn to interview for jobs, use public transportation, manage body-related etiquette, follow directions, read silently, sustain attention, calculate change and count money, complete a shopping list, comprehend reading tasks, fill out forms, and make inferences from interpersonal communication. (Dec. McDonald, Ex. D, pp. 9-22.)

8. The Adult Student's February 9, 2022, IEP Secondary Transition Plan anticipated that he would transition to a skills based education program at a community college, obtain a technology related job with the assistance of a job coach, and independently access and use public transportation. (Dec. McDonald, Ex. D, pp.22-24.) The Secondary Transition Plan in the February 9, 2022, IEP reiterated that the Adult Student had "passed all required state and district assessments for graduation," and "also completed an alternate graduation pathway while attending high school." (Dec. McDonald, Ex. D p.23.)

9. The February 9, 2022, IEP included a statement that the "Notice of Procedural Safeguards for Special Education and Their Families has been provided to parents." (Dec., McDonald, Ex. D, p.2.)

10. A year later, on February 8, 2023, the Adult Student's IEP team met to create the Adult Student's last annual IEP. (Dec. McDonald, Ex. H.) The IEP team reported that the Adult Student had made progress on all goals, but the Adult Student did not master the goals from the February 9, 2022, IEP. (*Id.*) The IEP team updated all the goals in each area, and the Parents attended the February 8, 2023, IEP meeting as members of the IEP team. (*Id.*)

11. The February 8, 2023, IEP contained the statement "Notice of Special Education Procedural Safeguards for Students and Their Families has been provided to parents." (Dec. McDonald, Ex. H, pp.2, 28.)

12. The February 8, 2023, IEP placed the Adult Student in the same Evergreen Transition Program and he attended the general education environment for 86.07% of the time while receiving the same kinds of related services and SDI as in the February 9, 2022, IEP. (Dec. McDonald, Ex. H, p.23.)

13. The Adult Student's Secondary Transition Plan was updated and reflected that the Adult Student would obtain "on-the-job training in the auto industry," "obtain supported employment in the auto industry," and "independently keep track of his own schedule." (Dec. McDonald, Ex. H, p.14.) The IEP memorialized that the Adult Student needed to complete a "High School and Beyond Plan," but the Adult Student had completed this requirement on January 27, 2023. (Dec. McDonald, Ex. H, pp.14-15 and Ex. N.)

14. The Adult Student's IEP was designed to ensure that the Adult Student would attend the Evergreen Transition Program until June 2023:

> *in order to provide sufficient time to meet graduation requirements, master new skills in order to make progress toward his post-secondary goals, and connect with adult support agencies (though he may graduate before [June] 2023 if he meets requirements early and/or the IEP team agrees that an early graduation is appropriate).*

(Dec. McDonald, Ex. H, p.14.)

15. At the time the February 8, 2023, IEP was finalized, the Adult Student required only 1 credit in a science class to graduate with a regular high school diploma. (Dec. McDonald, Ex. H, p.15.) The Adult Student was enrolled at APEX Learning (a virtual



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

learning provider contracted with the District) in an Environmental Science course to meet the final science credit.[2] (*Id.*)

16. The Adult Student also needed to earn 2 credits in "World Language or Personal Pathways Requirement alternative (PPR)" and half a credit in social skills to graduate with a regular high school diploma. (*Id.*) The February 8, 2023, IEP required the Adult Student to select either World Language or a PPR and to work with his counselor to meet the regular high school graduation requirements. (*Id.*) PPR courses are social skills courses open to all students as an alternative to World Language, and are designed to "prepare students for a particular career and education goal chosen by the student and specified in their High School and Beyond Plan." (Dec. McDonald, Ex. K, p.1.)

17. The District maintains Board Policy 2410 "High School Graduation Requirements." (Dec. McDonald, Ex. K, p.1.) Students that graduate from the District must earn a total of 3 science credits and 2 Worlds Language or PPR credits. (*Id.*) Students are also required to complete a "High School and Beyond Plan." (*Id.*)

18. The Adult Student completed Environmental Science Semester 1 with APEX Learning on April 27, 2023. (Dec. McDonald, Ex. L and Ex. K.) The Adult Student earned a B grade and one credit. (*Id.*) On June 8, 2023, the Adult Student completed Environmental Science Semester 2 with Apex Learning. (*Id.*) The Adult Student earned a B grade and earned an additional science credit. (*Id.*)

19. On June 8, 2023, the Adult Student completed the 2.5 credit PPR and social skills requirement by working at a Volvo dealership. (Dec. McDonald, Ex. M.)

20. The Adult Student turned twenty-one years old on May 3, 2023. (Dec. McDonald; Ex. O.) The Adult Student completed all graduation requirements for a regular high school diploma on June 8, 2023, earning a 3.045 GPA. (Dec. McDonald, Ex. O.)

21. On June 15, 2023, the Adult Student's IEP team, including the Parents, met and proposed to end the Adult Student's eligibility for special education services. (Dec. McDonald, Ex. P.) The same day the District issued a prior written notice (PWN)

---

[2] On November 16, 2022, the Adult Student's special education teacher Autumn Cutter emailed the Parents about enrolling the Adult Student in APEX Learning on-line classes "during the school day." (Dec. McDonald, Ex. J, p.16.) The science course selected allowed the Adult Student to participate in a self-paced on-line science class while fully participating in the Evergreen Transition Program's job site practice and receiving SDI required by his IEP. (*Id.*) The Parents agreed to enrolling the Adult Student in the on-line APEX Learning Environmental Science class. (*Id.*)



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

proposing to discontinue the Adult Student's special education services because the Student has "aged out of K-12 services on June 16, 2023." (Dec. McDonald, Ex. P.) The PWN contains the following statement: "Notice of Special Education Procedural Safeguards for Students and Their Families has been provided to parents/guardians." (*Id*.)

22. The Adult Student received a regular high school diploma on June 16, 2023. (Dec. McDonald, ¶16, Ex. P.) The Adult Student's enrollment at the District ended on June 19, 2023, at the end of the 2022-2023 academic year. (*Id*.)

