# Exhibit A

## SPECIAL EDUCATION COMMUNITY COMPLAINT (SECC) NO. 25-100

### PROCEDURAL HISTORY

On June 9, 2025, the Office of Superintendent of Public Instruction (OSPI) received and opened a Special Education Community Complaint from the parent (Parent) of a student (Student) attending the Bellevue School District (District). The Parent alleged that the District violated the Individuals with Disabilities Education Act (IDEA), or a regulation implementing the IDEA, regarding the Student's education.

On June 9, 2025, OSPI acknowledged receipt of this complaint and forwarded a copy of it to the District superintendent on June 10, 2025. OSPI asked the District to respond to the allegations made in the complaint.

Between June 11 and 14, 2025, OSPI received additional information from the Parent. OSPI forwarded the additional information to the District on June 16, 2025.

On July 1, 2025, OSPI received the District's response to the complaint and forwarded it to the Parent on July 2, 2025. OSPI invited the Parent to reply.

On July 17 and 18, 2025 OSPI received the Parent's reply. OSPI forwarded that reply to the District on July 21, 2025.

On July 21, 2025, the Parent provided additional information, which OSPI forwarded to the District on July 25, 2025.

OSPI considered all information provided by the Parent and the District as part of its investigation.

### SCOPE OF INVESTIGATION

This decision references events that occurred prior to the investigation period, which began on June 10, 2024. These references are included to add context to the issues under investigation and are not intended to identify additional issues or potential violations which occurred prior to the investigation period.

### ISSUE

1. Whether the District appropriately responded to the Parents' request for an individualized education program (IEP) meeting to discuss compensatory education based on the *N.D. v. Reykdal* settlement?

### LEGAL STANDARDS

<u>FAPE Entitlement</u>: A free appropriate public education (FAPE) must be available to every student between the ages of 3 and 22[1] who has been determined eligible for special education and who resides in the state of Washington. 34 CFR §300.101; WAC 392-172A-02000.

---

[1] The 9th Circuit Court of Appeals ruled in May 2024 that the availability of adult-education programs triggers an obligation under the IDEA to provide special education services to 21-year-old students eligible

Graduation: Graduation with a regular high school diploma ends a student's eligibility for special education services. 34 CFR §300.102(a)(3); WAC 392-172A-02000(2)(b); *Letter to Moore*, 39 IDELR 189 (OSEP 2002).

Authority of State Education Agencies: State education agencies have "general supervisory responsibility" to ensure compliance with the IDEA. 34 CFR § 300.600; s*ee also Letter to Warkomski* (Mar 30, 2001); *Letter to Librera* (May 26, 2004) ("The SEA is ultimately responsible for ensuring that all Part B requirements, including eligibility, evaluation, and procedural safeguards, are met for eligible children residing within the State.")

## FINDINGS OF FACT

### Background

1. The Student turned 21 in May 2023. The Student was eligible for special education services under the other health impairment eligibility category. Between 2021 and 2023, the Student attended a District program to receive special education and transition services.

2. The Student's IEP in place at the time he graduated was developed in February 2023. The Student's IEP included goals and specially designed instruction in social/emotional, adaptive, behavior, reading, written expression, and math. The Student received speech language pathology as a related service and 1:1 support from a paraeducator.

3. The District provided documentation related to the District's graduation policies and procedures and documentation related to how the Student met graduation requirements. The District noted the Student graduated and received his "regular high school diploma in June 2023." A June 15, 2023 prior written notice stated that the Student would "age out of K-12 services on June 16, 2023" and would no longer be eligible for special education services and that this action was based on "[District] graduation based upon review of student transcript and diploma."[2]

4. Per emails from June 2023, the District's last day of school for the 2022–23 school year was June 16, 2023 for students graduating and June 22, 2023 for all other students.

---

for special education through their 22nd birthday. Prior to May 2024, Washington law provided that for a student whose 21st birthday occurs after August 31, the student shall continue to be eligible for special education and any necessary related services for the remainder of the school year they turn 21. WAC 392-172A-02000(3)(c).

