FILED ENTERED
LODGED RECEIVED

OCT 23 2026 LS

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

THE HONORABLE LAUREN KING

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

N.D., et al.,

Plaintiffs,

v.

CHRIS REYKDAL, et al.,

Defendants

Case No. 2:22-cv-01621-LK

MOVANT'S REPLY TO DEFENDANTS' RESPONSE (DKT. 145)

NOTE ON MOTION CALENDAR: October 23, 2026

ORAL ARGUMENT REQUESTED

## I. INTRODUCTION AND INCORPORATION OF RECORD

Movant Mehdi Beygi, legal guardian for C.B., respectfully submits this Reply to Defendants' Response (Dkt. 145). This filing relies upon the record and incorporates the arguments detailed in the initial motion papers.

Defendants affirmatively raised C.B.'s exit codes, the canceled IEP meeting, and non-final administrative findings in Dkt. 145 to oppose proper class settlement administration. Movant replies to demonstrate that Defendants' administrative posture violates the binding standards established by the Ninth Circuit in this very case (*N.D. v. Reykdal*, No. 23-35580) and relies on unverified, mutually incompatible database metrics that directly contradict their own federal reporting and formal Prior Written Notice.

Furthermore, Defendants' claim that exit codes are meaningless is historically false. From the very beginning of this case, the codes have been the sole mechanism for administration. This is not the 1980s where a physical copy of a diploma dictates federal data compliance; without the database codes, no notices of class membership could have been distributed. Defendants cannot rely on the codes to administer the class but disavow them to deny Movant compensation.

## II. REQUEST FOR JUDICIAL NOTICE OF PUBLIC GOVERNMENT RECORDS (FRE 201)

Pursuant to Federal Rule of Evidence 201(b)(2), Movant respectfully requests that this Court take judicial notice of the existence, publication, and official contents of two authoritative government public records that have long been publicly accessible on official agency websites: 1. Wisconsin Department of Public Instruction, official publication on ED*Facts* Federal Exiting Categories under Section 618 of the IDEA, publicly available at: https://dpi.wi.gov/wise/data-elements/edfacts-exit-cats (relevant excerpt attached in Supporting Exhibit C-3). 2. Washington Office of Superintendent of Public Instruction (OSPI), Comprehensive Education Data and Research System (CEDARS) Data Manual (Spring Final Edition, 143 pages), publicly available at: https://ospi.k12.wa.us/sites/default/files/2023-08/2023_cedars_manual_spring_final_adav32923.pdf (relevant data elements for School Student File C and Special Education File K attached in Supporting Exhibits C-1 and C-2).

These public resources are official agency manuals and reporting standards that are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. To conserve judicial resources and avoid burdening the docket with OSPI's voluminous 143-page data manual, Movant provides the official URL above while supplying the dispositive excerpts (Files C and K) in the accompanying exhibit volume. These government publications are not "new evidence" created post-hoc; they represent the pre-existing state and federal data architecture governing all parties.

## III. Argument:

### A. Defendants Rely on Biased, Self-Serving Administrative Conclusions (*Nemo iudex in causa sua*)

Instead of independent evidence, Defendants point to the Office of Administrative Hearings (OAH) decision and Dr. Tania May to justify their actions. This reliance is a glaring violation of due process. OAH consists of contracted tribunals acting *for* the Office of the Superintendent of Public Instruction, and Dr. May is a paid executive employee of OSPI. The principle of *"Nemo iudex in causa sua"*—no man can be a judge in his own case—is a foundational rule of natural justice, fairness, and constitutional due process. OSPI cannot use non-binding decisions generated by its own paid employees and tribunals to extinguish federal class rights before this Court.

### B. Under the Ninth Circuit's Binding "Law of the Case," Defendants Bear the Burden of Proof and Admit They Lack Conclusive Proof of a Federally Aligned RHSD

In this exact litigation, the Ninth Circuit established the controlling legal standard and burden of proof when a student's eligibility is challenged based on a disputed diploma (*N.D. v. Reykdal*, 102 F.4th 982 (9th Cir. 2024) (Slip Op. at 10–11)). The Ninth Circuit held that the termination of a Free Appropriate Public Education (FAPE) is governed strictly by the federal regulatory definition: whether a document constitutes a "regular high school diploma" as that term is used in 34 C.F.R. § 300.102(a)(3).

Throughout Dkt. 145, Defendants conflate loose state-level terminology with this strict federal standard. Washington State law and local school district policies contain no statutory definition of a Federally Aligned RHSD capable of terminating FAPE, yet Defendants attempt to use an unverified local label to strip C.B. of his federal rights.

