UNITED STATES DISTRICT COURT — WESTERN DISTRICT OF WASHINGTON
N.D., et al. v. Chris Reykdal, et al. | Case No. 2:22-cv-01621-LK

# INDEX OF SUPPORTING EXHIBITS

Movant submits these materials in connection with the Reply to Defendants' Response (Dkt. 145). Previously filed docket excerpts are reproduced for convenience; public agency materials and student educational records are identified separately.

| Exhibit | Document description | Record source / docket reference | Material fact / purpose |
|---|---|---|---|
| A | OSPI First Supplemental Answers to Interrogatories | Dkt. 35-3, pp. 36–37 (May 10, 2023) | District selects exit code; OSPI generally does not verify accuracy; one reason may not be exclusive. |
| B | Settlement Agreement, Final Approval Order, and OSPI Response excerpts | Dkt. 92-1, pp. 1–2; Dkt. 130, pp. 19–20; Dkt. 145, pp. 2, 4–6 | Class definition; IEP reconvening and appropriate procedures; retained jurisdiction. |
| C-1 | CEDARS School Student File (C) excerpt | OSPI CEDARS Manual, pp. 64–70 | Element C09, School Withdrawal Code. |
| C-2 | CEDARS Student Special Education Programs File (K) excerpt | OSPI CEDARS Manual, p. 37 | Element K09, Exit Reason Code; does not establish C.B. individual value. |
| C-3 | Federal EDFacts exiting categories | Wisconsin Department of Public Instruction reference | Federal exiting categories, including GHS and RMA; not proof of C.B. code. |
| D-1–D-6 | BSD IEP and Secondary Transition record excerpts | Six supplied BSD pages, Bates pp. 825–985 | CIA and modified-grading references; student-specific evidence, not judicially noticed facts. |
| E | Bellevue School District Policy 2410 — High School Graduation Requirements | BSD policy printout, revised Jan. 2025, updated Mar. 2026 | Current policy postdates June 2023; not conclusive of historical requirements. |
| F | Order Denying Motion to Admit Additional Evidence (complete four-page order) | Beygi v. Bellevue School District, No. 2:26-cv-01061-JCC, Dkt. 41 (Aug. 17, 2026), p. 3 | Judge Coughenour held proposed diploma evidence immaterial to evidentiary motion due to independent age-based ALJ finding; did not adjudicate diploma validity. |

## NOTE ON PUBLIC RECORDS AND COMPLETE RECORD VOLUMES

The complete OSPI CEDARS Data Manual is linked rather than reproduced. Attached excerpts are selected pages only. The Wisconsin reference concerns Wisconsin's published reporting categories and does not establish C.B.'s individual exit coding.

OSPI CEDARS Manual: https://ospi.k12.wa.us/sites/default/files/2023-08/2023_cedars_manual_spring_final_adav32923.pdf
Wisconsin DPI EDFacts: https://dpi.wi.gov/wise/data-elements/edfacts-exit-cats

Policy 2410 was revised after the June 2023 exit. The student IEP pages are evidentiary records, not public materials subject to judicial notice. Exhibit F is a judicial order offered to show the procedural ruling, not to establish the validity or invalidity of C.B.'s diploma.

Privacy caution: the original IEP pages include identifying student information. Review privacy, redaction, and sealing rules before public filing. Inclusion does not establish permission to supplement the record.

## SUPPORTING EXHIBIT

### Exhibit A — Prior filed sworn OSPI responses

Dkt. 35-3 pp. 36–37: district exit code selection, nonverification, D2/RMA distinction.

three school years" is undefined. Subject to and without waiving the foregoing objections, Defendants respond as follows.

In Washington, when a student who has an IEP and receives special education services as defined in Wash. Admin. Code § 392-172A-01175 exits the special education program, the student's school district is responsible for reporting to OSPI a reason for the student's exit, and only one reason may be reported even if multiple reasons exist. School districts choose their own codes to correspond to one of several possible reasons, and the school district selects and reports one. Generally, OSPI does not verify that a school district's use of a code is accurate. Moreover, a school district's code selection may not reflect any assessment by the school district that one reason for a student's exit is the exclusive reason. An assessment of the full scope of the reason or reasons for a student's departure from a school district would need to be conducted on a student-by-student basis using information that the school districts possess. Subject to those qualifications and based on the limited information in OSPI's possession, there are approximately 37 students who had IEPs, were receiving special education services as defined in Wash. Admin. Code § 392-172A-01175 when the student exited the reporting school district, exited the reporting school district in the 2020-21 or 2021-22 school years, and for whom the reporting school district assigned an exit code of "Reached Maximum Age" (RMA) for federal reporting purposes. The data published at https://www.k12.wa.us/sites/default/files/public/specialed/data/pubdocs/Wa_State_ExitingPartB_2020-2021.xlsx and https://www.k12.wa.us/sites/default/files/public/specialed/data/pubdocs/Wa_State_ExitingPartB_2021-2022.xlsx does not include four known students who were assigned an RMA exit code after June 2022. Districts have not yet reported data for the 2022-23 school year.

Defendants continue to investigate intra-state reporting codes different from the RMA exit code that could potentially include other students who had IEPs, were receiving special education services as defined in Wash. Admin. Code § 392-172A-01175 when the student exited



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

the reporting school district and exited the reporting school district in the 2020-21 or 2021-22 school years. Defendants will supplement their response to this Interrogatory if necessary.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 2:**

Defendants object to this Interrogatory as impermissibly vague, overbroad, and not relevant to any party's claim or defense, because the term "special education services" is undefined, the phrase "because they had turned 21 years of age" is ambiguous as to the causal role of an individual's turning 21 vis-à-vis other reasons for termination, and "past three school years" is undefined. Subject to and without waiving the foregoing objections, Defendants respond as follows.

In Washington, when a student who has an IEP and receives special education services as defined in Wash. Admin. Code § 392-172A-01175 exits the special education program, the student's school district is responsible for reporting to OSPI a reason for the student's exit, and only one reason may be reported even if multiple reasons exist. School districts choose their own codes to correspond to one of several possible reasons, and the school district selects and reports only one. Generally, OSPI does not verify that a school district's use of a code is accurate. Moreover, a school district's code selection may not reflect any assessment by the school district that one reason for a student's exit is the exclusive reason. An assessment of the full scope of the reason or reasons for a student's departure from a school district would need to be conducted on a student-by-student basis using information that the school districts possess. Defendants have identified two exit codes that could potentially relate to a student's exit due to age, among other potential reasons: (1) "Attended 4 years or more and did not graduate (student drops or ages out)" (D2) and (2) "Reached Maximum Age" (RMA). The RMA code is used for federal reporting purposes, but the D2 code is not. Subject to those qualifications and based on the limited information in OSPI's possession, there are approximately 154 students who had IEPs, turned 21 before the beginning of the next school year, were receiving special education services as defined in Wash. Admin. Code § 392-172A-01175 when the student exited the reporting



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# SUPPORTING EXHIBIT

## Exhibit B — Settlement and court order excerpts

Previously filed settlement excerpts and order addressing diploma procedures and individual remedies.

1. The Court shall certify a settlement class of all students in Washington who were exited from special education services due to age before their 22nd birthday between November 11, 2020 and the present."

2. The Court shall enter a declaration that the state's policy of aging students out of special education at the end of the school year in which they turn 21 pursuant to Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(c) presently violates the IDEA, has violated the IDEA at all times during the two years preceding the filing of this lawsuit, and will continue to violate the IDEA absent a substantial change in the state's policies for charging and waiving tuition for its adult secondary education programs.

3. OSPI shall direct local education agencies (LEAs) to extend age eligibility for special education services until the student's 22nd birthday.

4. OSPI shall direct LEAs to offer to immediately resume services under the last implemented IEP for each student who has not yet turned 22 who aged out during the pendency of the lawsuit.

5. Within five business days of the Court granting preliminary approval of this agreement, OSPI shall direct LEAs to provide individualized notice of this settlement to all students who were assigned an exit code of "RMA" or "D2" at any time in the two years preceding the filing of this lawsuit and up to the present. The template notice is attached as Exhibit A.

6. Within five business days of the Court granting preliminary approval of this agreement, OSPI shall publish notice of this settlement, including a link to the Court's order, on its website and in its regular bulletins. Such notice shall continue to be published for a period of at least 30 days following the Court's granting of final approval and judgment. The content of that notice is attached as Exhibit B.