23. The Adult Student turned twenty-two years old on May 3, 2024.

24. The Parents filed the first due process hearing request (06-2025-OSPI-02584) on June 9, 2025. The Parents filed the second due process hearing request (06-2025-OSPI-02594) on June 16, 2025.

25. The District filed the third due process hearing request (07-2025-OSPI-02623) on July 3, 2025, in response to a written request from the Parents for an Independent Educational Evaluation (IEE). The Parents made the written IEE request on June 23, 2025. (Dec. McDonald, Ex. R.)

## CONCLUSIONS OF LAW

1. The Office of Administrative Hearings (OAH) has jurisdiction over the parties and subject matter of this action for the Office of the Superintendent of Public Instruction as authorized by 20 USC § 1401 et. seq. (Individuals with Disabilities Education Act (IDEA)), Chapter 28A.144 Revised Code of Washington (RCW), Chapter 34.05 RCW, Chapter 34.12 RCW, and the regulations promulgated thereunder, including 34 Code of Federal Regulations (CFR) § 300 et. seq., Chapter 392-101 Washington Administrative Code (WAC), and Chapter 392-172A WAC.

### Summary Judgment Standard

2. Summary judgment is appropriate if the written record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. WAC 10-08-135. For purposes of summary judgment, a material fact is one on which the outcome of the litigation depends. *Int'l Ass'n of Firefighters, Local 1789* v. *Spokane Airports*, 146 Wn.2d 207, 223, 45 P.3d 186 (2002). The tribunal must consider all evidence and all reasonable inferences that can be drawn from that evidence in a light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate "only if, from all the evidence, reasonable persons could reach but one



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

conclusion." *Nationwide Mutual Fire Insurance Co.* v. *Watson*, 120 Wn.2d 178, 186, 840 P.2d 851 (1992).

3. The party moving for summary judgment bears the burden of showing that there is no genuine issue as to any material fact. *Vallandingham* v*. Clover Park Sch. Dist*., 154 Wn.2d 16, 26, 109 P.3d 805 (2005). If the moving party satisfies its burden of producing evidence establishing it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party, which "must present evidence that demonstrates that material facts are in dispute. . . . If the nonmoving party fails to do so, then summary judgment is proper." *Id.*

### The Parents' Testimony and Documentary Evidence

4. The Administrative Procedures Act (APA) provides that the State of Washington Civil Rules for Superior Court and Rules of Evidence do not apply to administrative proceedings, but may be used as "guidelines for evidentiary rulings." RCW 34. 05.452; WAC 10-08-135; WAC 10-08-140. RCW 34.05.437 and WAC 10-08-135 allow motions for summary judgment.

5. Civil Rules 56(a) and (b) allow parties to file a dispositive motion "with or without supporting affidavits." However, Civil Rule 56(e) provides "an adverse party may not rest upon the mere allegations or denials of a pleading, but a response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

6. Importantly, under the APA, "evidence, including hearsay evidence, is admissible if in the judgment of the presiding officer it is the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their affairs." RCW 34.05.452. Further, orders entered by an ALJ:

> *shall include a statement of findings and conclusions, and the reasons and basis therefore, on all the material issues of fact, law or discretion presented . . . Findings shall be based exclusively on the evidence of record in the adjudicative proceeding and on matters officially noticed in that proceeding. Findings shall be based on the kind of evidence on which reasonably prudent persons are accustomed to relying on in the conduct of their affairs. Findings may be based on such evidence even if it would be inadmissible in a civil trial. However, the presiding officer shall not base a finding exclusively on such inadmissible evidence unless the presiding officer determines that doing so would not unduly*



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

> *abridge the parties opportunities to confront witnesses and rebut evidence.*

RCW 34.05.461. It is within the ALJ's discretion to admit or exclude documentary evidence if the authenticity has not been established. WAC 10-08-140(2)(c).

7. Civil Rule 56(d) provides that if it is practicable to "ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted" the tribunal may "make an order specifying the facts that appear without substantial controversy, . . . and directing such further proceedings in the action as are just. Upon the trial of the action, the facts so specified shall be deemed established and the trial shall be conducted accordingly."

8. Authentication is a threshold requirement designed to assure that evidence is what it purports to be. *State v. Payne*, 117 Wn. App. 99, 105 (2003). Washington Evidence Rule 901 provides examples of ways documents may be authenticated

9. The District, as the moving party, submitted documentary evidence that has been authenticated by Sally Sue McDonald in a signed declaration. While the documentary evidence is hearsay, the evidence is relevant, authenticated, and admissible for purposes of summary judgment because of Ms. McDonal's Declaration.

10. The Parents submitted their testimony in the November 17, 2025, notarized Affidavit. In the Parents' Affidavit, the Parents testified as to their review of documentation from APEX Learning and their personal knowledge of the Adult Student's educational activities, including the January 31, 2022, Reevaluation, the February 9, 2022, IEP, and the February 8, 2023, IEP. The Parents also offered testimony that they were aware of the Adult Student's participation in the Evergreen Transition Program and APEX Learning Environmental Science class, and that the Adult Student received a regular high school diploma. The Parents' testimony in the November 17, 2025, Affidavit will be considered admissible evidence for purposes of summary judgment.

11. The Parents filed ten pleadings with a significant number of documents attached, but the pleadings and documents are not specifically accompanied by the Parents' November 17, 2025, Affidavit. But some of the Parents' statements in the November 17, 2025, Affidavit authenticate the documentary evidence and pleadings submitted throughout the proceedings. The APA makes it clear that only relevant, authenticated evidence that is submitted under oath or affirmation shall be considered. RCW 34.05.425 and WAC 10-08-0160. If the Parents' November 17, 2025, Affidavit tends to authenticate a document that was otherwise filed by the



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

Parents in the proceedings, it will be considered admissible evidence for purposes of summary judgment. However, if the document does not relate to a statement in the Parents' November 17, 2025, Affidavit, it will not be considered admissible evidence for purposes of summary judgment.