[2] The Parent has also filed a request for a due process hearing, challenging the Student's diploma and whether it was proper to graduate him in 2023. As this is both outside the one-year complaint investigation timeline and being addressed in the due process, OSPI will not make any conclusions on whether the diploma and graduation were proper. References are only included in this decision to provide necessary background.

5. The District stated in its response to this complaint that the Student was assigned an exit code of "G0" due to his receipt of a regular high school diploma.

**Complaint Timeline Began June 10, 2024**

6. On November 22, 2024, the Federal District Court for the Western District of Washington approved the settlement agreement in *N. D. v. Reykdal.* [3]

7. On November 26, 2024, OSPI, per Court order, directed the identified districts to send out settlement notices to the adult students identified as potential members of a settlement class by December 6, 2024.

8. Students were identified based on CEDARS data submitted by districts and OSPI identified the students coded with the "RMA" and "D2" exit codes (age out and drop out exit codes). 72 districts, including the District here, were identified that were required to send out the settlement notice and offer IEP meetings to discuss compensatory education. As districts sent out settlement notices, it was revealed that a number of students identified as potential class members had been incorrectly coded as they had graduated with a diploma but mistakenly been coded as age out/drop out.

9. The settlement notice provided information about the lawsuit and stated, in part:

> You are receiving this notice because our records indicate you or your child were eligible for special education in the state of Washington and may have been exited from special education due to your age anytime between November 11, 2020, and the present day, prior to turning twenty-two years old. If so, you may be affected by a proposed class action settlement.
>
> …
>
> As part of the settlement agreement in this case, you are a member of the class if you were eligible for special education and were exited from special education based on your age (often called 'aging out') prior to turning twenty-two years old at any time between November 11, 2020, and the present.
>
> …
>
> As part of the settlement agreement, you may be entitled to compensatory education to make up for the special education and transition services you otherwise would have received had you remained in school until your 22nd birthday.

The notice included information about how to request an IEP meeting from the district to explore compensatory education and stated "If the school district refuses to convene an IEP team meeting on your behalf, or you disagree with the amount or type of compensatory education, you have the right to appeal that decision under either OSPI's Due Process Procedures or through a Community Complaint."

---

[3] *N.D., et al. v. Reykdal*, was a lawsuit which challenged the state of Washington's policy of prematurely exiting students from special education services prior to their 22nd birthday. The 9th Circuit Court of Appeals ruled in May 2024 that Washington's law was not aligned with the IDEA as the availability of adult-education programs triggered an obligation under the IDEA to provide special education services to students eligible for special education through their 22nd birthday.

10. Based on emails to OSPI as part of the settlement notification process, it appeared that the District sent settlement notices to additional students who were not on the list of potential settlement class students provided to the District by OSPI.[4]

11. The District's response to this complaint indicated the Student "was included in the group of students to whom the District initially sent a copy of the form letter [settlement notice] prescribed by OSPI in December 2024."

12. In their complaint, the Parent stated that they received a copy of the settlement notice in December 2024.

13. On February 19, 2025, the Parent emailed the District's transition coordinator and requested an IEP meeting to discuss compensatory education. Further emails discussed scheduling, and an IEP meeting was scheduled for March 5, 2025 at 10 am.

14. On March 5, 2025 at 8:33 am, the District emailed the Parents and canceled the IEP meeting. The email stated that the District "just learned from…OSPI that if a student met graduation requirements and received their diploma, they are actually not eligible for this compensatory education offer however I am seeking more clarity and will get back to you shortly."

15. The District explained in its response that, "The District subsequently learned through further communications with OSPI that because Student met graduation requirements and graduated with a regular high school diploma, Student was not among the class of students deemed eligible for compensatory services."

16. Also, on March 5, 2025, the Parents emailed the District, requesting clarification and the District stated that because the Student had graduated, he was therefore ineligible for the settlement.