Crucially, the Ninth Circuit placed the absolute burden of proof on the Defendants. When addressing class representative E.A., the Court held that because the Superintendent could not prove the diploma met the federal standard, *"we cannot say that E.A. is in receipt of a regular high school diploma. Consequently, he remains eligible for special education under the IDEA..."*

In Dkt. 145, Defendants completely fail this burden. OSPI explicitly concedes that it *"has never suggested C.B.'s exit code 'conclusively proves C.B. earned a[] [regular high school diploma]'"* and admits that *"OSPI was not making a 'conclusive' determination on whether C.B. received a proper regular high school diploma"* (Dkt. 145 at 5–6). Because the burden of proof rests entirely on the Defendants, and OSPI admits it has not established that C.B. received a Federally Aligned RHSD, the Court cannot treat the diploma as terminating his FAPE.

### C. The Operative PWN Proves C.B. Aged Out, Which Legally Precludes a Federally Aligned RHSD

Defendants' exclusion of C.B. is flatly contradicted by the Bellevue School District's (BSD) own formal Prior Written Notice (PWN) issued on June 15, 2023. Under the IDEA and 34 C.F.R. § 300.102(a)(3)(iii), terminating FAPE via graduation strictly requires a prior written notice proposing graduation as the action taken. However, the District's PWN explicitly stated: *"The reason we are proposing or refusing to take action is: Cyrus will age out of K-12 services on June 16th, 2023"* and under the description of other options considered, declared: *"No other options were considered."*

As a matter of statutory law, aging out precludes ever receiving a Federally Aligned RHSD. A student cannot simultaneously be pushed out for reaching maximum age and graduated with a regular diploma. This binding legal document proves C.B. was exited solely due to aging out, placing him squarely within the certified class definition, and disproves Defendants' *post-hoc* claims that a graduation event was properly processed and noticed.

**D. The "Meaningless Codes" Trap, Incompatible Databases, and the False Claims Act Require a Special Master Audit**

Defendants explicitly concede in their own briefing that *"C.B.'s exit code does not determine whether he is a member of the class"* (Dkt. 145 at 4). By declaring the state exit code meaningless, Defendants eliminate their own defense. If the unverified state "G0" code is legally meaningless for determining federal FAPE termination, the Court must look to the federal RMA tracking and the legally mandated PWN, both of which confirm C.B. aged out. Defendants cannot point to an allegedly meaningless local keystroke to override their own binding federal data. This practice relies on two mutually incompatible frameworks:

1. **The State CEDARS Database & LEA Authority:** Local districts unilaterally enter unverified two-character state codes (such as G0) into the state CEDARS database. OSPI has formally sworn under oath that it does not verify whether a school district's use of a local code is accurate. Furthermore, under 20 U.S.C. § 1413(a)(1) and this District's precedent in *S.P. v. Seattle Public Schools*, an LEA lacks statutory authority to independently interpret how state law aligns with the IDEA to define a Federally Aligned RHSD. *See S.P. v. Seattle Pub. Schs.*, Case No. 2:25-cv-00286-BJR (W.D. Wash.). Because BSD lacks this legal authority, its unverified entry of a "G0" state code into CEDARS is legally meaningless for terminating federal rights.
2. **The Federal EDFacts Database (FS009 Schema):** For federal accountability under Section 618 of the IDEA, OSPI reports a calculated federal exit category to the U.S. Department of Education under the strict **FS009** schema. "D2" and "G0" are Washington-specific local codes destined for File C that are never communicated directly to the US DOE. To derive these federal counts, OSPI relies on the undisclosed **"File K"** (Student Special Education Programs File), which tracks specific special education exit reasons, including **value "2 - Aged Out"**. The final federal exit category—such as **RMA (Reached Maximum Age)**—is a calculated field derived

independently of unverified local CEDARS keystrokes. C.B. received the official Class Notice because his record generated this federal RMA code.

OSPI is legally bound to report accurate, verified data to the U.S. Department of Education, as federal IDEA funding is contingent upon ensuring the availability of FAPE. If the false or unverified data was used to obtain federal funding, the Department of Justice can pursue civil action resulting in treble damages under the **False Claims Act**. Furthermore, under **18 U.S.C. § 1001 (The False Statements Act)**, it is a federal felony to knowingly and willfully provide materially false data to any branch of the federal government.

Defendants cannot claim before this Court that C.B. actually received a federally compliant RHSD without simultaneously admitting that the unverified, mathematically incompatible RMA data they willfully submitted to the U.S. Department of Education to secure federal IDEA funding was materially false.

**E. Defendants Confess to Violating the Final Order by Canceling the Scheduled IEP Meeting**

Defendants attempt to justify canceling C.B.'s scheduled March 5, 2025 IEP meeting by claiming the Settlement allows LEAs to deny compensatory education based on a diploma (Dkt. 145 at 2, 5). This argument violates the plain text of the Final Order. The Court mandated that *"OSPI shall direct LEAs to reconvene IEP teams for all students in the class who wish to receive an award of compensatory education."* An LEA's ability to deny compensatory education can only occur *at* the properly reconvened IEP meeting. By instructing the local district to cancel the scheduled meeting in advance rather than convening the team, OSPI actively violated the Court's Final Order.