7. OSPI shall send the same publication notice to The Arc of Washington State, the Washington Autism Alliance, and Disability Rights Washington, and shall agree to those organizations' re-publication of the notice.

8. The notice shall in all cases state that the students who exited their special education programs due to their age before their 22nd birthday in the two years preceding the filing of this lawsuit may be eligible for an award of compensatory education (and reinstatement if not yet 22 years old) under this settlement, subject to the recommendation of their IEP team or as may be ordered by the Court.

9. OSPI shall direct LEAs to reconvene IEP teams for all students in the class who wish to receive an award of compensatory education. Compensatory education shall be awarded to students in the class according to the recommendations of their IEP teams. If a student, IEP team, and LEA agree, a student may receive monetary compensation in lieu of compensatory education. Any class members who have paid privately for special education services after having been exited due to age from LEA-provided special education programs may seek reimbursement of such documented expenses, and OSPI shall direct LEAs to offer reimbursement of reasonable expenses in line with the prior recommendations of the class member's IEP team. OSPI shall direct LEAs that they may not decline to provide compensatory education on grounds of age for IEP services not provided to class members as a result of their exit prior to turning age 22. OSPI shall ensure through the exercise of its supervisory powers, to the extent authorized by law, that LEAs comply with these directions.

10. OSPI's direction to LEAs shall be without prejudice to the right or ability of LEAs to deny compensatory education via appropriate procedures either on the basis of having

received a regular high school diploma or lack of continuing need for services as of the time that services were withdrawn.



11. OSPI will further direct LEAs to report the number of students who have scheduled or attempted to schedule an IEP meeting by a specific date – at least thirty days prior to the planned fairness hearing.

12. Class members shall retain all rights to initiate a due process hearing or community complaint to challenge (a) any proposal or refusal to offer compensatory education by an LEA that has reconvened a class member's IEP team at OSPI's direction pursuant to this settlement and (b) any failure by an LEA to follow OSPI's direction to reconvene their IEP teams.

13. OSPI shall reimburse the guardians of E.A. for up to $60,000 in documented expenses incurred to provide him with private educational and related support services since he was exited from the Selah School District on August 31, 2023, and, in lieu of reinstatement in the Selah School District and to avoid further disruption, shall continue to fund those services through the end of the current school year on August 31, 2024.

14. OSPI shall directly pay for or reimburse the guardians of N.D. for up to $150,000 in documented expenses for educational services, including without limitation occupational therapy, vocational instruction/counseling, speech therapy, applied behavior analysis, tutoring, social activities, day programming, or any other services that could be available to special education students under the IDEA, including related services such as transportation; Plaintiffs will have up to five years from the entry of judgment to seek such services and will submit all claims for reimbursement within 90 days of the five-year period ending.

15. OSPI shall pay all Plaintiffs' reasonable attorney's fees and costs incurred in this action through the entry of the settlement decree by the Court, as well as for any guardian ad litem whose appointment the Court may require pursuant to LCR 17(c) or otherwise, and without prejudice to future applications for attorneys' fees incurred in connection with the administration or enforcement of the settlement.

16. The Court shall retain jurisdiction over the administration, consummation, enforcement, and interpretation of any approved settlement agreement, and any Court orders approving the settlement agreement for five years.

high school diploma because the student aged out. Dkt. No. 113 at 3. They note that although a school district may terminate a FAPE based on the receipt of a regular high school diploma, 34 C.F.R. § 300.102(a)(3), "this may only occur in Washington when the Student has also met 'regular high school graduation requirements.'" Dkt. No. 113 at 3 (quoting Wash. Admin. Code § 392-172A-02000(2)(b)). They also argue that "lack of continuing need" is not the correct standard. *Id.* at 4. Instead, "to discontinue services based on lack of need, a 'group of qualified professionals and the parent of the student, based on a reevaluation, [must] determine[s] the student is no longer eligible for special education services[.]'" *Id.* (quoting Wash. Admin. Code § 392-172A-02000(2)(a)). Defendants respond that "the right or ability of LEAs to stop providing special education services is established by federal regulation"; consequently, paragraph 10's "recognition of federal law does not harm the Student and cannot weigh against approval of the settlement." Dkt. No. 116 at 3. Plaintiffs agree that school districts are free to exit students from their special education programs before their twenty-second birthday based on something other than their age as long as they do so "via appropriate procedures." Dkt. No. 115 at 2 (quoting paragraph 10, Dkt. No. 92-1 at 1–2).

As Plaintiffs note, *id.* at 2–3, this provision is consistent with applicable federal and state law, *see, e.g.*, 34 C.F.R. § 300.102(a)(3) (requirement to provide a FAPE does not apply to students with disabilities who have graduated with "a regular high school diploma"); 34 C.F.R. § 300.102(a)(3)(iii) (requiring written notice before exiting a student based on receipt of a regular high school diploma); Wash. Admin. Code § 392-172A-02000(2)(b) (state requirements). By recognizing these standards, the Settlement Agreement does not supplant them or waive students' rights. Nor does it displace the federal and state procedural requirements imposed on districts before determining that a student is no longer in need of services. As Plaintiffs note, Dkt. No. 115 at 4, if a district fails to comply with federal or state law by exiting a student who has not met

graduation requirements, or who has a continued need for services, the class member may file for due process under paragraph 12 of the Settlement Agreement, Dkt. No. 92-1 at 2. *See also* Dkt. No. 116 at 2 (citing 34 C.F.R. § 300.507(a); Wash. Admin. Code § 392-172A-05080)). Furthermore, the Settlement Agreement is not binding on students, nor does it contain a release of claims. Students therefore remain free to file their own class actions or individual lawsuits to remedy any violation of law that is not addressed by this Settlement Agreement.

The objectors contend that paragraph 12's statement regarding class members' rights to initiate a due process hearing or community complaint fails to "remedy the substantive harm" caused by paragraph 10 because the school district may refuse to convene an IEP for students who received a diploma because they aged out, or because the statute of limitations may have run. Dkt. No. 113 at 4–5. As set forth above, paragraph 10 does not cause "substantive harm" because it does not negate class members' existing protections under state and federal law. Rather, as paragraph 12 states, they "retain all rights to initiate a due process hearing or community complaint to challenge (a) any proposal or refusal to offer compensatory education by an LEA that has reconvened a class member's IEP team at OSPI's direction pursuant to this settlement and (b) any failure by an LEA to follow OSPI's direction to reconvene their IEP teams." Dkt. No. 92-1 at 2. The objectors also raise the statute of limitations as a concern, Dkt. No. 113 at 5, but as Plaintiffs note, Dkt. No. 115 at 4–5, this action is not the proper vehicle to impose equitable tolling on the school districts, which are not defendants in this case. *See Defries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1097 (9th Cir. 2024) (explaining that "*American Pipe* tolling begins upon the filing of a putative class action complaint, which 'commences a suit and thereby notifies *the defendants* not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.'" (emphasis added;

## II. BACKGROUND

In June 2025, this Court approved a class settlement (Settlement) in this case for a class consisting of "[a]ll students who were exited from special education services due to age before their 22nd birthday between November 11, 2020 and the present." Dkt. # 130 at p. 7. In accordance with the Settlement, the Office of Superintendent of Public Instruction (OSPI) directed Local Education Agencies (LEAs) (*e.g.*, School Districts) to send class settlement notices to former students who were assigned exit codes RMA or D2 by their LEAs indicating that the students had aged out or dropped out of special education services. Dkt. # 100 ¶ 6. Bellevue School District sent C.B. a settlement notice even though he had graduated and had been assigned an exit code G0 for having graduated. Dkt. # 141-1 at pp. 6-7. The class definition does not include students who exited special education services after receiving a regular high school diploma regardless of whether the students received settlement notices or the exit codes assigned to those students. To that point, the updated settlement notice this Court ordered stated that "recipients of regular high school diplomas are not eligible to receive compensatory education, even if at some point they were assigned an exit code of RMA or D2." Dkt. # 108-1 at p. 1; Dkt. # 109.

As required, OSPI directed LEAs to reconvene Individualized Education Program (IEP) teams for all students in the class who wish to receive an award of compensatory education. Dkt. # 130 at pp. 7-8. Consistent with federal and state law, the Settlement provides that OSPI's direction to the LEAs is "without prejudice to the right or ability of LEAs to deny compensatory education via appropriate procedures either on the basis of having received a regular high school diploma or lack of continuing need for services as of the time that services were withdrawn." *Id.* at pp. 8, 18-19 (citing Dkt. # 92-1 at pp. 1-2). Importantly, however, the class settlement does not include a release of claims and expressly provides that class members retain all rights to initiate a due process hearing or community complaint to claim that LEAs failed to follow OSPI's direction. *Id.* at p. 20.