**The District is Not the Appropriate Defendant for the Parents' Claims Relating to the 2023-2024 Academic Year**

12. Issue (b) in the First Prehearing Order was originally phrased to reflect the Parents' claim that the Adult Student remained eligible for special education services between the age of twenty-one (21) and twenty-two (22) during the 2023-2024 academic year, and the District's defense is that the Adult Student was not eligible for special education services after June 19, 2023, when the academic year ended. Issue (b) is the primary issue presented by the Parents' June 9, 2025, and June 16, 2025, due process hearing requests. Issue (b) is also the focus of the District's Motion for Summary Judgment and Supplemental Grounds for Summary Judgment.

13. A review of the parties pleadings, the case of *N.D. v. Reykdal*, 2024 U.S. Dist. LEXIS 211397 (W.D. Wash., Nov. 20, 2024), and subsequent OAH and U.S. District Court decisions, however, results in the need to further refine Issue (b). It appears that Issue (b) should be rephrased as: whether the District or OSPI is liable for the Adult Student's special education services that were not provided during the 2023-2024 academic year when the Adult Student was between the ages of twenty-one (21) and twenty-two (22).

<u>N.D. v. Reykdal and Washington State Law</u>

14. States eligible for federal funding under the IDEA must ensure that a "free appropriate public education [FAPE] is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive . . ." 20 USC § 1412(a)(1)(A). However, there is an exception to this requirement because states are not required to make FAPE available to disabled students until their 22nd birthday if doing so would be "inconsistent with State law or practice . . . respecting the provision of public education to children in those age ranges . . ." 20 USC § 1412(a)(1)(B)(i).

15. Until November 20, 2024, Washington state law and Office of Superintendent of Public Instruction (OSPI) policy and regulations provided that disabled students were no longer eligible for special education services once they reached the end of the school year in which they turned twenty-one (21) years of age. RCW 28A.155.020 and WAC 392-172A-02000(2)(c). However, in 2024 the "cutoff" age for special education services in Washington state became the subject of litigation against OSPI and the



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

Superintendent of Public Instruction Chris Reykdal (Superintendent), because OSPI is the agency responsible for overseeing public K-12 education in Washington. *N.D. v. Reykdal*, 102 F.4th 982, 988 (9th Cir. 2024).

16. The plaintiff students in *N.D. v. Reykdal* argued that an exception in the IDEA (20 U.S.C. § 1412(a)(1)(B)(i)) extended eligibility for special education services until the end of the school year in which the students turned twenty-two (22) years of age. (*Id*.) After consideration of a preliminary injunction by the U.S. District Court of the Western District of Washington, the plaintiffs in *N.D. v. Reykdal* ultimately received a favorable ruling from the Ninth Circuit Court of Appeals that they were likely to prevail on the merits of their claim. (*Id*.)

17. On July 10, 2024, the U.S. District Court of the Western District of Washington certified a provisional plaintiff class and enjoined "OSPI from enforcing the age-out provisions" in RCW 28A.155.020 and WAC 392-172A.02000(2)(c), thereby extending eligibility for special education services to the age of twenty-two (22) years. *N.D. v. Reykdal*, 2024 U.S. Dist. LEXIS 121374, *19 (W.D. Wash., July 10, 2024). The District Court also issued a declaratory judgment that OSPI's refusal to ensure the provision of special education services to the provisional plaintiff class on account of their age violated the IDEA. *Id.* at *18. The U.S. District Court also concluded that RCW 28A.155.020 and WAC 392-172A-02000(2)(c) are invalid to the extent they do not ensure eligible students receive special education services until they turn twenty-two (22) years of age.

18. OSPI and the provisional plaintiff class entered into a settlement agreement, and on November 20, 2024, the U.S. District Court approved the settlement agreement. *N.D. v. Reykdal*, 2024 U.S. Dist. LEXIS 211397 (W.D. Wash., Nov. 20, 2024). The court also issued the following declaratory judgment:

> *[T]he state's policy of aging students out of special education at the end of the school year in which they turn 21 pursuant to [RCW 28A.155.020 and WAC 392.172A.02000(2)(c)] presently violates the IDEA, has violated the IDEA at all times during the two years preceding the filing of this lawsuit, and will continue to violate the IDEA absent a substantial change in the state's policies for charging and waiving tuition for its adult secondary education programs.*

*Id.* at *32-33.



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

19. The U.S. District Court also discussed the proposed relief to class members and determined it was adequate. *Id*. at *25. The U.S. District Court discussed that the settlement agreement provides benefits to class members:

> *including requiring LEAs [local education agencies] to reconvene IEP teams for all students in the class who wish to receive an award of compensatory education; awards compensatory education according to the recommendations of their IEP teams; and allows student to receive monetary compensation in lieu of compensatory education if the student, the IEP team, and the LEA agree. . . . Plaintiffs argue, and Defendants do not dispute, that using individual IEP teams to determine compensatory education for class members provides an effective means of determining individual compensatory education awards and alleviates the need for the parties to potentially litigate those issues for all class members. . . . Plaintiffs note that the IEP teams are better positioned to provide individualized review of each class member[']s[] needs by a team familiar with both the student and the resources available to the specific LEA. . . . Class members also retain the right to challenge a decision regarding proposed compensatory education, thereby providing procedural safeguards. . . .*

*Id.* at *24-25 (internal quotation marks and citations omitted.)

<u>Application of *N.D. v. Reykdal*</u>

20. In the case of *In the Matter of the Seattle School District*, OAH Docket No. 09-2024-OSPI-02347 (January 13, 2025) (Cause No. 2024-SE-0124), a student born on August 5, 2002, was enrolled at the Seattle School District through the end of the 2022-2023 academic year. (*Seattle School District*, pp.2-3.)[3] On August 5, 2023, the student turned twenty-one years of age. (*Id*.)

21. The parents filed a due process hearing request after the November 20, 2024, *N.D. v. Reykdal* declaratory judgment, alleging that the Seattle School District failed "to fulfill its underlying FAPE obligation to the Adult Student between [August 5, 2023] and her twenty-second (22nd) birthday [August 5, 2024]." (*Id*. at pp.3-4.) Essentially, the parents claimed that the student was entitled to enroll at the Seattle School District and

[3] The student attended until June 2024 when the academic year ended, and remained enrolled during the 2023-2024 academic year so that the Seattle School District could provide the student with compensatory education services owed as per a separate settlement agreement. (*Id*.) The student's enrollment ultimately ended on June 22, 2024. (*Id*.)