17. On March 10, 2025, the Parents and District emailed further. The Parents asked, "Did you guys in [school] issue the diploma to [Student] in June 2023?" In a separate email, the Parents asked whether the Student was "limited to two years transition program because of his age limit 21?" and the transition coordinator responded, "That is a yes. He turned 21 in May 2023 and then received his diploma." In a subsequent emails, the transition coordinator explained: the Student "did officially graduate from our district with an actual diploma when he left the Transition Program, and met all of his graduation requirements, including getting all of his required credits" and "He turned 21 in May and then walked and received his diploma on Friday June 16th 2023 during our ceremony in the evening."

[4] For example, emails from the District indicated they sent the settlement notice to 33 families when the list of students provided to the District by OSPI included 11 identified students. It is unclear why the District sent the settlement notice to additional adult students.

The Parents stated, in their complaint, that this confirmed that the Student "was exited solely based on reaching age 21, aligning exactly with the class member definition in the *N.D., et al. v. Reykdal* settlement."

18. On March 11, 2025, OSPI, per Court order, directed identified districts to send out a second, updated settlement notice to potential members of the settlement class. The updated settlement notice included much of the same information as the first notice, but also included updated language, stating:

> Please note that you were selected to receive this notice because at some point since November 11, 2020, you were assigned an exit code of RMA or D2, which does not mean you are entitled or eligible to receive compensatory education. In particular, recipients of regular high school diplomas are not eligible to receive compensatory education, even if at some point they were assigned an exit code of RMA or D2.

19. The Parents stated in their complaint that their follow-up questions about the Student's "alleged 'graduation' were met with contradictory statements, lacking clarity on whether [Student] was exited due to age or because of true program completion."

20. The District stated that an email from OSPI to the District on March 20, 2025, confirmed that the Student was not among the students to whom OSPI directed the District to provide notice and that because "Student was assigned an exit code of G0 based on his graduation" he "should not have received a settlement notification intended for students who were assigned an exit code of 'RMA' or 'D2,' per Section 5 of the *N.D. v. Reykdal* settlement agreement."

21. Between April 3 and 9, 2025, the Parents emailed with the District's transition coordinator, director of special education, and the District chief of staff. The Parents' emails continued to raise questions and concerns about whether the Student had been properly exited, whether the diploma was proper, and whether the District had met the Student's needs.

22. In May 2025, the Parents requested mediation, and the District declined to participate in mediation on the topic of whether the Student was part of the lawsuit settlement class.[5]

23. On June 9, 2025, the Parent filed this complaint and alleged the District improperly canceled the IEP meeting to discuss compensatory education and that the Student should be entitled to compensatory education. In additional emails and documents provided by the Parent, the Parent also indicated that a primary concern was that the District failed to communicate with him and did not provide "meaningful" answers to questions. In additional documentation, the Parent provided information that the Student has struggled due to his disabilities following leaving the school system in 2023.

[5] OSPI notes the Parent included allegations in his complaint documents that the District improperly refused mediation or mischaracterized the reason it declined to participation in mediation. However, by regulation, mediation is a voluntary process, which means that both the parent and a district have to agree to participate and thus, either side can decline for any reason.

## CONCLUSIONS

**Issue: IEP Meeting Per Settlement Notice** – The Parent alleged the District improperly canceled the IEP meeting to discuss compensatory education and that the Student should be entitled to compensatory education.

As context, a FAPE must be available to every student between the ages of 3 and 22 who has been determined eligible for special education and who resides in the state of Washington. The 9th Circuit ruled in May 2024 that the availability of adult-education programs triggers an obligation under the IDEA to provide special education services to 21-year-old students eligible for special education through their 22nd birthday. Graduation with a regular high school diploma ends a student's eligibility for special education services. For purposes of resolving this complaint, OSPI finds the Student graduated with his high school diploma in June 2023.[6]

With respect to the issue under investigation, whether the District appropriately responded to the Parent's request for an IEP meeting to discuss compensatory education, OSPI notes that this issue is unique in that the analysis is informed primarily by the Court order settlement process, rather than the requirements of the IDEA or state special education regulations.