**F. Express Preservation of Claims**

For appellate review, Movant expressly preserves all factual and legal arguments regarding the legal insufficiency of the alleged diploma under 20 U.S.C. § 7801(43) and 34 C.F.R. § 300.102(a)(3)(iv), including that C.B. was exited via an "age out" PWN chronologically prior to receiving any diploma, that a WA-AIM alternate assessment pathway cannot legally constitute a Federally Aligned RHSD, and that the transcript itself contains no record of the specific type of diploma received.

**G. Defendants' Reliance on the Separate Federal IDEA Appeal Creates a Procedural Impasse That Warrants This Court's Attention**

Defendants contend that whether C.B. received a proper regular high school diploma is a question for the Office of Administrative Hearings (OAH) and now Judge John C. Coughenour, rather than OSPI. Dkt. 145 at 4–6. However, Defendants fail to address a significant procedural contradiction: the federal court to which Defendants direct Movant has already ruled that

evidence challenging C.B.'s graduation is irrelevant to its analysis because the Administrative Law Judge (ALJ) independently determined that C.B. aged out of special education eligibility.

In approving the class settlement, this Court expressly recognized that students disputing improper graduation or termination of special education services retain their rights to pursue IDEA due process remedies. Dkt. 130 at 19–20; Dkt. 92-1 ¶ 12. Movant followed that procedure, pursued administrative due process against Bellevue School District, and subsequently sought federal judicial review in *Beygi v. Bellevue School District*, No. 2:26-cv-01061-JCC.

On August 17, 2026, Judge Coughenour denied Movant's motion to admit additional evidence concerning C.B.'s graduation, including evidence challenging completion of required coursework. The Court expressly stated:

> "Most of the documents which Plaintiffs now seek to admit ... are irrelevant because even if the ALJ improperly determined that C.B. became ineligible for FAPE (based on his completion of the coursework for a high school diploma), the ALJ also found that, after June 19, 2023, C.B. was no longer eligible for FAPE due to his age."

*Beygi v. Bellevue School District*, No. 2:26-cv-01061-JCC, Dkt. 41 at 3 (Aug. 17, 2026) (Exhibit F).

Judge Coughenour further concluded:

> "Thus, C.B.'s alleged non-compliance with the School District's graduation requirements, for example, is irrelevant to the case before this Court."

Id. at 3.

This creates a substantial procedural impasse. Defendants tell this Court that the validity of C.B.'s purported regular high school diploma must be addressed in the separate federal appeal. Dkt. 145 at 6. Yet, in that very appeal, Judge Coughenour has already declined to admit additional diploma evidence because the ALJ's independent age-based eligibility finding controlled his determination of relevance.

The two proceedings address different questions. Judge Coughenour's August 17 order did not determine whether C.B. received a qualifying regular high school diploma under 34 C.F.R. § 300.102(a)(3). Nor did it conclusively resolve C.B.'s eligibility for relief under this Court's class settlement, which concerns students exited from special education due to age before their twenty-second birthday. Dkt. 92-1 ¶ 1.

Nevertheless, Defendants rely upon the purported diploma to justify denying C.B. settlement relief while directing Movant to a separate proceeding that has already treated the diploma evidence as immaterial to an evidentiary ruling. The practical result is that the disputed diploma

classification remains unexamined in the manner Defendants suggest, while continuing to serve as the asserted basis for excluding C.B. from settlement benefits.

Movant does not request that this Court reverse Judge Coughenour's order or adjudicate the merits of the separate IDEA appeal. Rather, Movant respectfully asks this Court to consider whether Defendants' approach to settlement administration is consistent with the Settlement Agreement's requirement that denial of compensatory education based on receipt of a regular high school diploma occur "via appropriate procedures." Dkt. 92-1 ¶ 10.

Accordingly, Movant requests that the Court address this procedural impasse through its retained authority over settlement administration and enforcement, Dkt. 92-1 ¶ 16, including consideration of the requested Special Master or, alternatively, limited clarification concerning the records and procedures relied upon to exclude C.B. from settlement relief. This request concerns the administration of the settlement and does not seek a de facto appeal of the OAH decision in this proceeding.

**IV. CONCLUSION**

To ensure the class settlement is administered based on verified, calculated federal data rather than disavowed and mutually incompatible local keystrokes, Movant respectfully requests that the Court appoint a Special Master pursuant to Fed. R. Civ. P. 53 to audit and confirm C.B.'s state CEDARS exit code history (including File C and File K) alongside his calculated federal RMA exit coding under the FS009 schema.

DATED this 23nd day of October, 2026.
Respectfully submitted,

/s/ Mehdi Beygi, Pro Se Parent/Guardian and Next Friend of C.B.



Signature:
Plaintiff Pro Se / Court-Appointed Co-Guardian

5455 Highland Dr.
Bellevue WA 98006
425-272-5219