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

years before the IEP meeting request. *Id.* at p. 8. OSPI, however, clarified its ruling did not address whether Bellevue School District had issued a proper regular high school diploma to C.B. since that issue fell outside the one-year Community Complaint timeline and was already the subject of a pending due process proceeding before an administrative judge. *Id.* at p. 3 n.2; *see* 34 C.F.R. § 300.153(c) (limiting the complaint process to violations "that occurred not more than one year prior to the date the complaint is received"); 34 C.F.R. § 300.152(c) (issues alleged in both community complaint and due process hearing must be resolved in due process hearing); *see also* Wash. Admin. Code §§ 392-172A-05025(2)(d), -05035(1). OSPI further noted that "if the administrative judge finds that [C.B.'s] graduation was not proper and finds the [Bellevue School] District in violation, then [C.B.] will be able to access remedies in that venue." Dkt. # 141-1 at p. 7 n.6.

Since January 2026, Movant has filed several motions in this case each predicated on Movant's claim that C.B. is a member of the class because—contrary to the OAH judge's ruling—Bellevue School District issued C.B. an improper diploma. Dkt. ## 134, 138, 139, 140. Movant has persisted even after this Court ruled "[Movant's] contention that C.B. was prematurely exited from his special education services because he was improperly issued a regular high school diploma is beyond the scope of this case" and that he "cannot pursue a de facto appeal of OAH's decision in this case." Dkt. # 137 at p. 5.

## III. ARGUMENT

In this latest Motion, Movant seeks the appointment of a special master to audit and inspect C.B.'s exit code records, which Movant wrongly claims as the reason the Bellevue School District did not provide C.B. with compensatory education under the Settlement. Motion at 2, 3. Movant's Motion is predicated on a basic misunderstanding of the Settlement and the role of exit codes. Contrary to Movant's premise, C.B.'s exit code does not determine whether he is a member of the class and OSPI has never suggested otherwise.

As noted, the settlement class is not defined based on the exit codes School Districts assign to their students.[2] Dkt. # 130 at p. 7. Rather, exit codes were only utilized in the Settlement for determining which students LEAs were required to send notice. *Id.* at p. 12. If a student had been assigned a different exit code, but still met the class definition, then such student would be part of the class. It is for this reason that the Settlement did not limit notice to only being provided to students with specific exit codes. Instead, the Settlement also required OSPI to provide notice on its website and for OSPI to provide a copy of the notice to Washington non-profit groups providing services to young adults with disabilities, so that other potential class members could be informed. *Id.* at pp. 12-13.

Here, Movant's assertions that C.B. was not provided with compensatory education under the Settlement based on exit codes are false. Bellevue School District did not conduct an IEP meeting with C.B. because he had already graduated and received a high school diploma. Dkt. # 141-1 at pp. 5-6. After Movant filed an SECC challenging that decision, OSPI determined based on the information properly before it that "even if [Bellevue School District] had held an IEP meeting, [C.B.] would not have been eligible to receive compensatory education through this process because he had graduated." Dkt. #141-1 at p. 8.

Thus, C.B. was excluded from class settlement relief because he exited special education services after receiving a high school diploma—not based on his assigned exit code. Contrary to Movant's claim, OSPI has never suggested C.B.'s exit code "conclusively proves C.B. earned a[] [regular high school diploma], foreclosing [s]ettlement benefits." Motion at 3. While OSPI noted in its SECC ruling that Bellevue School District had assigned C.B. the exit code "G0" for having graduated that mention was in reference to the School District erroneously sending C.B. a settlement notice "which likely caused confusion." Dkt. # 141-1 at pp. 7-8. Further OSPI was not making a "conclusive" determination on whether C.B. received a proper regular high school

---

[2] Movant appears to incorrectly presume that exit codes are assigned or revised by OSPI rather than School Districts. *See* Dkt. # 35-3 at p. 36. OSPI has no record of any change having been made to C.B.'s exit code only that the Bellevue School District sent C.B. a settlement notice despite C.B. having been assigned the G0 exit code.



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

diploma. OSPI expressly stated in the decision that it was not deciding whether the diploma C.B. received was proper because that issue fell outside the SECC's one-year time frame and was already covered by the pending due process proceeding before the OAH. *Id.* at pp. 3 n.2, 7 n.6. Whether C.B. received a proper regular high school diploma has been a question for the OAH judge and now Judge Coughenour—not OSPI.

## IV. CONCLUSION

This Court should reject Movant's latest attempt to adjudicate his ongoing dispute with the Bellevue School District over whether C.B. received a proper regular high school diploma in this case. Movant's Motion should be denied.

DATED this 6th day of October 2026.

NICHOLAS W. BROWN
Attorney General

*s/ S. Todd Sipe*
S. TODD SIPE, WSBA #23203
Assistant Attorney General
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
Todd.Sipe@atg.wa.gov
Attorneys for Defendants Chris Reykdal and
Office of Superintendent of Public Instruction

I certify that this memorandum contains 1,731 words, in compliance with the Local Civil Rules.

## SUPPORTING EXHIBIT

### Exhibit C-1 — CEDARS File C codes

User-supplied excerpts of the public OSPI CEDARS manual; official full manual URL in reply.

## School Student File (C)

**File Name:** SchoolStudent

**Description:** This file consists of a record(s) for each student of the enrollment data associated with each entry and exit for every school that served the student within the current school year. A student should have a record for each enrollment. Multiple enrollment records within one school will be necessary if the student enters, exits and re–enters a school. Entry and exit dates may not overlap for individual students.

**Sample File Name:** 12345_0000_SchoolStudent_20210901_20212022.txt

### Element C01 – School Year

**Field Name:** SchoolYear
**Data Type:** char
**Size:** 4
**Allow NULL?** No. Data is required.
**Description:** The four–digit year in which the school year ends.
**Business Rules:** For the 2021-22 school year, report 2022.
**Example:** 2022
**Valid Values:** 2022
**Validations:** 69, 356
**Last Updated:** February 2018

### Element C02 – Serving County District Code

**Field Name:** ServingCountyDistrictCode
**Data Type:** char
**Size:** 5
**Allow NULL?** No. Data is required.
**Description:** The serving county district code for the district submitting the data. This is the unique 5–digit number that combines the 2–digit county code and the 3–digit district code.
**Business Rules:** Must be a valid value from EDS. This will appear as a numeric value and should include leading zeros even though this is submitted as a character data type. Report the code representing the district as assigned by OSPI in EDS.
**Example:** 12345
**Valid Values:** Refer to valid values, located at https://eds.ospi.k12.wa.us/DirectoryEDS.aspx.
**Validations:** 70, 82, 223, 304
**Last Updated:** January 2015

### Element C03 – District Student ID

**Field Name:** DistrictStudentId
**Data Type:** varchar
**Size:** 50
**Allow NULL?** No. Data is required.

**Description:** This is the student identifier assigned by the local education agency to the student. This data element is used in the matching of district data with records in CEDARS.

**Business Rules:** The value is unique within the school district. The value can be any combination of alpha and/or numeric values up to fifty characters in length. This ID should follow the student throughout their enrollment within the district and should not be reassigned to another student.

**Example:** 123456789012 or 124 or TG096

**Validations:** 71, 224, 304, 325

**Last Updated:** September 2007

**Element C04 – State Student ID (SSID)**

**Field Name:** SSID

**Data Type:** char

**Size:** 10

**Allow NULL?** No.

**Description:** Randomly generated number that functions as a unique student identifier for each Washington public school student. This number is assigned by OSPI.

**Business Rules:** SSID values must be exactly 10 digits in length and only contain numeric values.
SSID numbers must not begin with a zero.
Uploading two or more student records from the same district with identical SSIDs, but with different District Student IDs, will trigger an exception error.
Students who are home schooled and receive services through the school district (Running Start, special education, etc.) shall be issued an SSID number and reported in CEDARS.

**Example:** 1234567890

**Validations:** 72, 570, 571, 735, 1088

**Last Updated:** January 2015

**Element C05 – Location ID**

**Field Name:** LocationId

**Data Type:** varchar

**Size:** 4

**Allow NULL?** No. Data is required.

**Description:** The Location ID for the school as generated by the district's Student Information System (SIS).

**Business Rules:** This is an internal number generated by the district and is required.
If you do not have an ID assigned to this field, report OSPI school code reported in Element A05 – School Code.
The ID reported in Element C05 must be included in the Location File A.