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

remained eligible for special education services during the 2023-2024 academic year because the student was twenty-one (21) years old, not twenty-two (22) years old, and the student had not received a regular high school diploma. (*Id*.) The Seattle School District, however, argued that it was not required to provide the student with special education services during the 2023-2024 academic year because before the *N.D. v. Reykdal* decision the IDEA, RCW 28A.155.020 and WAC 392-172A-02000(2)(c) was interpreted to mean that students were exited from special education services on the last day of the academic year that they turned twenty-one (21) years of age. (*Id*. at 4-7.)

22. The Administrative Law Judge in the *Seattle School District* case concluded that there is not "any authority to establish that decisions invalidating RCW 28A.155.020 and WAC 392-172A-02000(2)(c) must be applied retroactively to school districts." (*Id*. at 4-9.) This is because the *N.D. v. Reykdal* class action matter involved adult students and OSPI as parties, not any individual school districts. (*Id*.) Essentially, the *Seattle School District* case identifies that it was OSPI's "policy of aging students out of special education at the end of the school year in which they turn 21," and that the *N.D. v. Reykdal* court did not determine that individual school districts violated the IDEA by complying with OSPI's policy during the 2023-2024 academic year. (*Id*.)

23. The parents argued in the *Seattle School District* case that regardless of OSPI's policies and regulations, Washington school districts were obligated to individually interpret RCW 28A.155.020 and WAC 392-172A-02000(2)(c), and make independent decisions about whether students could enroll and receive special education services between the ages of twenty-one (21) and twenty-two (22) years of age. (*Id*.) However, this argument was rejected because individual school districts are not authorized to "unilaterally determine" which of OSPI's policies and regulations they will and will not follow. (*Id*.) Ultimately, the parents' due process hearing request was dismissed:

> *In conclusion, the District has established that RCW 28A.155.020 and WAC 392-172A-02000(2)(c) were in effect when the District exited the Student from special education services [in August 2023], and did not require the District to provide the Student with FAPE until her twenty-second birthday. Although . . . N.D. subsequently invalidated those provisions, there is no authority for applying those decisions retroactively. Additionally, the District was not required to determine that it would refuse to comply with state statutes and regulations and policy based on its own interpretation of case law . . . Therefore, the District has established that it is entitled to judgment as a matter of law.*

(*Id.* at 9.)



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

24. The parents appealed the decision in *Seattle School District* OAH Docket No. 09-2024-OSPI-02347, but the decision was affirmed by the U.S. District Court of the Western District of Washington in *S.P. v. Seattle Public Schools*, 2:2-cv-00286-BJR (September 22, 2025.) The U.S. District Court agreed that "under the plain language of the IDEA, the Act did not impose on the [Seattel School District] an independent obligation, separate from OSPI, to interpret and apply Washington law in a manner consistent with the IDEA." (*S.P. v. Seattle Public Schools*, p.6.) Importantly, the U.S. District Court ultimately held that:

> *given that this case arises from a state policy, and in light of the respective duties of the state and local educational agencies under the IDEA, the [Seattle School District] is not a proper defendant to this action.*
>
> *The Court recognizes that the ALJ provided other grounds for her decision granting summary judgment in favor of the [Seattle School District]. The Court finds it unnecessary to address those additional grounds and affirms the ALJ solely on the basis that the District is not a proper defendant to this action because the District was not responsible for independently determining whether it was required to comply with state law and regulations.*

(*Id*. at p.8.)

<u>Analysis</u>

25. The Parents in this case, like the parents in the *S.P. v. Seattle Public Schools* case, assert that the District denied the Adult Student a FAPE because the District did not allow the twenty-one (21) year old Adult Student to enroll and receive special education services during the 2023-2024 academic year.

26. The District, however, asserts in its Supplemental Grounds for Summary Judgment that it is not the appropriate defendant to the Parents' claims because the District followed OSPI's policies and guidance when the District exited the Adult Student from special education services on June 19, 2023. The District seeks dismissal of the Parents' due process hearing requests as per *S.P. v. Seattle Public Schools*.

27. The material facts necessary to decide Issue (b) as it has been rephrased, are undisputed. It is undisputed that the Adult Student turned twenty-one (21) years of age on May 3, 2023, and his enrollment at the District ended on June 19, 2023, at the end of the academic year. It is also undisputed that the Adult Student did not enroll and receive special education services at the District for the 2023-2024 academic year.



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

Lastly, the fact that the Student turned twenty-two (22) years of age on May 3, 2024, is undisputed.

28. Under the rationale of *S.P. v. Seattle Public Schools*, these undisputed facts alone entitle the District to judgment as a matter of law because Adult Student is identically situated to the student in *S.P. v. Seattle Public Schools.* Both the Adult Student here and the student in *S.P. v. Seattle Public Schools* were exited from special education services at the end of the academic year in June 2023 and turned twenty-one (21) prior to the beginning of the 2023-2024 academic year. OSPI's policies and regulations interpreting RCW 28A.155.020 and WAC 392-172A-02000(2)(c) in effect at the time directed that the Adult Student and the student in *S.P. v. Seattle Public Schools* were not eligible to receive special education services for the 2023-2024 academic year.

29. The District is also identically situated to the Seattle School District in *S.P. v. Seattle Public Schools*, because both school districts were following the directives and regulations of OSPI in regards to the eligibility of students for special education under RCW 28A.155.020 and WAC 392-172A-02000(2)(c) prior to the November 20, 2024, *N.D. v. Reykdal* decision.

30. The District Court in *S.P. v. Seattle Public Schools* was clear that school districts do not bear the liability from the *N.D. v. Reykdal* decision. Instead, it is OSPI that bears the liability.

31. The District has carried its burden and has shown that there is no genuine issue of material fact and that the District is entitled to summary judgment as a matter of law on the issue of whether the District is liable for not providing the Adult Student with special education services after June 19, 2023, based on *N.D. v. Reykdal* and *S.P. v. Seattle Public Schools*. The District's motion for summary must be granted and the Parents' due process requests dated June 9, 2025, and June 16, 2025, must be dismissed as to any claims that the Adult Student did not receive special education services after June 19, 2023.