Here, in November and December 2024, as directed by OSPI per Court order, the District sent out settlement notices to potential members of the settlement class. Students were *potential* members of the settlement class if they were improperly exited from special education services—or "aged out"—after November 2020. Potential members of the class were identified by OSPI based on district data which coded the students with "RMA" and "D2" exit codes (age out and drop out exit codes). If students were part of the potential settlement class, they could request their district hold an IEP meeting and the IEP team would determine whether any compensatory education was needed to address a premature exit from special education services. OSPI notes that, importantly, no student was guaranteed compensatory education, even if they were part of the potential settlement class, as this would be an IEP team decision. Students were not part of the potential settlement class if they had graduated with a high school diploma. In fact, the second, updated Court ordered settlement notice specifically stated, "In particular, recipients of regular high school diplomas are not eligible to receive compensatory education, even if at some point they were assigned an exit code of RMA or D2."

In this case, the Student graduated, received his high school diploma, and according to the District, was coded as "G0". It is unclear why the District sent the Student the settlement notice, although

---

[6] The Parent has challenged the validity of the Student's diploma and graduation through due process. However, the District did not prematurely exit the Student at 21 in 2023 when he graduated. Rather, at the time the Student exited the school system in June 2023, while the lawsuit was in progress, the District was following the then understood and accepted process in Washington that a student either exits when they graduate or turn 21. There was no 9th Circuit decision or negotiated settlement in the lawsuit in May/June 2023 that would have directed the District to take another path. While OSPI cannot make a conclusion on whether the Student's graduation was proper as it is outside the one-year timeline and the subject of a current due process, if the administrative law judge finds that the Student's graduation was not proper and finds the District in violation, then the Student will be able to access remedies in that venue.

OSPI notes the District seems to have sent numerous adult students the settlement notice that were not on their OSPI identified list, which likely caused confusion for those adult students and families.

Regardless, the Student and Parent received the settlement notice, requested an IEP meeting, and the District initially scheduled an IEP meeting for March 5, 2025 at 10 am. The District, upon coming to understand that students who had graduated were not part of the potential settlement class, canceled the IEP about an hour and a half prior to the scheduled meeting. OSPI notes that, especially when viewed in retrospect, the District could have communicated more collaboratively with the family—instead of abruptly cancelling the meeting, the District could have either held the meeting or rescheduled and sat down with the family to explain why the Student did not meet the definition of the settlement class and why compensatory education would not be warranted. Unfortunately, cancelling the meeting at the last minute led to confusion and increasing frustration as the Parent felt the District was not responsive or answering their questions.

OSPI understands the Parent's frustration and empathizes with the struggles the Student has faced and is currently facing. However, poor communication is not a legal violation and per the terms of the settlement, the District was not necessarily required to hold an IEP meeting as the Student had graduated. And even if they had held an IEP meeting, the Student would not have been eligible to receive compensatory education through this process because he had graduated. Further, beyond the requirements of the settlement, the Student does not now have rights under the IDEA—such as the right to an IEP meeting to address FAPE—as he had been out of the school system for almost two years when the complaint was filed.

OSPI finds no violation of the IDEA or the terms of the settlement agreement.

## CORRECTIVE ACTION

**STUDENT SPECIFIC:**
None.

**DISTRICT SPECIFIC:**
None.

Dated this 7th day of August, 2025

Tania May

Dr. Tania May
Assistant Superintendent of Special Education
PO BOX 47200
Olympia, WA 98504-7200

**THIS WRITTEN DECISION CONCLUDES OSPI'S INVESTIGATION OF THIS COMPLAINT**

IDEA provides mechanisms for resolution of disputes affecting the rights of special education students. This decision may not be appealed. However, parents (or adult students) and school districts may raise any matter addressed in this decision that pertains to the identification, evaluation, placement, or provision of FAPE to a student in a due process hearing. Decisions issued in due process hearings may be appealed. Statutes of limitations apply to due process hearings. Parties should consult legal counsel for more information about filing a due process hearing. Parents (or adult students) and districts may also use the mediation process to resolve disputes. The state regulations addressing mediation and due process hearings are found at WAC 392-172A-05060 through 05075 (mediation) and WAC 392-172A-05080 through 05125 (due process hearings.)