**Example:** 1234

**Validations:** 73, 225, 304, 326, 570, 571, 735, 1088

**Last Updated:** September 2007

**Element C06 – Date Student Enrolled in School**

**Field Name:** SchoolEnrollmentDate
**Data Type:** date
**Allow NULL?** No. Data is required.
**Description:** The date on which the student began school.
**Business Rules:** Date should be formatted as MM/DD/YYYY. This date must be equal to or greater than the date contained in Element B14 – Date Enrolled in District.
If during this current school year, the student exits the school and then returns, the date the student returned to the school and resumed participation in class becomes the school enrollment date. The school enrollment date shall be reported in the current school year in which the enrollment occurred.
If the student exits and returns one or more times within a current school year, all of the entry/exit dates shall be reported (requires multiple entries for the student).
If a student has multiple records the Date Student Enrolled in School may not overlap with another record for the student.
If the student enrolls during the summer when school is not in session, use the date the student will begin classes (the first day of the current school year) as the school enrollment date.
The enrollment date must be on or after Element B09 – Birth Date. The Annual Measurable Objectives (AMOs) half year enrollment requirement is calculated using Element C06 and Element C08 – Date Student Exited from School.
**Example:** 01/01/2000
**Validations:** 74, 226, 227, 232, 304, 434, 477, 771, 801
**Last Updated:** October 2021

**Element C07 – No Longer An Active Data Element**

**Field Name:** SchoolEntryCode
**Description:** This data element is no longer collected through CEDARS
**Last Updated:** February 2017

**Element C08 – Date Student Exited from School**

**Field Name:** SchoolExitDate
**Data Type:** date
**Allow NULL?** Yes. Conditional.
**Description:** The date on which the student withdraws from the school. The last day the student attended or received services from the school. This date will change each time a student leaves the school.
**Business Rules:** Date should be formatted as MM/DD/YYYY. This date must be equal to or greater than the date in Element C06 – Date Student Enrolled in School.
If the student exits during the summer, use the actual date on which the student left the school.
If the student enters and exits the school on the same date, the same date is used in Element C06 – School Enrollment Date and C08 – School Exit Date. If

| | |
|---|---|
| | C08 – School Exit Date is reported for student, information must be provided for Element C09 – School Withdrawal Code.<br>If the student is also leaving the district Element B15 – Date Exited from District must also be provided.<br>The Annual Measurable Objectives (AMOs) half year enrollment requirement is calculated using Element C08 and Element C06 – Date Student Enrolled in School. |
| **Example:** | 01/01/2000 |
| **Validations:** | 76, 227, 228, 232, 304, 369, 434, 477, 763, 771, 801 |
| **Last Updated:** | October 2021 |

**Element C09 – School Withdrawal Code**

| | |
|---|---|
| **Field Name:** | SchoolWithdrawalCode |
| **Data Type:** | varchar |
| **Size:** | 2 |
| **Allow NULL?** | Yes. Conditional. |
| **Description** | When a student is withdrawn from the school, this element contains the code identifying the type/reason for the withdrawal. |
| **Business Rules** | If the student has withdrawn from the school, the valid value reported must be a valid value from School Withdrawal Codes, Appendix M. Use the numeric character 0 for zero, not the letter O.<br>If the value in Element C09 is C2, the student must be identified in Element I06 – Attribute or Program Code with a valid value of 36 - Disability, have a disability code reported in Element I10 – Qualification Code and the student must be included in the Student Special Education Programs File K.<br>If a valid value is reported in Element C09, then Element C08 – Date Exited from School, is required. If valid value reported is any valid value other than T1 – Confirmed Transfer out of school within district, then Element B15 – Date Exited from District, is also required and must contain the same date as that reported in Element C08. |
| **Example:** | G0 |
| **Valid Values:** | Refer to the valid values in Appendix M, found in the CEDARS Appendices, located at www.k12.wa.us/data-reporting/reporting/cedars. |
| **Validations:** | 77, 228, 230, 369, 607, 609 |
| **Last Updated:** | January 2014 |

**Element C10 – Is this the School that is Primarily Responsible for the Student?**

| | |
|---|---|
| **Field Name:** | IsPrimarySchool |
| **Data Type:** | char |
| **Size:** | 1 |
| **Allow NULL?** | No. Data is required. |
| **Description:** | Indicates whether or not this is the school with primary responsibility for the student. |
| **Business Rules:** | Each student must have only one school of primary responsibility designated at any point in time during the academic school year. For students who attend |

only one school in the state of Washington, that one school is the school primarily responsible for the student.

For students who move from one school to another school in the same reporting period, it is possible that two or more records will be submitted indicating more than one school as the primary school for a given student. In this case, entry and exit dates should not overlap for each of the schools flagged as being a school of primary responsibility. The school entry and exit dates (Element C06 and Element C08) for each of the schools will be used to determine that the records are not in error.

There are cases where a student attends more than one school in the state of Washington simultaneously, and following are some guidelines to assist you in determining which school to flag as the school primarily responsible for the student.

- If a student receives services in another district (part time or full time) by way of an inter–district agreement, the inter–district agreement must specify who is to claim primary responsibility.
- If a student attends two schools within the same district, the district determines which school shall report primarily responsibility for the student's education. This can be done by choosing the school that is geographically located closest to the student's residence, or by another method that the district deems acceptable.
- If a student attends a skill center, the student's sending high school is reported as the student's school of primary responsibility. Note: a student cannot attend only a skill center; they must be assigned to a high school.
- If a student is enrolled in an online school, defined as a school in which more than half of both the course content and teaching are conducted online, this data element is coded 'Y' only when the online school is, in fact, the student's school of primary responsibility.
- If a student participates in Running Start full time, the school s/he is enrolled in, and would attend if not participating in Running Start, is the school of primary responsibility.

**Example:** Y
**Valid Values:** N – No
Y – Yes
**Validations:** 78, 232, 365
**Last Updated:** September 2010

**Element C11 – School Choice Code**

**Field Name:** SchoolChoiceCode
**Data Type:** int
**Allow NULL?** No. Data is required.
**Description:** Indicates whether or not the student is attending a school as a result of the school choice option as defined under federal accountability, either because their prior school did not meet accountability or is deemed "persistently dangerous".

Any child who has been the victim of a violent crime on the grounds of his or her school is also eligible for school choice (Title IX, section 9532 of ESEA). Note: Students enrolled based on an inter-district agreement should not be reported as "school choice."

**Business Rules:** If the student is enrolled under school choice due to Public School Choice or Persistently Dangerous Schools an appropriate valid value of 1 or 2 must be reported. If the student has enrolled in your district, after being released from their original district, under Student Enrollment Options a valid value of 3 – Student Enrollment Options (State Law) must be reported.

**Example:** 1 or 01

**Valid Values:** 0 – Not Applicable

1 – School Choice (Federal requirement). Parents have selected this school because the student's school has failed to meet accountability requirements as defined under federal accountability.

2 – Persistently Dangerous Schools (Federal requirement). Parents have selected this school because the student's school of geographic residence has been identified as "Persistently Dangerous" as defined under federal accountability.

3 – Student Enrollment Options (State Law) Parents have selected this district and school because the student/parents choose to have the student attend school in another district based on the provisions of RCW 28A.225.310.

**Validations:** 79, 233

**Last Updated:** February 2018

## Element C12 – Cumulative Days Present this Enrollment Period

**Field Name:** CumulativeDaysPresent

**Data Type:** int

**Allow NULL?** No. Data is required.

**Description:** The total cumulative number of days the student has been present and in attendance in this enrollment period for this school.

**Business Rules:** Must be a positive number less than or equal to 366. For this purpose, enrollment period is defined as the first day of enrollment in this school, during this school year, through the end of the reporting period. If the student enrolls in a school multiple times in the same school year, report only from the first day of the most current enrollment within this school year. This total is a cumulative total number, and the total should reflect any corrections made to the student's enrollment and attendance that have been made since the last reporting submission.

**Example:** The student enrolled on October 5th and continued the enrollment through the end of November. There are 30 school days between October 5th and November 30th, and the student was absent 6 days. This element should then reflect 24 (30 school days – 6 days absent).

The student enrolled on October 1st and continued enrollment through the end of the school year. The first submission including the student was done October

7th, representing 5 school days, and the student was absent 1 day during this time period. This element should then reflect 4 school days (5 school days – 1 absent). A later submission, e.g., November 27th, would show a larger number of school days.