**Alternatively, the Adult Student Became Ineligible for Special Education Services after June 16, 2023, Because He Received an Appropriately Awarded Regular High School Diploma.**

32. As found and concluded above, regardless of whether the District appropriately awarded the Adult Student a regular diploma or not, the District is not liable for ending the Adult Student's eligibility for special education services on June 19, 2023.



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

33. However, Issue (a) represents the Parents' claim that the District improperly issued the Adult Student a regular high school diploma on June 16, 2023, and thereby ended the Adult Student's eligibility for special education services in perpetuity. More specifically, the Parents assert that the District's improper issuance of a regular diploma to the Adult Student prevents the Parents from obtaining relief from either OSPI or the District, regardless of the *N.D. v Reykdal* decision.

34. The District seeks entry of summary judgment in its favor as to Issue (a) because it asserts that there is not a genuine issue of material fact that the Adult Student met the requirements for a regular diploma on June 8, 2023, and received the diploma on June 16, 2023.

35. A student who is eligible for special education remains eligible until "the student has met high school graduation requirements established by the school district pursuant to rules of the state board of education, **and** the student has graduated from high school with a regular high school diploma." WAC 392-172A-02000(2)(b) (Emphasis added.). "Graduation from high school with a regular high school diploma constitutes a change in placement, requiring prior written notice in accordance with WAC 392-172A-05010." (*Id.*)

36. The procedures for granting high school graduation credits for students with special needs is set forth in WAC 180-15-115:

> *A student with an individualized education program must be provided needed accommodations to progress in the general curriculum toward meeting state and local graduation requirements. In limited circumstances, when determined necessary by the individualized education program team due to the unique needs resulting from the student's disability, a graduation credit and subject area requirement may be substituted with comparable content course work, as identified in the individualized education program team course of study and aligned to the student's high school and beyond plan.*

37. Substantive standards for high school graduation are set by state law and school district policies, not by the IDEA. *Letter to Anonymous,* 22 IDELR 456 (OSEP 1994). Diploma requirements may be waived for students with disabilities if the modification is made on an individual basis in the student's IEP. *Camas School Dist.*, 106 LRP 2398 (SEA WA 2003); *see also Letter to Runkel*, 25 IDELR 387 (OCR 1997).

38. The District argues it is entitled to summary judgment because the Adult Student "met" regular graduation requirements on June 8, 2023, when he completed



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

the required science, PPR, and social skills credits, and therefore the Parents' claim is barred by the two year statute of limitations in WAC 392-172A-05080. Essentially, the District argues that the Parents' June 9, 2025, due process hearing request was filed one day too late, and the June 16, 2023, due process hearing request was filed eight days too late.

39. However, WAC 392-172A-02000(2)(a) specifically states a student is eligible for special education services until the "student graduates with a regular high school diploma" and the IEP team issues a PWN. Here, the determinative events happened on June 15, 2023, when the IEP team issued the PWN and on June 16, 2023, when the Adult Student's diploma was issued. The District's argument that the determinative events happened on June 8, 2023, is rejected. The Parents' June 9, 2025, and June 16, 2025, due process hearing requests asserting Issue (a) are timely filed within two years of when the Adult Student's diploma was issued and the IEP team issued the PWN.

40. Regardless, the District has carried its burden and has shown that the Adult Student's regular high school diploma was appropriately issued. The February 8, 2023, IEP specifically states that the Adult Student had met all the Washington State and District graduation requirements except for 1) one credit of science, 2) half a social skills credit, and 2) either two credits of World Language or two PPR credits. Also, the Adult Student's January 2023 "High School and Beyond Plan" in Exhibit N evidences that the Adult Student, like general education students, elected to earn two PPR credits in the place of World Language.

41. The District's Exhibit L proves that the Adult Student completed more than one credit of Environmental Science through two semesters of APEX Virtual Learning. The District's Exhibit M proves that the Adult Student earned 2.5 social skills and PPR credits working at a Volvo Dealership. Thus, the District has shown that the Adult Student met the general education requirements for a regular high school diploma.

42. Moreover, the District's Exhibit P proves the Adult Student's IEP team complied with WAC 392-172A-0200(2)(b) by meeting on June 15, 2023, and issuing the PWN that exited the Adult Student from special education. Finally, there is no dispute that the District awarded the Adult Student a regular high school diploma on June 16, 2023, as opposed to another kind of diploma or certificate.

43. The Parents have submitted multiple documents regarding the Adult Student's participation in the APEX Learning on-line Environmental Science class in support of their argument that the Adult Student did not earn the required science credit. The Parents' testify in the November 17, 2025, Affidavit that the APEX Learning records



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

show the Adult Student did not log into the class as required and that the Adult Student's performance was not commensurate with the B grade awarded.

44. However, the Parents' testimony and documentation is inconsistent. The Parents state alternately that the Adult Student did not log into the APEX Learning system for the class, and also that he logged in for over 15 hours and 45 minutes. The Parents' testimony along with the documents in the record show that the Adult Student participated in the APEX Learning Environmental Science class with his 1:1 paraprofessional during school hours. Moreover, the District's Exhibit L reflects that the Adult Student regularly took quizzes and attended the virtual learning APEX Learning Environmental Science class through to completion on June 9, 2023.

45. The Parents also generally assert that the Adult Student's grades were inflated as compared to his actual abilities, and therefore he did not actually earn the academic credits required for a regular high school diploma. However, the Parents' testimony and evidence in support seems to solely rest on the APEX Learning Environmental Science class, and lacks specificity as to any of the Adult Student's other high school academic classes.

46. Finally, the Parents claim that the Adult Student's participation in the Evergreen Transition Program should not result in a regular high school diploma because it is a transition program, not an academic program. However, from the admissible evidence in the record, it appears that the Adult Student's participation in the Evergreen Transition Program was part and parcel with the Adult Student's academic classes and SDI for at least two academic years. During this period the Adult Student earned regular academic credit and received letter grades as any other general education student. The Parents argument, then, appears to be the reflection of their general belief that the Adult Student's grades were not reflective of his actual ability.

47. While the Parents' concerns about the Adult Student's actual abilities may be valid given the Adult Student's disabilities, the mere general belief about the Adult Student's ability and experience when compared to the District's documentation of academic achievement does not amount to a genuine issue of material fact.