**Validations:** 234, 526

**Last Updated:** January 2013

**Element C13 – No Longer An Active Data Element**

**Field Name:** NumUnexcusedAbsence

**Description:** This data element is no longer collected through CEDARS

**Last Updated:** February 2012

**Element C14 – Confirmed Transfer In**

**Field Name:** ConfirmedTransferIn

**Data Type:** char

**Size:** 1

**Allow NULL?** Yes. Conditional.

**Description:** Identifies where the student transferred in from when entering a school.

**Business Rules:** If, prior to this enrollment, the student last attended school outside of Washington state a valid value of 1 – Transfer in from outside of Washington state should be reported.

If, prior to this enrollment, the student last attended private-school within Washington State, a valid value of 2 – Transfer in from private-school in Washington state should be reported.

If, prior to this enrollment, the student last attended home-school within Washington State, a valid value of 3 – Transfer in from home-school in Washington state should be reported.

For all other situations, this element should be left blank.

Outside of Washington State includes but is not limited to enrollment in any school in another US State, outside of the United States, and on a military installation outside of Washington State.

**Example:** 1

**Valid Values:**
1 – Transfer in from outside of Washington state
2 – Transfer in from private-school in Washington state
3 – Transfer in from home-school in Washington state

**Validations:** 782, 783

**Last Updated:** February 2018

## SUPPORTING EXHIBIT

### Exhibit C-2 — CEDARS File K / K09

User-supplied excerpt of the special-education program exit-reason field.

**Student Special Education Programs File (K)**

| Key | | Column Name | Data Type | Required? |
|---|---|---|---|---|
| Yes | K01 | School Year | char(4) | Yes |
| Yes | K02 | Serving County District Code | char(5) | Yes |
| | K03 | District Student ID | varchar(50) | Yes |
| Yes | K04 | SSID | char(10) | Yes |
| | K05 | Location ID | | Element is inactive. |
| | K06 | LRE Code | numeric | Yes. If Element K14 is not NULL, then data must be entered. |
| | K07 | Initial Washington Service Date | | Element is inactive. |
| | K08 | Exit Date | date | Conditional. An Exit Date must be entered if data Element K09 is not NULL. |
| | K09 | Exit Reason Code | char(1) | Conditional. If Element K08 is not NULL, then data must be entered. |
| | K10 | Referral Date | | Element is inactive. |
| | K11 | Initial Eligibility Date | | Element is inactive. |
| | K12 | Last IEP Review Date | | Element is inactive. |
| | K13 | Last Evaluation Date | | Element is inactive |
| Yes | K14 | Program Start Date | date | Yes |
| | K15 | Non-Public Agency | int | Conditional. Required if Element K06 is 11. |
| | K16 | PreK Positive Social-Emotional Skills - Entry | int | Conditional. Required if Element B13 is PK. |
| | K17 | PreK Acquisition and Use of Knowledge/Skills - Entry | int | Conditional. Required if Element B13 is PK. |
| | K18 | PreK Appropriate Behaviors and Skills - Entry | int | Conditional. Required if Element B13 is PK. |
| | K19 | PreK Positive Social-Emotional Skills - Exit | int | Conditional. Required if Element B13 is PK. |
| | K20 | PreK Positive Social-Emotional Skills - Progress | int | Conditional. Required if Element B13 is PK. |
| | K21 | PreK Acquisition and Use of Knowledge/Skills - Exit | int | Conditional. Required if Element B13 is PK. |
| | K22 | PreK Acquisition and Use of Knowledge/Skills - Progress | int | Conditional. Required if Element B13 is PK. |
| | K23 | PreK Appropriate Behaviors and Skills - Exit | int | Conditional. Required if Element B13 is PK. |
| | K24 | PreK Appropriate Behaviors and Skills - Progress | int | Conditional. Required if Element B13 is PK. |
| | K25 | Date of Annual IEP Meeting | date | Yes |

**Student Ethnicity File (L)**

| Key | | Column Name | Data Type | Required? |
|---|---|---|---|---|
| Yes | L01 | School Year | char(4) | Yes |
| Yes | L02 | Serving County District Code | char(5) | Yes |

## SUPPORTING EXHIBIT

### Exhibit C-3 — EDFacts categories

User-supplied excerpt of federal exit reporting categories; Wisconsin public agency URL in reply.

## Special Education EDFacts Federal Exiting Categories: WISEdash



EDFacts Federal Exiting Categories provide specific categories for students with disabilities (IDE/ who are ages 14-21, who were in special education at the start of a reporting period, who were a not in special education at the end of a reporting period.

This data element is a calculated field (i.e., it is not submitted directly) derived from "Reason Exi Special Education" and "Exit Type" along with various /sSEPA dates.

The table below shows the EDFacts Federal Exiting Category names:

**EDFacts Federal Exiting Category Names**

| Code | Permitted Value Description | Comments (if any) |
|---|---|---|
| GHS | Graduated with a regular high school diploma | |
| GRADALTDPL | Graduated with an alternative diploma | |
| RC | Received a certificate | |
| RMA | Reached maximum age | |
| MKC | Moved, known to be continuing | |
| TRAN | Transferred to regular education | |
| DROPOUT | Dropped out | |
| D | Died | |
| MISSING | Missing | Use this category when data are not availabl |

A)
lso

ted

e

## SUPPORTING EXHIBIT

### Exhibit D-1 — IEP / transition record

Original Bellevue School District IEP/transition excerpt, file 2025-06-05T20_51_35.000Z_64 856 CIA.pdf. Source page preserved as received.

**Cyrus Beygi**
Student ID: 124519
WA SSID: 2087738647
Date of Birth: 05/03/2002

Page 856

**Bellevue School District**
12111 NE First St
P.O. Box 90010
Bellevue, WA 98005
(425) 456-4144

## Individualized Education Program (IEP) Cover Page (Review)

Comments:

Cyrus is on-track to graduate in June 2021.

Cyrus is working towards a Certificate of Individual Achievement (CIA). He is designated as modified grading in his general education classes.

If the parent did not attend, what method was used to ensure their participation:

## SUPPORTING EXHIBIT

### Exhibit D-2 — IEP / transition record

Original Bellevue School District IEP/transition excerpt, file 2025-06-05T20_51_35.000Z_64 866.pdf. Source page preserved as received.

**Cyrus Beygi**
Student ID: 124519
WA SSID: 2087738647
Date of Birth: 05/03/2002

Page 866

**Bellevue School District**
12111 NE First St
P.O. Box 90010
Bellevue, WA 98005
(425) 456-4144

## Secondary Transition

Meeting Date: 03/06/2019

**PURPOSE:** The purpose of transition planning is to develop a coordinated set of activities designed within a results-oriented process that is focused on improving the academic achievement and functional performance of the student in order to facilitate the student's movements from school to post-school activities, including postsecondary education, training, employment, and if appropriate, independent living skill.

**Projected Graduation / Exit Date:** 06/20/2022

**Comments:**

Cyrus is on-track to graduate in June 2021.

Cyrus is working towards a Certificate of Individual Achievement (CIA). He is designated as modified grading in his general education classes.

### I. Post Secondary Goals/Outcomes

*Define and project the desired post-secondary goal as identified by the student, parent, and IEP team in the available content areas. Transition Services may be special education, if provided as specifically designed instruction or related services. These services would be included in the Service Matrix section of the IEP.*

| Content Area: Education/Training | |
|---|---|
| Upon leaving public school, Cyrus will attend a 2 year college and study computer technology | |
| **Transition Services** | **Staff / Agency Responsible** |
| Cyrus will use his college days to research different colleges that major in computer science. | Bellevue School District |

| Content Area: Employment | |
|---|---|
| Upon leaving public school, Cyrus will Cyrus will gain employment in the field of computer science. | |
| **Transition Services** | **Staff / Agency Responsible** |
| Cyrus will use his targeted academic Skills class to research different college that majors in computer science. | Bellevue School District |

### II. Course of study

*A multi-year description of coursework to achieve the student's desired post secondary goals, from the student's current year to anticipated exit year.*

Course of Study related to Post-secondary Goal

College Preparation: Academics, Special skills training, community involvement, career awareness activities

Graduation Requirements

| Subject | Semesters | Credits |
|---|---|---|
| English* | 8 | 4.0 |
| Mathematics | 6 | 3.0 |
| Social Studies* | 7 | 3.5 |
| Science | 6 | 3.0 |
| *At least 2.0 credits (4 semesters) need to be lab science | | |
| CTE | 2 | 1.0 |
| PE | 3 | 1.5 |
| Fine Arts | 4 | 2.0 |
| *1.0 credit (2 semesters) can be PPR | | |
| Health | 1 | 0.5 |
| World Language OR Personalized Pathway Requirements (PPR) | 4 | 2.0 |
| Electives | 7 | 3.5 |
| Total | 48 | 24 |

**Personalized Pathway Requirement (PPR) are related courses that lead to a specific post high school career or educational

## SUPPORTING EXHIBIT

### Exhibit D-3 — IEP / transition record

Original Bellevue School District IEP/transition excerpt, file 2025-06-05T20_51_35.000Z_64 867.pdf. Source page preserved as received.