48. Based on the admissible evidence in the record, there appears to be no genuine issue of material fact that the Adult Student completed all Washington State and District graduation requirements for a regular diploma on June 8, 2023, and received the diploma on June 16, 2023. Given that there is no genuine issue of material fact, the District is entitled to judgment as a matter of law that as of June 16, 2023, the Adult Student had met all graduation requirements and was no longer eligible for



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

special education services as per WAC 392-172A-02000(1)(a). The Parents' the June 9, 2025, and June 16, 2025, due process hearing requests must be dismissed.

**The Remainder of the Parents' Claims are Barred by the Statute of Limitations**

49. The Parents' claims discussed above all pertain to events that happened after June 8, 2023. In Issue (c) set forth in the First Prehearing Order, the District propounded the defense that the remainder of the Parents' claims in the June 9, 2025, and June 16, 2025, due process hearing requests are barred by the statute of limitations in WAC 392-172A-05080(2), because the claims identify events and facts that occurred on June 8, 2023, and before that date.

50. The Washington regulation concerning the IDEA statute of limitations provides in relevant part:

> *The due process hearing request must be made within two years of, and allege a violation that occurred not more than two years before, the date the parent or school district knew or should have known about the alleged action that forms the basis of the due process complaint except the timeline does not apply to a parent if the parent was prevented from filing a due process hearing request due to:*
>
> *(a) Specific misrepresentations by the school district that it had resolved the problem forming the basis of the due process hearing request; or*
>
> *(b) The school district withheld information from the parent that was required under this chapter to be provided to the parent.*

WAC 392-172A-05080(2). The Washington regulation is substantially similar to the statute of limitations in the IDEA. *See* 20 United States Code (USC) §1415(b)(6)(B) and §1415(f)(3)(C); 34 Code of Federal Regulations (CFR) §300.507.

51. In *Avila v. Spokane School District 81*, 852 F.3d 936 (9th Cir. 2017), the Ninth Circuit Court of Appeals interpreted the statute of limitations set forth in the IDEA. In a question of first impression for the Ninth Circuit, the court held that "the IDEA's statute of limitations requires courts to bar only claims brought more than two years after the parents… 'knew or should have known' about the actions forming the basis of the complaint." *Id*. at 937. Under this standard, known as the "discovery rule," a claim is timely "so long as the complaint is filed within two years of the known or should have known ("KOSHK") date." *Collette v. D.C.*, 2019 U.S. Dist. LEXIS 128520 (D.D.C., August 1, 2019).

52. Determining the KOSHK date, or the date when the two-year statute of limitations begins to run, is a fact-specific inquiry and courts must make findings regarding when parents knew or should have known about the actions forming the basis of the complaint. *Avila*, 852 F.3d at 945.

53. In determining the KOSHK date, the inquiry focuses on when a parent comes to believe, or

> *reasonably should have come to believe that their child has been hurt and that the school is responsible for the injury, regardless of whether the parent yet knows that the injury is legally actionable. Vandell v. Lake Wash. Sch. Dist., 2019 U.S. Dist. LEXIS 39747, at *11-12 (W.D. Wash., March 12, 2019) (by late August 2014, Parents knew or should have known that Students were not receiving FAPEs for the 2013-14 school year and that the District could be faulted for that failure); see also Draper v. Atlanta Independent Sch. System, 518 F.3d 1275, 1288 (11th Cir. 2008) ("[U]ntil 2003, Draper's family did not know enough to realize that Draper had been injured by his misdiagnosis and misplacement by the School System. We decline the invitation of the School System to conclude, as a matter of law, that Draper's family should be blamed for not being experts about learning disabilities"); M.D. v. Southington Bd. of Educ., 334 F.3d 217, 221 (2nd Cir. 2003) (IDEA claim accrued when Parent knew of the "injury" to her child, i.e., the "inadequate education"; Parents' claims were time-barred where they knew or had reason to know of student's injury when they withdrew her from the school system because they believed it was not providing her with an appropriate education).*

54. Inherent in any legal standard that incorporates a known-or-reasonably-should-have-known element is the legal construct of the "reasonable person," or in this case, the "reasonable parent." A parent cannot prevail simply by asserting they were unaware that a school district was responsible for harming a student – it is not a completely subjective standard, personal to a particular set of parents. The reasonable-parent construct requires an examination of all the objective facts to determine whether a belief is reasonable to the average parent. As the district court articulated in *Avila,* it is often difficult for a court, from its retrospective position, to determine the date on which a parent knew or should have known about the alleged action that forms the basis of the complaint:

> *On the one hand, parents should not be "blamed for not being experts about learning disabilities." . . . On the other hand, statutes of limitations*



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

> *"serve the policies of repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." (citations omitted).*

*Avila at *21-22.*

55. In the Parents' two due process hearing requests, they raised multiple claims challenging the February 4, 2022, Reevaluation, the February 8, 2023, IEP, the academic credits awarded during the Adult Student's placement in the Evergreen Training Program through June 8, 2023, and the special education services provided after the Covid-19 Emergency. The Parents also raised claims regarding bullying and a lack of mental health support in general while the Adult Student attended school at the District, prior to June 8, 2023.

56. The Parents, however, specifically state in the June 9, 2025, and June 16, 2025, due process hearing requests and the November 17, 2025, Affidavit, that all but one (the improper issuance of a diploma on June 16, 2023,) of the Parents' claims arose prior to or on June 8, 2023. Further, the Parents have not asserted that they did not know about the basis for the various claims, but instead assert that they were deeply involved in the Adult Student's educational activities and frequently communicated with District personnel. Importantly, the Parents identify that they attended the Reevaluation meeting on January 31, 2022, the February 9, 2022, IEP meeting, the February 8, 2023, IEP meeting, and the June 15, 2023, IEP team meeting. The Parents also confirm that they were aware of the Adult Student's grades and graduation requirements, as well as the Adult Student's participation in the Evergreen Training Program.