**Cyrus Beygi**
Student ID: 124519
WA SSID: 2087738647
Date of Birth: 05/03/2002



**Bellevue School District**
12111 NE First St
P.O. Box 90010
Bellevue, WA 98005
(425) 456-4144

## Secondary Transition

outcome chosen by the student based on the student's interests and High School and Beyond Plan, that may include Career and Technical Education and are intended to provide a focus for student's learning. Students may have up to 3 PPR courses.

Non Credit Requirements:
1. Washington State History (typically completed in middle school) - MET in Middle School
2. High School and Beyond Plan
3. 40 hours of Community Service
4. Students must earn a 2.0 cumulative Grade Point Average

State Assessments:
1. High School English Language Arts Smarter Balanced Assessment (SBAC) (or state approved alternative)
2. High School Washington Comprehensive Assessment of Science (WCAS)
3. High School Math Smarter Balanced Assessment (SBAC) (or state approved alternative)

**

Students must meet standard on the state testing requirements. Students that qualify with IEP goals can meet standard with state approved alternative assessments. Students that pass with a basic proficiency level (Level 2) score on the state required exams or meet standard on a developmentally appropriate alternative assessment will to earn a Certificate of Individual Achievement (CIA) rather than the standard Certificate of Academic Achievement (CAA). Students will have several opportunities to retake all or portions of state assessments that they do not initially pass.

Students with IEPs will take classes that meet graduation requirements, courses that provide instruction in goal areas, and electives of interest. Students have the opportunity to take 7 credits per school year.

Multi Year Course of Study

10th Grade Year
T. English 10 (1.0)
World History (1.0)
T. Pre-Algebra 2 (1.0)
Chemistry (1.0)
Health (0.5)
Social Skills (1.0)
Targeted Academic Skills (1.0)
Electives of Interest (0.5)

*The team should consider how/if Cyrus will work towards 2.0 credits of foreign language or 2.0 credits in personal pathway.

11th Grade Year
T. English 11 and/or co-taught American Literature (1.0)
US History (1.0)
T. Pre-Algebra 3 and/or co-taught Algebra 1 (1.0)
Social Skills (1.0)
Science (1.0)
Targeted Academic Skills or elective (1.0)
Foreign Language OR PPR (1.0)

12th Grade Year
Targeted English 12 and/or Co-Taught Senior English (1.0)
Government/Cont World (1.0)
T. Pre-Algebra 4 or Co-Taught Algebra 1 or Geometry(1.0)
Social Skills (1.0)
Foreign Language OR PPPR (1.0)
Targeted Academic Skills or elective (1.0)
Electives of Interest (1.0)

It is recommended Cyrus continue placement in Targeted English, Targeted Pre-Algebra and Social Skills in order to receive services in written expression, reading, math, and social.

## SUPPORTING EXHIBIT

### Exhibit D-4 — IEP / transition record

Original Bellevue School District IEP/transition excerpt, file 2025-06-05T20_51_35.000Z_64 985.pdf. Source page preserved as received.

**Cyrus Beygi**

Student ID: 124519
WA SSID: 2087738647
Date of Birth: 05/03/2002



**Bellevue School District**
12111 NE First St
P.O. Box 90010
Bellevue, WA 98005
(425) 456-4144

## Secondary Transition

Meeting Date: 02/09/2022

**PURPOSE:** The purpose of transition planning is to develop a coordinated set of activities designed within a results-oriented process that is focused on improving the academic achievement and functional performance of the student in order to facilitate the student's movements from school to post-school activities, including postsecondary education, training, employment, and if appropriate, independent living skill.

**Projected Graduation / Exit Date:** 06/20/2023

**Comments:**

Cyrus is attending, and can remain in, the Evergreen Transition Program until the year that he turns age 21. Cyrus is projected to graduate in June of 2023, or earlier if deemed appropriate by the IEP team.

### I. Post Secondary Goals/Outcomes

*Define and project the desired post-secondary goal as identified by the student, parent, and IEP team in the available content areas. Transition Services may be special education, if provided as specifically designed instruction or related services. These services would be included in the Service Matrix section of the IEP.*

| Content Area: Education/Training | |
|---|---|
| Upon leaving public school, Cyrus will attend a skills-based education program at a community college to study computer science. | |
| **Transition Services** | **Staff / Agency Responsible** |
| Cyrus will have school and community-based instruction that will help him gain supported employment. He began volunteering at Jubilee Reach Thrift Store in January 2022. Between October 2021 and December 2021 he volunteered in the Bellevue School District Copy Center. He has also been creating Covid-19 test kits for the Bellevue School District since October 2021. | Bellevue School District |

| Content Area: Employment | |
|---|---|
| Upon leaving public school, Cyrus will will have a job (supported through a job coach) related to technology (e.g. work at a major technology company, etc.). | |
| **Transition Services** | **Staff / Agency Responsible** |
| Cyrus will have on-the-job training to develop skills to work in the IT setting. Cyrus will participate in Job Foundations/School-to-Work program while attending the Evergreen Transition Program. In the School-to-Work program, Cyrus will receive 1:1 job coaching. | At-Work |

| Content Area: Independent Living | |
|---|---|
| Upon leaving public school, Cyrus will independently ride the Metro bus. | |
| **Transition Services** | **Staff / Agency Responsible** |
| Cyrus will receive specially designed instruction regarding transportation which will include protocols and safety for riding the bus, reading bus schedules, and other instruction as related to transportation. | Bellevue School District |

### II. Course of study

*A multi-year description of coursework to achieve the student's desired post secondary goals, from the student's current year to anticipated exit year.*

Cyrus will have social/emotional, adaptive, behavior, written expression, reading, math, and communication instruction related to pre-vocational and vocational skills. He will also have school-based internships that lead to internships in the community. These are skills that he needs to be successful in post-secondary education, independent living, and employment endeavors. Cyrus will earn at least 24 credits in order to graduate, however, traditional credit requirements in English, Health, Social Studies, Lab Sciences, and Fine Arts will be waived in order to provide intensive instruction in adaptive, social/emotional, and communication skills. Because of the emphasis on community based internships, the 40 hours of community service will be easily attained while he works creating Covid-19 testing kits for Bellevue School District, and other job site assignments. To help the student generalize the skills across a variety of settings, instruction and practice will be provided in school and community settings with modified grading. Cyrus's projected graduation date is June 2023 in order to provide sufficient time for mastery of skills. (He can graduate before age 21 after he has connected with the appropriate adult agencies). The extended graduation date will also provide time to connect to adult agencies that can support him in accomplishing his post-secondary goals. He will earn a CIA and will earn a diploma based on the standards of the certificate of individual achievement and on the standards listed above.

Cyrus has passed all required state and district assessments for graduation. Cyrus completed and passed Math, Reading and Writing WA-AIM testing while attending Bellevue High School. There are no additional state or district assessments in the Transition Program. Additionally, Cyrus also completed an alternate graduation pathway while attending high school

Cyrus will attend the Evergreen Transition Program until June of the school year he turns 21 years old.

### III.Other Transition Details

## SUPPORTING EXHIBIT

### Exhibit D-5 — IEP / transition record

Original Bellevue School District IEP/transition excerpt, file 2025-06-05T20_51_35.000Z_64 _ CIA.pdf. Source page preserved as received.

**Cyrus Beygi(Cyrus)**
Student ID: 124519
WA SSID: 2087738647
Date of Birth: 05/03/2002

**Bellevue School District**
12111 NE First St
P.O. Box 90010
Bellevue, WA 98005
(425) 456-4144

## Secondary Transition

Meeting Date: 03/07/2018

**PURPOSE:** The purpose of transition planning is to develop a coordinated set of activities designed within a results-oriented process that is focused on improving the academic achievement and functional performance of the student in order to facilitate the student's movements from school to post-school activities, including postsecondary education, training, employment, and if appropriate, independent living skill.