57. Also, the Parents have not asserted in the due process hearing requests or in the November 17, 2025, Affidavit that the District withheld information from the Parents such that the Parents could not assert their claims prior to June 9, 2025. Importantly, the Parents do not assert that they did not receive the "Notice of Special Education Procedural Safeguards for Students and Their Families."

58. Consistent with the Parents' admissions, the District has provided admissible documentary evidence that the Parents participated in the meetings regarding the January 31, 2022, Reevaluation, the February 9, 2023, IEP, and the February 8, 2023, IEP, and that the District provided the documents to the Parents at the meetings. These documents also reflect that the Parents received the "Notice of Special Education Procedural Safeguards for Students and Their Families." Finally, the documentation shows that the District provided the Parents with information about the Adult Student's participation in the Evergreen Training Program, the APEX Learning Environmental



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

Studies course, the graduation requirements and diploma, as well as the Adult Student's grades.

59. The only assertion the Parents make regarding a lack of information or knowledge is that they did not know about the *N.D. v. Reykdal* proceeding and the result of the litigation. The District is correct that it did not have an obligation to inform the Parents of the *N.D. v. Reykdal* litigation and could not predict the result of the litigation.

60. Given the Parents' admissions that they knew or should have known of their claims prior to June 9, 2025, coupled with the District's documentary evidence, it is concluded that there is no genuine issue of material fact that the Parents knew or should have known about their claims prior to June 9, 2025. Because there is no issue of material fact the District is entitled to judgment as a matter of law under WAC 392-172A-05080(2) that the Parents' remaining claims are barred by the statute of limitations. The Parents' claims that arose prior to or on June 8, 2023, as set forth in the June 9, 2025 and June 16, 2025, due process hearing requests are dismissed.

**The District is Entitled to Dismissal of the Parents' IEE Request.**

61. The Parents requested an IEE on June 23, 2025. The District has moved for summary judgment, arguing that there is no genuine issue of material fact that the Adult Student's eligibility for special education services ended on June 19, 2023, and the Parents' are not entitled to an IEE at public expense.

62. A parent that disagrees with a school district's evaluation may request an IEE at public expense as allowed by WAC 392-172A-05005:

> *(1)(a) Parents of a student eligible for special education services have the right under this chapter to obtain an independent educational evaluation of the student if the parent disagrees with the school district's evaluation subject to subsections (2) through (7) of this section.*
>
> *. . . .*
>
> *(2)(a) A parent has the right to an independent educational evaluation at public expense* ***<u>if the parent disagrees with an evaluation conducted or obtained by the school district</u>****.*



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

> *(b) A parent is entitled to only one independent educational evaluation at public expense each time the school district conducts an evaluation with which the parent disagrees.*
>
> *(c) If a parent requests an independent educational evaluation at public expense consistent with (a) of this subsection, the school district must either:*
>
> > *(i) Initiate a due process hearing within fifteen days to show that its evaluation is appropriate; or*
> >
> > *(ii) Ensure that an independent educational evaluation is provided at public expense without unnecessary delay, unless the school district demonstrates in a hearing under this chapter that the evaluation obtained by the parent did not meet agency criteria.*
>
> *(3) If the school district initiates a hearing and the final decision is that the district's evaluation is appropriate, the parent still has the right to an independent educational evaluation, but not at public expense.*

63. However, WAC 392-172A-05005 does not contain any prohibition regarding when a parent may request an IEE, nor does it prohibit a district from filing a due process hearing request in response. Because of this lack of information, courts have struggled regarding the application of the two year statute of limitations in WAC 392-172A-05080(2) to requests for an IEE and due process hearing requests filed as per WAC 392-172A-05005.

64. In *In the Matter of Kent School District*, OAH Docket No. 12-2018-OSPI-00655, the ALJ held that the statute of limitations in WAC 392-172A-05080 prevents parents from requesting an IEE more than two-years after the completion of an evaluation. See also, *In the Matter of Northshore School District*, 119 LRP 21194 (SEA WA 2018) (holding parents reimbursement request for an IEE did not relate to the most recent evaluation conducted by the District).

65. However, this decision was issued prior to the case of *D.S. v. Trumbull Bd. of Educ.,* 77 IDLR 122 (2nd Cir. 2020), where the court held that an IEE is not barred by the two-year statute of limitations. In *Trumbull*, the court reasoned:

> *All a parent must do is "disagree with an evaluation obtained by the public agency." 34 C.F.R. § 300.502(b)(1). Once the parent has disagreed, the burden automatically shifts to the school either to "[file a due process*



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

> *complaint to request a hearing to show that its evaluation is appropriate," or "[e]nsure that an IEE is provided at public expense." Id. . . .* ***The IDEA does not provide a statute of limitations for a parent's right to disagree with an evaluation for the purpose of obtaining an IEE at public expense. But that does not mean that a parent will be able to abuse the process to obtain a publicly funded IEE based on their disagreement with an old evaluation . . . As a practical matter, a parent's right to disagree with an evaluation and obtain an IEE at public expense is tethered to the frequency with which the child is evaluated.*** *And the IDEA establishes a logical timeframe in which a parent's right to request an IEE is actionable . . . [A] parent's right to an IEE at public expense ripens each time a new evaluation is conducted. The time within which a parent must express their disagreement with an evaluation and request an IEE depends on how frequently the child is evaluated.*

77 IDLR 122, 38-41.

66. Subsequently, an ALJ in *In the Matter of Hockinson School District*, OAH Docket. 08-2019-OSPI-00843 (SEA WA 2022), adopted the *Trumbull* reasoning and determined that the statute of limitations in WAC 392-172A-05080 does not apply to requests for an IEE as per WAC 392-172A-05005(1) and (2). See *In the Matter of Spokane School District*, 12-2021-OSPI-01481, 2021-SE-0168 (holding that WAC 392-172A-05080 does not apply to IEE requests made as per WAC 392-172A-05005 when the Student is eligible for special education services and a triennial evaluation is required).