**Projected Graduation / Exit Date:** 06/25/2021

**Comments:**

Cyrus is on-track to graduate in June 2021.

Cyrus is working towards a Certificate of Individual Achievement (CIA). He is designated as modified in his general education classes.

### I. Post Secondary Goals/Outcomes

*Define and project the desired post-secondary goal as identified by the student, parent, and IEP team in the available content areas. Transition Services may be special education, if provided as specifically designed instruction or related services. These services would be included in the Service Matrix section of the IEP.*

| Content Area: Education/Training | |
|---|---|
| Upon leaving public school, Cyrus will attend a 2 year college to study technology | |
| **Transition Services** | **Staff / Agency Responsible** |
| Cyrus will receive instruction in adaptive, social skills, behavior, reading, written expression, math, and communication. He will meet with his counselor to schedule classes to meet the requirements to participate in his post-secondary goals. He will participate in activities to learn more about her strengths, needs, preferences, and interests. He will meet with his counselor, case manager, and teachers to continue to refine his transition plan. | Bellevue School District |

| Content Area: Employment | |
|---|---|
| Upon leaving public school, Cyrus will gain competitive employment in the field of technology | |
| **Transition Services** | **Staff / Agency Responsible** |
| Cyrus will receive instruction in adaptive, social skills, behavior, reading, written expression, math, and communication. He will meet with his counselor to schedule classes to meet the requirements to participate in his post-secondary goals. He will participate in activities to learn more about her strengths, needs, preferences, and interests. He will meet with his counselor, case manager, and teachers to continue to refine his transition plan. | Bellevue School District |

### II. Course of study

*A multi-year description of coursework to achieve the student's desired post secondary goals, from the student's current year to anticipated exit year.*

Course of Study related to Post-secondary Goal

College Preparation: Academics, Special skills training, community involvement, career awareness activities

Graduation Requirements

| Subject | Semesters | Credits |
|---|---|---|
| English* | 8 | 4.0 |
| Mathematics | 6 | 3.0 |
| Social Studies* | 7 | 3.5 |
| Science | 6 | 3.0 |
| *At least 2.0 credits (4 semesters) need to be lab science | | |
| CTE | 2 | 1.0 |
| PE | 3 | 1.5 |
| Fine Arts | 4 | 2.0 |

## SUPPORTING EXHIBIT

### Exhibit D-6 — IEP / transition record

Original Bellevue School District IEP/transition excerpt, file 2025-06-05T20_51_35.000Z_64_ page 826 CIA.pdf. Source page preserved as received.

**Secondary Transition**

*1.0 credit (2 semesters) can be PPR
Health 1 0.5
World Language OR Personalized Pathway Requirements (PPR) 4 2.0
Electives 7 3.5

Total 48 24

**Personalized Pathway Requirement (PPR) are related courses that lead to a specific post high school career or educational outcome chosen by the student based on the student's interests and High School and Beyond Plan, that may include Career and Technical Education and are intended to provide a focus for student's learning. Students may have up to 3 PPR courses.

Non Credit Requirements:
1. Washington State History (typically completed in middle school) - MET in Middle School
2. High School and Beyond Plan
3. 40 hours of Community Service
4. Students must earn a 2.0 cumulative Grade Point Average

State Assessments:
1. High School English Language Arts Smarter Balanced Assessment (SBAC) (or state approved alternative)
2. High School Washington Comprehensive Assessment of Science (WCAS)
3. High School Math Smarter Balanced Assessment (SBAC) (or state approved alternative)

**
Students must meet standard on the state testing requirements. Students that qualify with IEP goals can meet standard with state approved alternative assessments. Students that pass with a basic proficiency level (Level 2) score on the state required exams or meet standard on a developmentally appropriate alternative assessment will to earn a Certificate of Individual Achievement (CIA) rather than the standard Certificate of Academic Achievement (CAA). Students will have several opportunities to retake all or portions of state assessments that they do not initially pass.

Students with IEPs will take classes that meet graduation requirements, courses that provide instruction in goal areas, and electives of interest. Students have the opportunity to take 7 credits per school year.

Multi Year Course of Study

Current 9th Grade Year
T.Pre-Algebra 1 (1.0)
Social Skills (1.0)
Video Game Design (0.5)
Foundations to World History (0.5)
T. English 9 (1.0)
Composing Music w/ Technology (0.5)
Digital Video Audio 1 (0.5)
Biology (1.0)
Foundations to Fitness (1.0)

10th Grade Year
T. English 10 (1.0)
World History (1.0)
T. Pre-Algebra 2 (1.0)
Chemistry (1.0)
Health (0.5)
Social Skills (1.0)
Targeted Academic Skills (1.0)
Electives of Interest (0.5)

*The team should consider how/if Cyrus will work towards 2.0 credits of foreign language or 2.0 credits in personal pathway.

11th Grade Year
T. English 11 and/or co-taught American Literature (1.0)

## SUPPORTING EXHIBIT

# Exhibit E — Bellevue School District Board Policy 2410

High School Graduation Requirements — five-page public webpage printout

Last revised January 9, 2025; administrative update March 13, 2026. This version postdates C.B.'s June 2023 exit.

Case No. 2:22-cv-01621-LK

# 2410: High School Graduation Requirements

Return to Policies and Procedures Manual →

Print this page →

2000: INSTRUCTIONAL

Adoption Date: March, 19, 2013

Last Revised: January 9, 2025

Administrative Update 3.13.26

The board will establish graduation requirements, which at a minimum satisfy those established by the State Board of Education. The board will approve additional graduation requirements as recommended by the superintendent or designee. Graduation requirements in effect when a student first enrolls in high school will remain in effect until that student graduates. The Board will award a regular high school diploma to every student enrolled in the District who meets the requirements of graduation established by the District. Only one diploma will be awarded with no distinctions being made between the various programs of instruction which may have been pursued.

## Credit Requirements

The Board has established the following graduation requirements which, satisfy and exceed those established by the State Board of Education:

| **Subject Areas** | **Credit Requirements** |
|---|---|

| | |
|---|---|
| English | 4 |
| Mathematics | 3 |
| Science | (2 lab science credits) 3 |
| Social Studies | 3.5* |
| Health and Fitness (one class must include training in cardiopulmonary resuscitation (CPR) and use of automatic external defibrillators (AED)) | 2<br>0.5 credit health<br>1.5 credit fitness |
| Arts (1 credit may be met through a Personalized Pathway Requirement) | 2** |
| Career and Technical Education | 1 |
| Electives (any course that is not required may satisfy elective credit) | 3.5 |
| World Language (or) Personalized Pathway Requirement | 2** |
| **Total Credit Requirements** | **24** |

**Exceeds state requirements. The state requires 3 credits.*

***Personalized Pathway Requirements are courses determined by the District that prepare students for a particular career and education goal chosen by the student and specified in their High School and Beyond Plan.*

# Additional Requirements

In addition to the minimum credit requirements, to earn a diploma each student must:

A. Complete a High School and Beyond Plan

B. Complete one or more of the following pathways in each of English Language Arts and Mathematics:

1. Meet or exceed the Smarter Balanced Assessment scores set by the State Board of Education;

2. Complete and qualify for college credit in dual credit courses such as Running Start or College in the High School;

3. Earn high school credit, with a C+ grade or a score of 3 or higher on the AP exam; C+ in relevant International Baccalaureate courses or a 4 on the IB exam; or C+ in Cambridge International courses (no score equivalent);

4. Meet or exceed the scores established by the State Board of Education for the SAT or ACT;

5. Meet standard on the Armed Services Vocational Battery; or

6. Complete a sequence of CTE courses that are relevant to a student's post-secondary pathway including those leading to workforce entry, state or nationally approved apprenticeships, post-secondary education and that meet either Core Plus program criteria or the minimum criteria identified in RCW 28A.700.030

C. Earn a minimum cumulative 2.0 grade point average.

D. Earn a minimum of forty (40) hours of Community Service.

# Procedures

The superintendent will develop procedures for implementing this policy which include:

A. The process for completion of the High School and Beyond Plan

B. The process for waiving required Community Service Hours and the minimum GPA requirement

C. The process for the completion of Personal Pathway Requirements

E. Establishing the process for requesting a credit waiver based on unusual circumstances

F. The process for students fulfilling an IB diploma to meet graduation requirements

G. Which courses satisfy particular subject area requirements and whether a particular course may satisfy more than one subject area requirement.