67. While the District does not reference *M.B. v. Springfield Sch. Dist*., Case No.: 6:19-cv-01150-MK, 2020 WL 5653986, (D. Or. 2020), this case exemplifies issues raised when parents request an IEE after an evaluation has "expired." In *Springfield*, the parent made a request for an IEE as the district began the Student's triennial evaluation. *Springfield*, 6:19-cv-01150-MK, pp.20-21. Instead of consenting to the required triennial evaluation, the parent requested an IEE. *Id*. The *Springfield* court reasoned that because three years had elapsed, the evaluation had expired and therefore there was no current or valid evaluation with which the Parent could express disagreement. *Id.*

68. A review of these cases and the plain language of WAC 392-172A-05005 and 05085 leads to the following conclusions if a student is determined eligible for special education services as per an evaluation (initial or reevaluation): 1) WAC 392-172A-03015 requires a subsequent evaluation every three years; 2) as per *Trumbull*, WAC 392-172A-05005(1) and (2) allow a parent to request an IEE anytime between the



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

completion of an evaluation and when the triennial evaluation is due, regardless of the statute of limitations in WAC 392-172A-05085; and 3) as per *Springfield,* a parent can only challenge the most recent evaluation, and cannot request an IEE after an evaluation has "expired." However, if a student is determined not eligible for special education services as the result of an evaluation, a triennial evaluation is not required by WAC 392-172A-03015 and the two year statute of limitations in WAC 392-172A-05085 applies to a parents request for an IEE (See, *Lakewood School District*, OAH Docket No. 03-2025-OSPI-02508 (May 20, 2025)).

69. However, the facts of this case present this tribunal with a more nuanced question: when the student is no longer eligible for special education services because they have either aged out of eligibility or received a regular diploma, and a triennial evaluation is not required by WAC 392-172A-03015, does the statute of limitations of WAC 392-172A-05085 apply to a parent's subsequent request for an IEE?

70. First, there is no genuine issue of material fact that the last Reevaluation of the Adult Student was completed on January 31, 2022, more than three years prior to the Parents' June 23, 2025, IEE request. The January 31, 2022, Reevaluation "expired" on January 31, 2025, there was no reevaluation in effect that the Parents can disagree with at the time the Parents made the request for an IEE. Under *Springfield*, then, the Parents cannot request an IEE as per WAC 392-172A-05005 because there is no current evaluation for the Parents to disagree with.

71. More importantly, however, the ineligibility of the Adult Student for special education services is also determinative. The District is not obligated to conduct a reevaluation three years after the January 31, 2022, because, as found and concluded above, the Adult Student is not eligible for special education services as of June 19, 2023. Under WAC 392-172A-03015 a triennial evaluation is not required and the District is not obligated to provide the Adult Student with a FAPE after that date. Thus, the District no longer has any FAPE or special education obligations to the Student, and the Parents cannot seek an IEE at public expense.

72. Finally, because the Adult Student was no longer eligible for special education services as of June 19, 2023, and a triennial evaluation is not required by WAC 392-172A-03015, the two year statute of limitations in WAC 392-172A-05085 applies to a parents request for an IEE. (See, *Lakewood School District*, OAH Docket No. 03-2025-OSPI-02508 (May 20, 2025)).

73. The District has shown there is no genuine issue of material fact that 1) there is not an evaluation in place that the Parents can lodge a disagreement with, and 2) the District is not obligated to provide the Adult Student with a FAPE. Therefore, the



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

District is entitled to judgment as a matter of law that the Parents' June 23, 2025, request for an IEE is not permissible. Because the Parents' request is not permissible, the District is not required to show that the January 31, 2022, Reevaluation is appropriate, and the Parents' request for an IEE may be denied. The District's motion for summary judgment must be granted.

**Parents' Amended Complaint and Cross-Motion for Summary Judgment**

74. The Parents filed an "Amended Complaint" and a "Cross-Motion for Summary Judgment" on November 17, 2025. Because the June 9, 2025, and June 16, 2025, due process hearing requests are dismissed, the Parents' Amended Complaint and Cross-Motion for Summary Judgment are moot and will not be considered.

## ORDER

IT IS HEREBY ORDERED THAT:

The District's Motion for Summary Judgment is **GRANTED.**

The Parents' June 9, 2025, due process hearing request (OAH Docket No. 06-2025-OSPI-02584) is **DISMISSED.**

The Parents' June 16, 2025, due process hearing request (OAH Docket No. 06-2025-OSPI-02594) is **DISMISSED.**

The Parents' request for an Independent Educational Evaluation is **DENIED**, and the District's due process hearing request (OAH Docket No. 07-2025-OSPI-02623) is **DISMISSED.**

SERVED on the date of mailing.

Courtney Beebe
Lead Administrative Law Judge
Office of Administrative Hearings



Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216
(253) 476-6888
(253) 593-2200 FAX

## Right To Bring A Civil Action Under The IDEA

Pursuant to 20 U.S.C. 1415(i)(2), any party aggrieved by this final decision may appeal by filing a civil action in a state superior court or federal district court of the United States. The civil action must be brought within ninety days after the ALJ has mailed the final decision to the parties. The civil action must be filed and served upon all parties of record in the manner prescribed by the applicable local state or federal rules of civil procedure. A copy of the civil action must be provided to OSPI, Legal Services, PO Box 47200, Olympia, WA 98504-7200. To request the administrative record, contact OSPI at appeals@k12.wa.us.

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the state of Washington that true copies of this document were served upon the following as indicated:

| | |
|---|---|
| Parent/Adult Student<br>5455 Highland Dr.<br>Bellevue, WA 98006 | via First Class Mail and<br>via E-mail<br>mbeygi@yahoo.com<br>mehdi.beygi@gmail.com<br>cyrus.beygi@gmail.com |
| Sally Sue McDonald<br>Scott Powers<br>Bellevue School District<br>PO Box 90010<br>Bellevue, WA 98009 | via E-mail<br>mcdonaldsa@bsd405.org<br>powersw@bsd405.org<br>lutzm@bsd405.org |
| Lynette M. Baisch<br>Porter Foster Rorick LLP<br>601 Union Street, Ste 800<br>Seattle, WA 98101 | via E-mail<br>lynette@pfrwa.com<br>sedona@pfrwa.com |

Dated December 15, 2025, at Spokane Valley, Washington.

Lan Le

Representative
Office of Administrative Hearings
16201 E. Indiana Avenue, Suite 3000
Spokane Valley, WA 99216

cc: Administrative Resource Services, OSPI