H. Which credit toward high school graduation may be granted for learning experiences conducted outside the District (Outside Learning Credits) from an accredited institution and/or online courses approved by the Washington State Department of Digital

Learning.

I. The process by which individual students may be excused from the fitness requirement because of physical disability, employment, or religious belief, or because of participation in directed athletics or military science and tactics or for other good cause. Such excused students shall be required to demonstrate proficiency/competency in the knowledge portion of the fitness requirement.

J. Publishing graduation requirements and distributing to students, parents and members of the public.

K. Granting credit for correspondence, technical institutes and/or college courses for college or university course work the district has agreed to accept as high school credit.

L. Granting credit for work experience when permitted;

M. Granting credit based upon competence testing, in lieu of enrollment when permitted;

N. A description of how students meet the Washington state history and government; and civics requirements

O. Credit for high school courses taken prior to high school

---

# Cross References

- **Board Policy 2161 Special Education and Related Services for Eligible Students (https://bsd405.org/about-us/school-board/policies-and-procedures/policy-and-procedure-details/~board/policies-procedures/post/2161)**

# Legal References

- RCW 28A.230.090 High school graduation requirements or equivalencies — Reevaluation of graduation requirements — Review and authorization of proposed changes — Credit for courses taken before attending high school — Postsecondary credit equivalencies
- RCW 28A.230.120 High school diplomas — Issuance — Option to receive final transcripts — Notice
- RCW 28A.230.050 28A.600.300-400 Running start program
- RCW 28A.635.060 Defacing or injuring school property — Liability of pupil, parent or guardian — Withholding grades, diploma, or transcripts — Suspension and restitution — Voluntary work program as alternative — Rights protected

- RCW 28A.655.061 High school assessment system — Certificate of academic achievement requirements — Exemptions -- Options to retake high school assessment — Objective alternative assessment — Student learning plans
- WAC 180-51 High school graduation requirements
- WAC 392-121-182 Alternative Learning Experience Requirements
- WAC 392-169 Special service programs running start program
- WAC 392-348 Secondary Education
- WAC 392-410 Courses of studies and equivalencies

Return to Policies and Procedures Manual →

# SUPPORTING EXHIBIT

## Exhibit F · Judge Coughenour Order, Dkt. 41

Order Denying Motion to Admit Additional Evidence

Beygi v. Bellevue School District, No. 2:26-cv-01061-JCC

Filed August 17, 2026 · complete four-page order follows.

Relevant discussion: original order page 3, lines 4-20.

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MEHDI BEYGI and ZOHREH ALAVITALAB, as guardians of CYRUS BEYGI,<br><br>Plaintiffs,<br><br>v.<br><br>BELLEVUE SCHOOL DISTRICT, *et al.*,<br><br>Defendants. | CASE NO. C26-1061-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiffs' motion to admit additional evidence (Dkt. No. 36). Having thoroughly considered the briefing and the relevant record, the Court DENIES the motion for the reasons explained herein.

In this Individuals with Disabilities Education Act ("IDEA") appeal, which Plaintiffs bring on behalf of their son, Cyrus Beygi ("C.B."), Plaintiffs challenge an administrative law judge's ("ALJ") summary judgment award to Defendant Bellevue School District. (*See generally* Dkt. No. 13.) That ruling dismissed Plaintiffs' complaint(s) against the School District regarding its alleged failure to provide C.B. with a free appropriate public education ("FAPE"). (*See generally* Dkt. No. 31-11 at 224–51.) In support of their appeal here, Plaintiffs move to admit additional evidence. (*See* Dkt. No. 29) (briefing schedule anticipating the instant motion).

Under IDEA, the Court must "receive the records of the administrative proceedings,"

"hear additional evidence at the request of a party," and "bas[e] its decisions on the preponderance of the evidence." 20 U.S.C. § 1415(i)(2)(C).[1] But not all "additional evidence" need be considered. *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings*, 652 F.3d 999, 1004 (9th Cir. 2011).[2] The question "is not whether the additional evidence is *necessary* to evaluate the decision of the ALJ." *D.M. v. Seattle Sch. Dist.*, 170 F. Supp. 3d 1328, 1333 (W.D. Wash. 2016) (citing *E.M. ex rel. E.M.*, 652 F.3d at 1006) (emphasis added). Rather, at issue is whether the additional evidence is "*relevant*, noncumulative, and otherwise admissible." *Id.* (emphasis added).

Plaintiffs specifically ask to admit the following extra-record items: alleged proof that C.B. did not complete the coursework necessary for graduation, (Dkt. No. 36-3); evidence supporting Plaintiff's notion that the School District withheld or failed to disclose these third-party records, (Dkt. No. 36-2); documents regarding the School District's supposed failure to appoint an independent educational representative for C.B. pursuant to WAC 392-172A-05135(5), (Dkt. No. 36-4); and various documents touching on the District's FAPE graduation requirements for IEP students, (Dkt. No. 36-5). In response, the School District contends that Plaintiffs could have provided most if not all of these documents to the ALJ (but did not). (Dkt. No. 39 at 9–11.) Thus, they should be excluded here. (*Id.*) (citing, *e.g.*, *Ojai Unified Sch. Dist. v.*

---

[1] Review of an administrative record is generally limited to the record before the administrative body. *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995). If substantial evidence on the whole record supports the administrative determination, the district court must affirm. *Id.* The court must give "due weight" to the administrative decision and may not "substitute [its] own notions of sound educational policy for those of the school authorities which they review." *Board of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206, (1982), *superseded by statute on other grounds*, *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202 (9th Cir. 2008).

[2] For instance, the Court need not consider evidence which duplicates or embellishes evidence taken at the administrative hearing. *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993), *cert. denied*, 513 U.S. 825 (1994). Nor should it admit evidence that alters "'the character of the hearing from one of review to a trial *de novo*.'" *Id.* (quoting *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984)).

*Jackson*, 4 F.3d 1467, 1473 (9th Cir. 1993)). As discussed below, the Court finds none of the documents relevant. Thus, it will not consider the District's argument based on a supposed procedural bar to their introduction.

Most of the documents which Plaintiffs now seek to admit, (*see* Dkt. Nos. 36-2, 36-3, 36-5), are irrelevant because ***even if*** the ALJ improperly determined that C.B. became ineligible for FAPE (based on his completion of the coursework for a high school diploma), the ALJ ***also*** found that, after June 19, 2023, C.B. was no longer eligible for FAPE due to his age. (*See* Dkt. No. 31-11 at 237–38.)[3] *Id.* And because C.B.'s age is undisputed, there can be no genuine issue of fact precluding the ALJ's finding on this controlling issue. No additional evidence could be relevant to this finding. Thus, C.B.'s alleged non-compliance with the School District's graduation requirements, for example, is *irrelevant* to the case before this Court. The remaining documents, (Dkt. No. 36-4), suffer from the same relevancy flaw. According to Plaintiff, they speak to the School District's alleged failure to appoint an independent education representative for C.B. (*See* Dkt. No. 36 at 8–9). But Plaintiffs did not raise the argument in their due process hearing(s). (*See generally* Dkt. Nos. 31-2–31-12.) Thus, they cannot raise it here. *See J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 952 (9th Cir. 2010) (discussing exhaustion requirements). Nor would it appear they are offering the documents for any other purpose. (*See generally* Dkt. No. 36.) Thus, they are also irrelevant.

In sum, all the extra-record evidence which Plaintiffs now seek to admit is irrelevant to the instant appeal. For this reason, their motion to admit (Dkt. No. 36) is DENIED.

//

//

[3] As the ALJ noted, this case is analogous to that of the student in *S.P. by and through C.P. v. Seattle Pub. Schools,* 2025 WL 2697083, slip op. (W.D. Wash. 2025). (*See* Dkt. No. 31-11 at 235–49.) And, as discussed by the *S.P.* court, the otherwise controlling case of *N.D. v. Reykdal*, 2023 WL 5632783 (W.D. Wash. 2023), *vacated on other grounds*, 102 F.4th 982 (9th Cir. 2024), was inapt in *S.P. See* 2025 WL 2697083, slip op. at 3. As the ALJ also noted, the same applies here. (*See* Dkt. No. 31-11 at 235–49.)

So ORDERED this 17th day of August 2026.

John C. Coughenour
UNITED STATES DISTRICT JUDGE